William Lesser (NJ ID #162532015)
Barry Golob (*pro hac vice*)
**COZEN O'CONNOR**
1200 Nineteenth Street, N.W.
Washington, DC 20036
202- 912-4815
wlesser@cozen.com
bgolob@cozen.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRAINBUILDERS, LLC, S.M.D., individually and on behalf of minor child, E.D., A.G.(1), individually and on behalf of minor child, Y.G., R.Z.J., individually and on behalf of minor child, M.J., M.G.(1), individually and on behalf of minor child, CHILD A.G., B.D.B., individually and on behalf of minor child, CHILD C.B., H.S., individually and on behalf of minor child, C.S., D.D.F., individually and on behalf of minor child, M.D.F., S.W., individually and on behalf of minor child, A.W., D.M.S., individually and on behalf of minor child, I.S., B.M., individually and on behalf of minor child, CHILD T.M., S.L., individually and on behalf of minor child, R.L., F.A.M., individually and on behalf of minor child, CHILD J.M. and minor child Z.M., C.O., individually and on behalf of minor child, S.O., D.P., individually and on behalf of minor child, C.P., M.S.(1), individually and on behalf of minor child, D.S.(1), D.K.Y., individually and on behalf of minor child, S.Y.(1), E.S., individually and on behalf of minor child, Y.S.(1), L.B(1)., individually and on behalf of minor child, Y.A., C.A.(1), individually and on behalf of minor child, N.A., C.B., individually and on behalf of minor child, CHILD A.B.(1), D.B., individually and on behalf of minor child, B.B., L.B.(2), individually and on behalf of minor child, J.B.(1), N.B., individually and on behalf of minor child, Y.B., T.B., individually and on behalf of minor child, CHILD A.B.(2), A.B., individually and on behalf of minor child, S.B., R.B., individually and on | Civil Action No. 3:17-cv-03626<br><br><br><br><br>**FIRST AMENDED COMPLAINT AND JURY DEMAND** |

behalf of minor child, A.Y.B., K.B., individually
and on behalf of minor child, E.B. and minor child,
G.B., P.B., individually and on behalf of minor
child, J.B.(2), M.B., individually and on behalf of
minor child, CHILD L.B., S.M.(1), individually
and on behalf of minor child, J.C.(1), S.C.(1),
individually and on behalf of minor child, CHILD
S.C. (1), C.A.(2), individually and on behalf of
minor child, CHILD S.C.(2), S.C.(2), individually
and on behalf of minor child, O.C., D.C.(1),
individually and on behalf of minor child, C.C.,
K.C., individually and on behalf of minor child,
J.C.(2), L.C., individually and on behalf of minor
child, I.C., D.C.(2), individually and on behalf of
minor child, CHILD D.C., A.D., individually and
on behalf of minor child, D.D., A.R., individually
and on behalf of minor child, D.D.J., R.D.,
individually and on behalf of minor child, M.D.,
C.E., individually and on behalf of minor child,
D.E., Z.S.F., individually and on behalf of minor
child, CHILD Y.F., M.F., individually and on
behalf of minor child, E.F., Y.F., individually and
on behalf of minor child, C.F., K.F., individually
and on behalf of minor child, W.F., L.F.,
individually and on behalf of minor child, G.F.,
M.G.(2), individually and on behalf of minor child,
R.G., E.G., individually and on behalf of minor
child, CHILD M.G., A.G.(2), individually and on
behalf of minor child, S.G., C.G., individually and
on behalf of minor child, N.G., G.K., individually
and on behalf of minor child, M.K., D.K.,
individually and on behalf of minor child, Y.K., ,
A.L., individually and on behalf of minor child,
CHILD A.L., M.M., individually and on behalf of
minor child, A.M., I.M., individually and on behalf
of minor child, X.M., J.M., individually and on
behalf of minor child, N.M., T.M., individually and
on behalf of minor child, D.M., and minor child,
CHILD T.W., S.M.(2), individually and on behalf
of minor child, R.M., S.H., individually and on
behalf of minor child, D.N., T.P., individually and
on behalf of minor child, N.P., E.P., individually
and on behalf of minor child, Q.P., P.R.,
individually and on behalf of minor child, M.R.(1),
S.R., individually and on behalf of minor child,
M.R.(2), F.K., individually and on behalf of minor

child, Y.S.(2), M.S.(2), individually and on behalf
of minor child, T.S., A.S.(1), individually and on
behalf of minor child, CHILD A.S.(1), B.S.,
individually and on behalf of minor child, D.S.(2),
S.A., individually and on behalf of minor child,
CHILD R.S.(1), R.S., individually and on behalf of
minor child, CHILD S.S., A.S.(2), individually and
on behalf of minor child, CHILD A.S.(2), S.S.,
individually and on behalf of minor child, CHILD
J.S. and minor child, CHILD R.S.(2), J.S.,
individually and on behalf of minor child, G.S.,
and minor child N.S., J.T., individually and on
behalf of minor child, G.T., T.R., individually and
on behalf of minor child, CHILD P.T., C.M.,
individually and on behalf of minor child, S.T.,
A.K.T., individually and on behalf of minor child,
V.T., H.V., individually and on behalf of minor
child, I.V., T.W., individually and on behalf of
minor child, M.W., P.T., individually and on
behalf of minor child, D.W., P.Y., individually and
on behalf of minor child, S.S.Y., H.Y., individually
and on behalf of minor child, E.Y., L.S.,
individually and on behalf of minor child, S.Y.(2),
B.Y., individually and on behalf of minor child,
T.Y., and minor child, Y.Y., and M.Z.,
individually and on behalf of minor child, F.Z.,

Plaintiffs,

v.

AETNA LIFE INSURANCE COMPANY,
AETNA HEALTH INC. and AETNA INC.,

Defendants.

Plaintiffs S.M.D., individually and on behalf of minor child, E.D., A.G.(1), individually

and on behalf of minor child, Y.G., R.Z.J., individually and on behalf of minor child, M.J.,

M.G.(1), individually and on behalf of minor child, CHILD A.G., B.D.B., individually and on

behalf of minor child, CHILD C.B., H.S., individually and on behalf of minor child, C.S.,

D.D.F., individually and on behalf of minor child, M.D.F., S.W., individually and on behalf of

minor child, A.W., D.M.S., individually and on behalf of minor child, I.S., B.M., individually and on behalf of minor child, CHILD T.M., S.L., individually and on behalf of minor child, R.L., F.A.M., individually and on behalf of minor child, CHILD J.M. and minor child Z.M., C.O., individually and on behalf of minor child, S.O., D.P., individually and on behalf of minor child, C.P., M.S.(1), individually and on behalf of minor child, D.S.(1), D.K.Y., individually and on behalf of minor child, S.Y.(1), E.S., individually and on behalf of minor child, Y.S.(1), L.B.(1), individually and on behalf of minor child, Y.A., C.A.(1), individually and on behalf of minor child, N.A., C.B., individually and on behalf of minor child, CHILD A.B.(1), D.B., individually and on behalf of minor child, B.B., L.B.(2), individually and on behalf of minor child, J.B.(1), N.B., individually and on behalf of minor child, Y.B., T.B., individually and on behalf of minor child, CHILD A.B.(2), A.B., individually and on behalf of minor child, S.B., R.B., individually and on behalf of minor child, A.Y.B., K.B., individually and on behalf of minor child, E.B. and minor child, G.B., P.B., individually and on behalf of minor child, J.B.(2), M.B., individually and on behalf of minor child, CHILD L.B., S.M.(1), individually and on behalf of minor child, J.C.(1), S.C.(1), individually and on behalf of minor child, CHILD S.C.(1), C.A.(2), individually and on behalf of minor child, CHILD S.C.(2), S.C.(2), individually and on behalf of minor child, O.C., D.C.(1), individually and on behalf of minor child, C.C., K.C., individually and on behalf of minor child, J.C.(2), L.C., individually and on behalf of minor child, I.C., D.C.(2), individually and on behalf of minor child, CHILD D.C., A.D., individually and on behalf of minor child, D.D., A.R., individually and on behalf of minor child, D.D.J., R.D., individually and on behalf of minor child, M.D., C.E., individually and on behalf of minor child, D.E., Z.S.F., individually and on behalf of minor child, CHILD Y.F., M.F., individually and on behalf of minor child, E.F., Y.F., individually and on behalf of minor child, C.F., K.F., individually and on

4

behalf of minor child, W.F., L.F., individually and on behalf of minor child, G.F., M.G., individually and on behalf of minor child, R.G., E.G., individually and on behalf of minor child, CHILD M.G., A.G.(2), individually and on behalf of minor child, S.G., C.G., individually and on behalf of minor child, N.G., G.K., individually and on behalf of minor child, M.K., D.K., individually and on behalf of minor child, Y.K., A.L., individually and on behalf of minor child, CHILD A.L., M.M., individually and on behalf of minor child, A.M., I.M., individually and on behalf of minor child, X.M., J.M., individually and on behalf of minor child, N.M., T.M., individually and on behalf of minor child, D.M., and minor child, CHILD T.W., S.M.(2), individually and on behalf of minor child, R.M., S.H., individually and on behalf of minor child, D.N., T.P., individually and on behalf of minor child, N.P., E.P., individually and on behalf of minor child, Q.P., P.R., individually and on behalf of minor child, M.R.(1), S.R., individually and on behalf of minor child, M.R.(2), F.K., individually and on behalf of minor child, Y.S.(2), M.S.(2), individually and on behalf of minor child, T.S., A.S.(1), individually and on behalf of minor child, CHILD A.S.(1), B.S., individually and on behalf of minor child, D.S.(2), S.A., individually and on behalf of minor child, CHILD R.S.(1), R.S., individually and on behalf of minor child, CHILD S.S., A.S.(2), individually and on behalf of minor child, CHILD A.S.(2), S.S., individually and on behalf of minor child, CHILD J.S., and minor child, CHILD R.S.(2), J.S., individually and on behalf of minor child, G.S., and minor child, N.S., J.T., individually and on behalf of minor child, G.T., T.R., individually and on behalf of minor child, CHILD P.T., C.M., individually and on behalf of minor child, S.T., A.K.T., individually and on behalf of minor child, V.T., H.V., individually and on behalf of minor child, I.V., T.W., individually and on behalf of minor child, M.W., P.T., individually and on behalf of minor child, D.W., P.Y., individually and on behalf of minor child, S.S.Y., H.Y., individually and on behalf of minor

child, E.Y., L.S., individually and on behalf of minor child, S.Y.(2), B.Y., individually and on behalf of minor child, T.Y., and minor child, Y.Y., and M.Z., individually and on behalf of minor child, F.Z.,[1] (collectively, the "Individual Plaintiffs") and BrainBuilders, LLC ("BrainBuilders") (collectively and together with Individual Plaintiffs, "Plaintiffs"), by and through their undersigned counsel, by way of their Complaint against Defendants Aetna Life Insurance Company, Aetna Health, Inc., and Aetna Inc. (collectively, "Aetna"), upon information and belief, as well as investigation, hereby allege as follows:

## NATURE OF THE ACTION

1.      This is an action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and state law, based on Aetna's failure and ongoing refusal to pay in full for the autism therapy services that BrainBuilders provided to patients covered by certain plans provided or administered by Aetna, as described more fully below.

2.      This action arises out of the nonpayment or underpayment of claims submitted by BrainBuilders, on behalf of Individual Plaintiffs, to Aetna for treating children diagnosed with autism.  BrainBuilders, an out-of-network health care provider, treated the children of Individual Plaintiffs, who are insured under health insurance policies and/or health benefit plans issued or administered by Aetna. Aetna thereafter has willfully, knowingly, arbitrarily and capriciously, in bad faith, and otherwise unlawfully refused to pay Plaintiffs, all or in part, for the medically necessary and appropriate autism therapy services that BrainBuilders provided to Aetna's health insurance and health benefit plan participants.

---

[1] The names of the parents and minors are abbreviated in the public version of this Complaint to comply with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and to protect the confidentiality and privacy of the children diagnosed with autism.  Many of these children are under 6 years old, and with successful early intervention, will be able to reduce many of the symptoms associated with autism before they enter school.  Upon request, the Plaintiffs agree to provide to the Court and Aetna with a confidential sealed version of the Complaint with the names of the parents.

**Aetna's Underpayment of Plaintiffs' Claims**

3.     Aetna provides health care insurance and health care benefits to insureds pursuant to a variety of health care benefit plans and polices of insurance, including employer-sponsored benefits plans, such as NJ Silver OAMC 2500 90/70 PY HAS TIF Small Group Health Benefits Plan (hereinafter "Wilner Plan"), School for Children with Hidden Intelligence Open Access Managed Choice (hereinafter "SCHI Plan"), New Roads Healthcare Plan ("New Roads Plan"), Global Healthcare Fiscal Services Group LLC Open Access Managed Choice (hereinafter "Global Plan"), Citrin Cooperman & Company, LLP Open Access Elect Choice (Open Access Exclusive Provider Organization (EPO) Medical Plan) – Low Plan (hereinafter "Citrin Plan"), 315 Arch St Realty LP Plan, Adapt Health Plan, ADP Plan, Amazon Plan, Amneal Pharmaceuticals LLC Plan, Amtrak Plan, Arup US Inc. Plan, Bank of America Plan, Bausch Health US LLC Plan, Beach Street Plan, Bed Bath & Beyond Plan, Beth Medrash Govoha of America Inc. Plan, Bristol Myers Squibb Plan, Central Jersey HIF Plan, CFGI LLC Plan, Citibank Plan, Clark Board Of Education Plan, Cognizant Plan, Cohn Reznick Plan, Diligence Research Group Plan, Docusign Inc. Plan, Extensis Plan, Icon Clinical Research LLC Plan, IMS Technologies Plan, Infosys Limited Plan, Johnson & Johnson Plan, Justworks Employment Group Plan, Lockheed Martin Corp. Plan, Mail Handlers Benefit Plan, New York Post Plan, OFS Fitel LLC Plan, Pacira Pharmaceuticals Inc. Plan, Perth Amboy Board of Education Plan, Pridestaff Inc. Plan, Ray Builders Inc. Plan, Reckitt Benckiser LLC Plan, RJ Brands LLC DBA Chefman Plan, SAP America Plan, Southern Coastal HIF Plan, Superb Staffing Services Plan, Taiho Oncology Inc. Plan, Tata Consultancy Services Plan, Telos Plan, TIAA Consumer Choice Plan, Toms River Regional Schools Plan, Transamerica Corporation Plan, Trinet Group Plan, Tryko Partners Plan, Unisys Plan, Veranova Plan, and Walmart Plan (collectively, "PLANS").

4.    Aetna has intentionally and unlawfully engaged in a pattern of underpaying and/or refusing to pay Plaintiffs, in full, for claims submitted to Aetna for speech, occupational and early intervention behavior, and/or applied behavioral analysis ("ABA") therapies, which have been shown to remarkably improve, and at the same time, lessen the impact of autism spectrum disorder ("ASD" or "autism") in children.

5.    From August 2014 through June 27, 2022, Aetna has underpaid Plaintiffs by over nearly $50,000,000 on Plaintiffs' claims for ABA therapy, physical therapy, occupational therapy, and speech therapy provided by BrainBuilders.  BrainBuilders' billed charges for ABA claims, with dates of service ("DOS") between August 1, 2014 and June 27, 2022, total approximately $55,000,000, reflecting BrainBuilders' usual and customary rates for the particular medical services provided.  As of June 27, 2022, Aetna has reimbursed BrainBuilders for only about six million dollars, a small fraction of the amount billed.

6.    Because Aetna's insured patients continue to seek treatment at BrainBuilders, the underpayment amounts continue to increase on a daily basis.

7.    Accordingly, Aetna's refusal to pay, in full, the Plaintiffs for the therapy services which BrainBuilders provided to Aetna-insured patients is a violation of Aetna's duties under ERISA and state law.

**THE PARTIES**

8.    Plaintiff BrainBuilders is a therapeutic intervention agency located at 945 River Ave., Suite 201, Lakewood, New Jersey 08701 that provides services to children with autism spectrum related disorders.  These services include: applied behavioral analysis, physical therapy, occupational therapy, and speech therapy (collectively, "autism therapy services").  BrainBuilders' patients (and/or their guardians) execute assignments of benefits and assignment of rights to pursue ERISA and other legal and administrative remedies ("AOBs"), which assign

to BrainBuilders all rights and benefits under the patients' insurance plans related to autism therapy services provided by BrainBuilders to its patients.  Aetna, however, only now disputes the propriety and validity of the AOB contracts as a result of this lawsuit even though, through its course of dealing and conduct, has recognized the AOBs.  Consequently, BrainBuilders is named as a Plaintiff under an alternative theory pursuant to Rule 8 of the Federal Rules of Civil Procedure.  Additionally, to the extent the Court finds that BrainBuilders lacks standing under ERISA, BrainBuilders is named for purposes of non-ERISA state claims.

9.    Plaintiff S.M.D. is a natural parent and legal guardian of E.D., a minor child who suffers from autism.  S.M.D. and E.D. are participants in the SCHI Plan, a health benefit plan issued by Aetna.  At all times relevant to the matters alleged in this Complaint, Plaintiff S.M.D. and E.D. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA.  E.D. is insured as a dependent beneficiary under the SCHI Plan.

10.    Plaintiff A.G.(1) is a natural parent and legal guardian of Y.G., a minor child who suffers from autism.  A.G.(1) and Y.G. are participants in the SCHI Plan, a health benefit plan issued by Aetna.  At all times relevant to the matters alleged in this Complaint, A.G.(1) and Y.G. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA.  Y.G. is insured as a dependent beneficiary under the SCHI Plan.

11.    Plaintiff R.Z.J. is a natural parent and legal guardian of M.J., a minor child who suffers from autism.  R.Z.J. and M.J. are participants in the SCHI Plan, a health benefit plan issued by Aetna.  At all times relevant to the matters alleged in this Complaint, R.Z.J. and M.J. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA.  M.J. is insured as a dependent beneficiary under the SCHI Plan.

12.     Plaintiff M.G.(1) is a natural parent and legal guardian of CHILD A.G., a minor child who suffers from autism.  M.G.(1) and CHILD A.G. are participants in the SCHI Plan, a health benefit plan issued by Aetna.  At all times relevant to the matters alleged in this Complaint, M.G.(1) and CHILD A.G. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA.  CHILD A.G. is insured as a dependent beneficiary under the SCHI Plan.

13.     Plaintiff B.D.B. is a natural parent and legal guardian of CHILD C.B., a minor child who suffers from autism.  B.D.B. and CHILD C.B. are participants in the SCHI Plan, a health benefit plan issued by Aetna.  At all times relevant to the matters alleged in this Complaint, B.D.B. and CHILD C.B. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA.  CHILD C.B. is insured as a dependent beneficiary under the SCHI Plan.

14.     Plaintiff H.S. is a natural parent and legal guardian of C.S., a minor child who suffers from autism.  H.S. and C.S. are participants in the Global Plan, a health benefit plan issued by Aetna.  At all times relevant to the matters alleged in this Complaint, H.S. and C.S. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA.  C.S. is insured as a dependent beneficiary under the Global Plan.

15.     Plaintiff D.D.F. is a natural parent and legal guardian of M.D.F., a minor child who suffers from autism.  D.D.F. and M.D.F. are participants in the Citrin Plan, a health benefit plan issued by Aetna.  At all times relevant to the matters alleged in this Complaint, D.D.F. and M.D.F. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA.  M.D.F. is insured as a dependent beneficiary under the Citrin Plan. On information and belief, the Citrin Plan is self-funded.

16.     Plaintiff S.W. is a natural parent and legal guardian of A.W., a minor child who suffers from autism.  S.W. and A.W. are participants in the Wilner Plan, a health benefit plan issued by Aetna.  At all times relevant to the matters alleged in this Complaint, S.W. and A.W. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA.  A.W. is insured as a dependent beneficiary under the Wilner Plan.

17.     Plaintiff D.M.S. is a natural parent and legal guardian of I.S., a minor child who suffers from autism.  D.M.S. and I.S. are participants in the Extensis Plan, a fully-insured health benefit plan issued by Aetna.  At all times relevant to the matters alleged in this Complaint, D.M.S. and I.S. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA.  I.S. is insured as a dependent beneficiary under the Extensis Plan.

18.     Plaintiff B.M. is a natural parent and legal guardian of CHILD T.M., a minor child who suffers from autism.  B.M. and CHILD T.M. are participants in the New Roads Plan, a health benefit plan issued by Aetna.  At all times relevant to the matters alleged in this Complaint, B.M. and CHILD T.M. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA.  CHILD T.M. is insured as a dependent beneficiary under the New Roads Plan.

19.     Plaintiff S.L. is a natural parent and legal guardian of R.L., a minor child who suffers from autism.  S.L. and R.L. are participants in the Superb Staffing Services plan, a health benefit plan issued by Aetna.  At all times relevant to the matters alleged in this Complaint, S.L. and R.L. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA.  R.L. is insured as a dependent beneficiary under a New Jersey small business health plan issued by Aetna. On information and belief, the Superb Staffing Services Plan is fully insured.

20.     Plaintiff F.A.M. is a natural parent and legal guardian of CHILD J.M. and Z.M., minor children who suffer from autism.   F.A.M., CHILD J.M., and Z.M. are participants in Walmart's self-funded large group health plan, a health benefit plan issued by Aetna.   At all times relevant to the matters alleged in this Complaint, F.A.M., CHILD J.M., and Z.M. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. CHILD J.M. and Z.M. are insured as dependent beneficiaries under Walmart's self-funded large group health plan. Z.M. is currently being treated by BrainBuilders.

21.     Plaintiff C.O. is a natural parent and legal guardian of S.O., a minor child who suffers from autism.  C.O. and S.O. are participants in the Diligence Research Group Plan, a self-funded health benefit plan issued by Aetna.  At all times relevant to the matters alleged in this Complaint, C.O. and S.O. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA.  S.O. is insured as a dependent beneficiary under a New Jersey small business health plan issued by Aetna.

22.     Plaintiff D.P. is a natural parent and legal guardian of C.P., a minor child who suffers from autism.  D.P. and C.P. are participants in the SCHI Plan, a health benefit plan issued by Aetna.  At all times relevant to the matters alleged in this Complaint, D.P. and C.P. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. C.P. is insured as a dependent beneficiary under the SCHI Plan.

23.     Plaintiff M.S.(1) is a natural parent and legal guardian of D.S.(1), a minor child who suffers from autism.  M.S.(1) and D.S.(1) are participants in the SCHI Plan, a health benefit plan issued by Aetna.  At all times relevant to the matters alleged in this Complaint, M.S.(1) and D.S.(1) were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA.  D.S.(1) is insured as a dependent beneficiary under the SCHI Plan.

24.     Plaintiff D.K.Y. is a natural parent and legal guardian of S.Y.(1), a minor child who suffers from autism.  D.K.Y. and S.Y.(1) are participants in the SCHI Plan, a health benefit plan issued by Aetna.  At all times relevant to the matters alleged in this Complaint, D.K.Y. and S.Y.(1) were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA.  S.Y.(1) is insured as a dependent beneficiary under the SCHI Plan.

25.     Plaintiff E.S. is a natural parent and legal guardian of Y.S.(1), a minor child who suffers from autism.  E.S. and Y.S.(1) are participants in the SCHI Plan, a health benefit plan issued by Aetna.  At all times relevant to the matters alleged in this Complaint, E.S. and Y.S.(1) were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA.  Y.S.(1) is insured as a dependent beneficiary under the SCHI plan.

26.     Plaintiff L.B.(1) is a natural parent and legal guardian of Y.A., a minor child who suffers from autism. L.B.(1) and Y.A. are participants in the Bristol Myers Squibb Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, L.B.(1) and Y.A. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. Y.A. is insured as a dependent beneficiary under the Bristol Myers Squibb Plan. Y.A. is currently being treated by BrainBuilders.

27.     Plaintiff C.A.(1) is a natural parent and legal guardian of N.A., a minor child who suffers from autism. C.A.(1) and N.A. are participants in the Trinet Group Plan, a fully-insured health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, C.A.(1) and N.A. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. N.A. is insured as a dependent beneficiary under the Trinet Group Plan.

28.     Plaintiff C.B. is a natural parent and legal guardian of CHILD A.B.(1), a minor child who suffers from autism. C.B. and CHILD A.B.(1) are participants in the Toms River

Regional Schools Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, C.B. and CHILD A.B.(1) were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. CHILD A.B.(1) is insured as a dependent beneficiary under the Toms River Regional Schools Plan. C.B. is currently being treated by BrainBuilders.

29.     Plaintiff D.B. is a natural parent and legal guardian of B.B., a minor child who suffers from autism. D.B. and B.B. are participants in the Amtrak Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, D.B. and B.B. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. B.B. is insured as a dependent beneficiary under the Amtrak Plan.

30.     Plaintiff L.B.(2) is a natural parent and legal guardian of J.B.(1), a minor child who suffers from autism. L.B.(2) and J.B.(1) are participants in the ADP Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, L.B.(2) and J.B.(1) were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. J.B.(1) is insured as a dependent beneficiary under the ADP Plan.

31.     Plaintiff N.B. is a natural parent and legal guardian of Y.B., a minor child who suffers from autism. N.B. and Y.B. are participants in the Trinet Group Plan, a fully-insured health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, N.B. and Y.B. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. Y.B. is insured as a dependent beneficiary under the Trinet Group Plan.

32.     Plaintiff T.B. is a natural parent and legal guardian of CHILD A.B.(2), a minor child who suffers from autism. T.B. and CHILD A.B.(2) are participants in the Telos Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this

Complaint, T.B. and CHILD A.B.(2) were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. CHILD A.B.(2) is insured as a dependent beneficiary under the Telos Plan.

33.     Plaintiff A.B. is a natural parent and legal guardian of S.B., a minor child who suffers from autism. A.B. and S.B. are participants in the Extensis Plan, a fully-insured health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, A.B. and S.B. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. S.B. is insured as a dependent beneficiary under the Extensis Plan.

34.     Plaintiff R.B. is a natural parent and legal guardian of A.Y.B., a minor child who suffers from autism. R.B. and A.Y.B. are participants in the Cohn Reznick Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, R.B. and A.Y.B. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. A.Y.B. is insured as a dependent beneficiary under the Cohn Reznick Plan. A.Y.B. is currently being treated by BrainBuilders.

35.     Plaintiff K.B. is a natural parent and legal guardian of E.B. and G.B., minor children who suffer from autism. K.B., E.B., and G.B. are participants in the Trinet Group Plan, a fully-insured health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, K.B., E.B., and G.B. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. E.B. and G.B. are insured as dependent beneficiaries under the Trinet Group Plan.

36.     Plaintiff P.B. is a natural parent and legal guardian of J.B.(2), a minor child who suffers from autism. P.B. and J.B.(2) are participants in the Trinet Group Plan, a fully-insured health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint,

P.B. and J.B.(2) were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. J.B.(2) is insured as a dependent beneficiary under the Trinet Group Plan.

37.     Plaintiff M.B. is a natural parent and legal guardian of CHILD L.B., a minor child who suffers from autism. M.B. and CHILD L.B. are participants in the New York Post Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, M.B. and CHILD L.B. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. CHILD L.B. is insured as a dependent beneficiary under the New York Post Plan.

38.     Plaintiff S.M.(1) is a natural parent and legal guardian of J.C.(1), a minor child who suffers from autism. S.M.(1) and J.C.(1) are participants in the Docusign Inc. Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, S.M.(1) and J.C.(1) were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. J.C.(1) is insured as a dependent beneficiary under the Docusign Inc. Plan. J.C.(1) is currently being treated by BrainBuilders.

39.     Plaintiff S.C.(1) is a natural parent and legal guardian of CHILD S.C.(1), a minor child who suffers from autism. S.C.(1) and CHILD S.C.(1) are participants in the Amneal Pharmaceuticals LLC Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, S.C.(1) and CHILD S.C.(1) were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. CHILD S.C.(1) is insured as a dependent beneficiary under the Amneal Pharmaceuticals LLC Plan. CHILD S.C.(1) is currently being treated by BrainBuilders.

40.     Plaintiff C.A.(2) is a natural parent and legal guardian of CHILD S.C.(2), a minor child who suffers from autism. C.A.(2) and CHILD S.C.(2) are participants in the Infosys

Limited Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, C.A.(2) and CHILD S.C.(2) were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. CHILD S.C.(2) is insured as a dependent beneficiary under the Infosys Limited Plan. CHILD S.C.(2) is currently being treated by BrainBuilders.

41. Plaintiff S.C.(2) is a natural parent and legal guardian of O.C., a minor child who suffers from autism. S.C.(2) and O.C. are participants in the Bristol Myers Squibb Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, S.C.(2) and O.C. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. O.C. is insured as a dependent beneficiary under the Bristol Myers Squibb Plan.

42. Plaintiff D.C.(1) is a natural parent and legal guardian of C.C., a minor child who suffers from autism. D.C.(1) and C.C. are participants in the Reckitt Benckiser LLC Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, D.C.(1) and C.C. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. C.C. is insured as a dependent beneficiary under the Reckitt Benckiser LLC Plan.

43. Plaintiff K.C. is a natural parent and legal guardian of J.C.(2), a minor child who suffers from autism. K.C. and J.C.(2) are participants in the Mail Handlers Benefit Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, K.C. and J.C.(2) were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. J.C.(2) is insured as a dependent beneficiary under the Mail Handlers Benefit Plan. J.C.(2) is currently being treated by BrainBuilders.

44.     Plaintiff L.C. is a natural parent and legal guardian of I.C., a minor child who suffers from autism. L.C. and I.C. are participants in the Pridestaff Inc. Plan, a health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, L.C. and I.C. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. I.C. is insured as a dependent beneficiary under the Pridestaff Inc. Plan. I.C. is currently being treated by BrainBuilders. On information and belief, the Pridestaff Inc. Plan is self-funded.

45.     Plaintiff D.C.(2) is a natural parent and legal guardian of CHILD D.C., a minor child who suffers from autism. D.C.(2) and CHILD D.C. are participants in the Unisys Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, D.C.(2) and CHILD D.C. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. CHILD D.C. is insured as a dependent beneficiary under the Unisys Plan.

46.     Plaintiff A.D. is a natural parent and legal guardian of D.D., a minor child who suffers from autism. A.D. and D.D. are participants in the Southern Coastal HIF Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, A.D. and D.D. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. D.D. is insured as a dependent beneficiary under the Southern Coastal HIF Plan. D.D. is currently being treated by BrainBuilders.

47.     Plaintiff A.R. is a natural parent and legal guardian of D.D.J., a minor child who suffers from autism. A.R. and D.D.J. are participants in the IMS Technologies Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, A.R. and D.D.J. were "participants" or "beneficiaries" under the plan issued by

Aetna within the meaning of ERISA. D.D.J. is insured as a dependent beneficiary under the IMS Technologies Plan. D.D.J. is currently being treated by BrainBuilders.

48.     Plaintiff R.D. is a natural parent and legal guardian of M.D., a minor child who suffers from autism. R.D. and M.D. are participants in the Extensis Plan, a fully-insured health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, R.D. and M.D. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. M.D. is insured as a dependent beneficiary under the Extensis Plan.

49.     Plaintiff C.E. is a natural parent and legal guardian of D.E., a minor child who suffers from autism. C.E. and D.E. are participants in the Toms River Regional Schools Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, C.E. and D.E. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. D.E. is insured as a dependent beneficiary under the Toms River Regional Schools Plan. D.E. is currently being treated by BrainBuilders.

50.     Plaintiff Z.S.F. is a natural parent and legal guardian of CHILD Y.F., a minor child who suffers from autism. Z.S.F. and CHILD Y.F. are participants in the Extensis Plan, a fully-insured health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, Z.S.F. and CHILD Y.F. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. CHILD Y.F. is insured as a dependent beneficiary under the Extensis Plan. CHILD Y.F. is currently being treated by BrainBuilders.

51.     Plaintiff M.F. is a natural parent and legal guardian of E.F., a minor child who suffers from autism. M.F. and E.F. are participants in the OFS Fitel LLC Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, M.F. and E.F. were "participants" or "beneficiaries" under the plan issued by Aetna within the

meaning of ERISA. E.F. is insured as a dependent beneficiary under the OFS Fitel LLC Plan. E.F. is currently being treated by BrainBuilders.

52.    Plaintiff Y.F. is a natural parent and legal guardian of C.F., a minor child who suffers from autism. Y.F. and C.F. are participants in the Trinet Group Plan, a fully-insured health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, Y.F. and C.F. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. C.F. is insured as a dependent beneficiary under the Trinet Group Plan.

53.    Plaintiff K.F. is a natural parent and legal guardian of W.F., a minor child who suffers from autism. K.F. and W.F. are participants in the Bank Of America Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, K.F. and W.F. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. W.F. is insured as a dependent beneficiary under the Bank Of America Plan. W.F. is currently being treated by BrainBuilders.

54.    Plaintiff L.F. is a natural parent and legal guardian of G.F., a minor child who suffers from autism. L.F. and G.F. are participants in the Arup US Inc. Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, L.F. and G.F. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. G.F. is insured as a dependent beneficiary under the Arup US Inc. Plan. G.F. is currently being treated by BrainBuilders.

55.    Plaintiff M.G.(2) is a natural parent and legal guardian of R.G., a minor child who suffers from autism. M.G.(2) and R.G. are participants in the Ray Builders Inc. Plan, a fully-insured health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, M.G.(2) and R.G. were "participants" or "beneficiaries" under the plan issued by

Aetna within the meaning of ERISA. R.G. is insured as a dependent beneficiary under the Ray Builders Inc. Plan. R.G. is currently being treated by BrainBuilders.

56.      Plaintiff E.G. is a natural parent and legal guardian of CHILD M.G., a minor child who suffers from autism. E.G. and CHILD M.G. are participants in the Tryko Partners Plan, a health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, E.G. and CHILD M.G. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. CHILD M.G. is insured as a dependent beneficiary under the Tryko Partners Plan. On information and belief, the Tyko Partners Plan is fully insured.

57.      Plaintiff A.G.(2) is a natural parent and legal guardian of S.G., a minor child who suffers from autism. A.G.(2) and S.G. are participants in the Extensis Plan, a fully-insured health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, A.G.(2) and S.G. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. S.G. is insured as a dependent beneficiary under the Extensis Plan.

58.      Plaintiff C.G. is a natural parent and legal guardian of N.G., a minor child who suffers from autism. C.G. and N.G. are participants in the Johnson & Johnson Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, C.G. and N.G. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. N.G. is insured as a dependent beneficiary under the Johnson & Johnson Plan. N.G. is currently being treated by BrainBuilders.

59.      Plaintiff G.K. is a natural parent and legal guardian of M.K., a minor child who suffers from autism. G.K. and M.K. are participants in the Transamerica Corporation Plan, a health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, G.K. and M.K. were "participants" or "beneficiaries" under the plan issued by Aetna within the

meaning of ERISA. M.K. is insured as a dependent beneficiary under the Transamerica Corporation Plan. On information and belief, the Transamerica Corporation Plan is self-funded.

60.     Plaintiff D.K. is a natural parent and legal guardian of Y.K., a minor child who suffers from autism. D.K. and Y.K. are participants in the Extensis Plan, a fully-insured health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, D.K. and Y.K. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. Y.K. is insured as a dependent beneficiary under the Extensis Plan.

61.     Plaintiff A.L. is a natural parent and legal guardian of CHILD A.L., a minor child who suffers from autism. A.L. and CHILD A.L. are participants in the Bed Bath and Beyond Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, A.L. and CHILD A.L. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. CHILD A.L. is insured as a dependent beneficiary under the Bed Bath and Beyond Plan. CHILD A.L. is currently being treated by BrainBuilders.

62.     Plaintiff M.M. is a natural parent and legal guardian of A.M., a minor child who suffers from autism. M.M. and A.M. are participants in the 315 Arch St Realty LP Plan, a fully-insured health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, M.M. and A.M. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. A.M. is insured as a dependent beneficiary under the 315 Arch St Realty LP Plan.

63.     Plaintiff I.M. is a natural parent and legal guardian of X.M., a minor child who suffers from autism. I.M. and X.M. are participants in the Amazon Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, I.M.

and X.M. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. X.M. is insured as a dependent beneficiary under the Amazon Plan. X.M. is currently being treated by BrainBuilders.

64.     Plaintiff J.M. is a natural parent and legal guardian of N.M., a minor child who suffers from autism. J.M. and N.M. are participants in the Perth Amboy Board of Education Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, J.M. and N.M. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. N.M. is insured as a dependent beneficiary under the Perth Amboy Board of Education Plan. N.M. is currently being treated by BrainBuilders.

65.     Plaintiff T.M. is a legal guardian of D.M. and CHILD T.W., minor children who suffer from autism. T.M., D.M., and CHILD T.W. are participants in the Amazon Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, T.M., D.M., and CHILD T.W. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. D.M. and T.W. are insured as dependent beneficiaries under the Amazon Plan. T.W. is currently being treated by BrainBuilders.

66.     Plaintiff S.M.(2) is a natural parent and legal guardian of R.M., a minor child who suffers from autism. S.M.(2) and R.M. are participants in the Citibank Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, S.M.(2) and R.M. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. R.M. is insured as a dependent beneficiary under the Citibank Plan.

67.     Plaintiff S.H. is a natural parent and legal guardian of D.N., a minor child who suffers from autism. S.H. and D.N. are participants in the Taiho Oncology Inc. Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this

Complaint, S.H. and D.N. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. D.N. is insured as a dependent beneficiary under the Taiho Oncology Inc. Plan. D.N. is currently being treated by BrainBuilders.

68.     Plaintiff T.P. is a natural parent and legal guardian of N.P., a minor child who suffers from autism. T.P. and N.P. are participants in the Bausch Health US LLC Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, T.P. and N.P. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. N.P. is insured as a dependent beneficiary under the Bausch Health US LLC Plan. N.P. is currently being treated by BrainBuilders.

69.     Plaintiff E.P. is a natural parent and legal guardian of Q.P., a minor child who suffers from autism. E.P. and Q.P. are participants in the Bristol Myers Squibb Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, E.P. and Q.P. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. Q.P. is insured as a dependent beneficiary under the Bristol Myers Squibb Plan.

70.     Plaintiff P.R. is a natural parent and legal guardian of M.R.(1), a minor child who suffers from autism. P.R. and M.R.(1) are participants in the Toms River Regional Schools Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, P.R. and M.R.(1) were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. M.R.(1) is insured as a dependent beneficiary under the Toms River Regional Schools Plan. M.R.(1) is currently being treated by BrainBuilders.

71.     Plaintiff S.R. is a natural parent and legal guardian of M.R.,(2) a minor child who suffers from autism. S.R. and M.R.(2) are participants in the Trinet Group Plan, a fully-insured

health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, S.R. and M.R.(2) were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. M.R.(2) is insured as a dependent beneficiary under the Trinet Group Plan.

72.     Plaintiff F.K. is a natural parent and legal guardian of Y.S.(2), a minor child who suffers from autism. F.K. and Y.S.(2) are participants in the Central Jersey HIF Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, F.K. and Y.S.(2) were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. Y.S.(2) is insured as a dependent beneficiary under the Central Jersey HIF Plan. Y.S.(2) is currently being treated by BrainBuilders.

73.     Plaintiff M.S.(2) is a natural parent and legal guardian of T.S., a minor child who suffers from autism. M.S.(2) and T.S. are participants in the Beth Medrash Govoha of America Inc. Plan, a fully-insured health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, M.S.(2) and T.S. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. T.S. is insured as a dependent beneficiary under the Beth Medrash Govoha of America Inc. Plan.

74.     Plaintiff A.S.(1) is a natural parent and legal guardian of CHILD A.S.(1), a minor child who suffers from autism. A.S.(1) and CHILD A.S.(1) are participants in the RJ Brands LLC DBA Chefman Plan, a health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, A.S.(1) and CHILD A.S.(1) were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. CHILD A.S.(1) is insured as a dependent beneficiary under the RJ Brands LLC DBA Chefman Plan. On information and belief, the RJ Brands LLC DBA Chefman Plan is fully insured.

75.     Plaintiff B.S. is a natural parent and legal guardian of D.S.(2), a minor child who suffers from autism. B.S. and D.S.(2) are participants in the Cognizant Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, B.S. and D.S.(2) were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. D.S.(2) is insured as a dependent beneficiary under the Cognizant Plan. D.S.(2) is currently being treated by BrainBuilders.

76.     Plaintiff S.A. is a natural parent and legal guardian of CHILD R.S.(1), a minor child who suffers from autism. S.A. and CHILD R.S.(1) are participants in the Cognizant Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, S.A. and CHILD R.S.(1) were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. CHILD R.S.(1) is insured as a dependent beneficiary under the Cognizant Plan. CHILD R.S.(1) is currently being treated by BrainBuilders.

77.     Plaintiff R.S. is a natural parent and legal guardian of CHILD S.S., a minor child who suffers from autism. R.S. and CHILD S.S. are participants in the Extensis Plan, a fully-insured health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, R.S. and CHILD S.S. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. CHILD S.S. is insured as a dependent beneficiary under the Extensis Plan. CHILD S.S. is currently being treated by BrainBuilders.

78.     Plaintiff A.S.(2) is a natural parent and legal guardian of CHILD A.S.(2), a minor child who suffers from autism. A.S.(2) and CHILD A.S.(2) are participants in the TIAA Consumer Choice Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, A.S.(2) and CHILD A.S.(2) were "participants" or

"beneficiaries" under the plan issued by Aetna within the meaning of ERISA. CHILD A.S.(2) is insured as a dependent beneficiary under the TIAA Consumer Choice Plan. CHILD A.S.(2) is currently being treated by BrainBuilders.

79.    Plaintiff S.S. is a natural parent and legal guardian of J.S and CHILD R.S.(2), minor children who suffer from autism. S.S., CHILD J.S., and CHILD R.S.(2) are participants in the Bed Bath & Beyond Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, S.S., CHILD J.S., and CHILD R.S.(2) were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. CHILD J.S. and CHILD R.S.(2) are insured as dependent beneficiaries under the Bed Bath & Beyond Plan. CHILD J.S. and CHILD R.S.(2) are currently being treated by BrainBuilders.

80.    Plaintiff J.S. is a natural parent and legal guardian of G.S. and N.S., minor children who suffer from autism. J.S., G.S., and N.S. are participants in the Clark Board Of Education Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, J.S., G.S., and N.S. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. G.S. and N.S. are insured as dependent beneficiaries under the Clark Board Of Education Plan. G.S. and N.S. are currently being treated by BrainBuilders.

81.    Plaintiff J.T. is a natural parent and legal guardian of G.T., a minor child who suffers from autism. J.T. and G.T. are participants in the Pacira Pharmaceuticals Inc. Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, J.T. and G.T. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. G.T. is insured as a dependent beneficiary under the Pacira Pharmaceuticals Inc. Plan.

82.     Plaintiff T.R. is a natural parent and legal guardian of CHILD P.T., a minor child who suffers from autism. T.R. and CHILD P.T. are participants in the Tata Consultancy Services Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, T.R. and CHILD P.T. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. CHILD P.T. is insured as a dependent beneficiary under the Tata Consultancy Services Plan.

83.     Plaintiff C.M. is a natural parent and legal guardian of S.T., a minor child who suffers from autism. C.M. and S.T. are participants in the Amazon Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, C.M. and S.T. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. S.T. is insured as a dependent beneficiary under the Amazon Plan. S.T. is currently being treated by BrainBuilders.

84.     Plaintiff A.K.T. is a natural parent and legal guardian of V.T., a minor child who suffers from autism. A.K.T. and V.T. are participants in the Cognizant Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, A.K.T. and V.T. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. V.T. is insured as a dependent beneficiary under the Cognizant Plan.

85.     Plaintiff H.V. is a natural parent and legal guardian of I.V., a minor child who suffers from autism. H.V. and I.V. are participants in the SAP America Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, H.V. and I.V. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. I.V. is insured as a dependent beneficiary under the SAP America Plan. I.V. is currently being treated by BrainBuilders.

86.     Plaintiff T.W. is a natural parent and legal guardian of M.W., a minor child who suffers from autism. T.W. and M.W. are participants in the Adapt Health Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, T.W. and M.W. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. M.W. is insured as a dependent beneficiary under the Adapt Health Plan.

87.     Plaintiff P.T. is a natural parent and legal guardian of D.W., a minor child who suffers from autism. P.T. and D.W. are participants in the CFGI LLC Plan, a health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, P.T. and D.W. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. D.W. is insured as a dependent beneficiary under the CFGI LLC Plan. On information and belief, the CFGI LLC Plan is fully insured.

88.     Plaintiff P.Y. is a natural parent and legal guardian of S.S.Y., a minor child who suffers from autism. P.Y. and S.S.Y. are participants in the Veranova Plan, a health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, P.Y. and S.S.Y. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. S.S.Y. is insured as a dependent beneficiary under the Veranova Plan. S.S.Y. is currently being treated by BrainBuilders. On information and belief, the Veranova Plan is self-funded.

89.     Plaintiff H.Y. is a natural parent and legal guardian of E.Y., a minor child who suffers from autism. H.Y. and E.Y. are participants in the Icon Clinical Research LLC Plan, a health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, H.Y. and E.Y. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. E.Y. is insured as a dependent beneficiary under the Icon Clinical Research

LLC Plan. E.Y. is currently being treated by BrainBuilders. On information and belief, the Icon Clinical Research LLC Plan is self-funded.

90.      Plaintiff L.S. is a natural parent and legal guardian of S.Y.(2), a minor child who suffers from autism. L.S. and S.Y.(2) are participants in the Beach Street Plan, a health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, L.S. and S.Y.(2) were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. S.Y.(2) is insured as a dependent beneficiary under the Beach Street Plan. On information and belief, the Beach Street Plan is self-funded.

91.      Plaintiff B.Y. is a natural parent and legal guardian of T.Y. and Y.Y., minor children who suffer from autism. B.Y., T.Y., and Y.Y. are participants in the Justworks Employment Group Plan, a fully-insured health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, B.Y., T.Y., and Y.Y. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. T.Y. and Y.Y. are insured as dependent beneficiaries under the Justworks Employment Group Plan.

92.      Plaintiff M.Z. is a natural parent and legal guardian of F.Z., a minor child who suffers from autism. M.Z. and F.Z. are participants in the Lockheed Martin Corp. Plan, a self-funded health benefit plan issued by Aetna. At all times relevant to the matters alleged in this Complaint, M.Z. and F.Z. were "participants" or "beneficiaries" under the plan issued by Aetna within the meaning of ERISA. F.Z. is insured as a dependent beneficiary under the Lockheed Martin Corp. Plan. F.Z. is currently being treated by BrainBuilders.

93.      Defendants Aetna are health insurers authorized to do business in the State of New Jersey who are primarily engaged in the business of providing and/or administering health

care plans or policies.  Aetna also acts as a third-party administrator for employee health benefit plans governed by ERISA.

94.     On information and belief, Aetna Inc. is a company incorporated under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 151 Farmington Avenue, Hartford, Connecticut 06156.

95.     On information and belief, Aetna Life Insurance Company and Aetna Health Inc. are subsidiaries of Aetna Inc. and incorporated under the laws of the State of Connecticut, with their principal place of business at 151 Farmington Avenue, Hartford, Connecticut 06156.

## JURISDICTION AND VENUE

96.     This Court has federal question subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because this Complaint raises claims under the laws of the United States, specifically the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et. seq*.

97.     This Court also has supplemental jurisdiction over Plaintiffs' state law claims against Defendants because these claims are so related to the federal claims that the state law claims form a part of the same case or controversy under Article III of the United States Constitution.  This Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367.

98.     This Court has personal jurisdiction over Defendants because Defendants are authorized to conduct business in New Jersey and Defendants carry on one or more businesses or business ventures in this judicial district.  There is the requisite nexus between the business(es) and this action and Defendants engage in substantial and not isolated activity within this judicial district.

99.     Venue is appropriate under 28 U.S.C. § 1391, ERISA § 502(e)-(f), and 29 U.S.C. § 1132(e)-(f), because Aetna conducts a substantial amount of business in this district, and the events that gave rise to this Complaint occurred in this district.

## FACTUAL ALLEGATIONS

100.     Plaintiffs bring this action under 29 U.S.C. § 1101 *et seq.* and pursuant to terms of the PLANS that are directly insured and/or administered by Aetna.

101.     Aetna has assumed the role as a fiduciary for these PLANS under ERISA due to its role in administering the health care plans at issue in this matter, including, but not limited to, interpreting and applying the PLANS' terms, making coverage and benefit decisions, determining reimbursement amounts, and deciding appeals.

102.     BrainBuilders has provided covered therapy services to children with autism using well-established Current Procedural Terminology ("CPT") codes.  *See* Exhibit 1[2] (FAIR Health Estimated UCR-Based Costs for CPT Code 96152).[3]  Prior to providing these services, BrainBuilders received and relied upon written pre-authorization from Aetna that these services would be covered under the PLANS at issue.

103.     Aetna maintained a course of dealing and course of conduct that, through these written pre-authorizations, induced BrainBuilders to render services to the Aetna subscribers. Aetna represented that its members and beneficiaries are covered for OON services, that they may go to BrainBuilders to receive autism therapy services, and that Aetna will remit payment at the rate of BrainBuilders' fully billed charges (less in-network patient responsibility) for autism therapy services.

---

[2] All references to Exhibits are those appended to the original Complaint.

[3] Since January 1, 2019, the relevant CPT codes were revised to include 97151-97158, which BrainBuilders now uses, along with 92057 (speech therapy) and 97530 (therapeutic activities).

104.    The autism therapy services provided by BrainBuilders are covered services under the PLANS at issue.  These PLANS permit members to obtain covered services from out-of-network ("OON") providers who have not entered into provider agreements with Aetna, such as BrainBuilders, and then require Aetna to pay for OON covered services using specified methodologies.

105.    BrainBuilders regularly and timely reports its claims to Aetna.  Since approximately November 2017, BrainBuilders has also submitted all supporting information for the claims including all times and dates of service, diagnoses, evaluations, re-evaluations, daily medical records (aka "SOAP" notes), reports, charts, and graphs. BrainBuilders identifies the appropriate billing code, units billed, and provider information for each claim. For any denied claims, BrainBuilders submits any additional requested information; however, claims often do not receive responses. BrainBuilders also submits and exhausts all first and second level appeals as appropriate, but again, claims and appeals often do not receive responses.

106.    Aetna previously reimbursed BrainBuilders for these services at a reasonable rate, in accordance with the PLANS' documents, at approximately 90% of BrainBuilders' billed rates.

107.    On or about July 2014, without any warning, explanation, or logical reason, Aetna downgraded and underpaid reimbursement claims submitted by BrainBuilders for covered services provided to children with autism.

108.    On or about July 2014, Aetna stopped reimbursing BrainBuilders at 90% of its billed rates for autism therapy services and instead reimbursed BrainBuilders at much lower, arbitrary, and inconsistent rates that do not adhere with any coverage or reimbursement provisions under the PLANS.

109. On or about July 2014, Aetna started using new temporary CPT codes, *i.e.*, 0359T, 0361T, 0364T, 0368T, and 0370T, for autism therapy services. These codes do not correspond to any Usual, Customary and Reasonable ("UCR") based or Medicare-based rate on FAIR Health's Consumer Cost Lookup. *See* Exhibit 2 (FAIR Health Consumer Cost Lookup for relevant CPT codes). As of January 1, 2019, the American Medical Association CPT Editorial Panel deleted CPT codes 0359T through 0374T, with the exception of 0362T and 0373T, and replaced them with CPT codes 97151-97158.

110. Aetna's arbitrary ABA reimbursement rates are illustrated in the SCHI Plan. The SCHI Plan provides that it will reimburse at "300% of the Medicare Allowable Rate." *See* Exhibit 5 at 110; *see also* Exhibit 7 at 1. However, the Centers for Medicare & Medicaid Services ("CMS") then-Acting Administrator Andrew M. Slavitt clarified in a November 29, 2016 letter, to United States Representative Christopher Smith that there are no CMS rates for ABA therapy, and specifically, CMS has not established a national Medicare allowable or payment rate for Healthcare Common Procedure Coding System ("HCPCS") codes 0364T (adaptive behavior treatment) and 0365T (adaptive behavior tx addl). *See* Exhibit 4 at 1.

111. Aetna acknowledged that no rate exists for the CPT codes at issue here and claimed that the SCHI Plan "allowed up to 50% of the billed charges as the default value when no rate exists for the fee schedule included in the plan." *See* Exhibit 9. In reimbursing BrainBuilders for autism therapy services provided to E.D., for example, Aetna claimed that the SCHI Plan reimburses out-of-network providers "at 300 percent of Medicare allowable." *See* Exhibit 7 at 1. As stated in the previous paragraph, there currently is no published non-hospital Medicare rate for the temporary American Medical Association ("AMA") CPT codes, *i.e.*,

0359T – 0374T (or since January 1, 2019, codes 97151-97158), and Aetna has never provided the Medicare allowable amount that it is using to calculate the 300% rate.[4]

112.    Aetna's arbitrary and inconsistent ABA reimbursement rates are illustrated in the Aetna's responses to appeals for four different children on the same SCHI Plan.  In the appeal responses, Aetna claimed to be using completely different reimbursement calculations: (1) Ingenix/HIAA (which was terminated in 2010 and the ABA codes did not come out until 2014); (2) CMS rates (which CMS stated in Exhibit 4 do not exist for ABA therapy); (3) REF or reasonable and equitable fee (not defined by Aetna or known in the industry); and (4) 100% of Aetna's market fee schedule.  *See* Exhibit 9.

113.    Aetna has stated to other patients that the "claim processed correctly to allow 100 percent of the reasonable and equitable fee ("REF") for the area in which the services were rendered."  *See id.*  However, Aetna never provided the methodology used for calculating the REF.

114.    These different methodologies for calculating reimbursement rates have yielded at least three different rates used by Aetna for patients for whom BrainBuilders billed for the same services using the same CPT codes.  Even more, not only does Aetna use different methodologies for determining the allowable rates under the PLANS, but it also fails to offer any explanation as to the actual numbers used as a basis for its calculations in determining these varying rate amounts.

---

[4] Although BrainBuilders is not a hospital, it should be noted that CMS did have Hospital Outpatient Prospective Payment System ("OPPS") rates for these codes.  *See* Exhibit 3. Importantly, CMS' OPPS rates for these codes were approximately *five to ten times higher* than the amounts that Aetna has claimed as the CMS rate for these codes.  BrainBuilders has also surveyed other providers' contracted reimbursement rates for these CPT codes, and the contracted Medicare rates are generally *three times higher* than the Medicare rates that Aetna is allegedly using.

115.    These reductions in benefits are erroneous, arbitrary and capricious, and violate the plain language of the PLANS, as well as New Jersey and federal laws regarding network adequacy and autism coverage.

116.    BrainBuilders has continued to provide services to Aetna members despite Aetna's underpayments which are ongoing and increasing.

117.    Aetna subscribers executed AOB contracts, among other documents, in which they assigned to BrainBuilders their right to benefits under the PLANS for the services that BrainBuilders provided to Aetna subscribers.

118.    The AOB contracts included the following language:

**ASSIGNMENT OF BENEFITS**
**ASSIGNMENT OF RIGHTS TO PURSUE ERISA AND OTHER LEGAL AND ADMINISTRATIVE REMEDIES**

<u>**Assignment of Insurance Benefits**</u>
I hereby assign all applicable health insurance benefits and/or insurance reimbursement to which I and/or my dependents may be or may become entitled to **BRAINBUILDERS LLC**.  I also appoint **BRAINBUILDERS LLC** as my designated representative for all purposes related to claims, appeals, and the pursuit of legal and equitable remedies related to such claims.  Without limiting the foregoing, I specifically appoint **BRAINBUILDERS LLC** as my designated representative to request and obtain any documentation related to such claims or appeals.  I certify that the health insurance information that I provide to **BRAINBUILDERS LLC** is accurate as of the date set forth below and that I am responsible for keeping it updated.  I understand and agree that I am ultimately financially responsible for any medical expenses I may incur.

I hereby authorize **BRAINBUILDERS LLC** to submit claims to the benefit plan (or its administrator) listed on the current insurance card I provided to **BRAINBUILDERS LLC** in good faith, to appeal any denial of such claim and to submit evidence as may be required in the course of pursing such appeals, and to request and receive all information and notices related to such claims and appeals on my and/or my dependent's behalf, I also hereby instruct my benefit plan (or its administrator) to pay **BRAINBUILDERS LLC** directly for services rendered to me or my dependents and to treat **BRAINBUILDERS LLC** as my assignee and designated representative for all purposes related to such claims.  To the extent that my current policy prohibits direct payment to **BRAINBUILDERS LLC**, I hereby instruct and direct

my benefit plan (or its administrator) to provide documentation stating such anti-assignment provision to myself and **BRAINBUILDERS LLC** upon request.  If such an anti-assignment provision is enforceable, I instruct my benefit plan (or its administrator) to make the check payable to me and mail it directly to **BRAINBUILDERS LLC**.

119.  By virtue of these assignments, BrainBuilders has standing to pursue legal and equitable remedies, including but not limited to ERISA claims, as the assignee and authorized representative of Aetna's subscribers' claims under the PLANS.  At the very least, BrainBuilders acted on behalf of Individual Plaintiffs in raising their disputes with Aetna and exhausting their administrative remedies prior to the filing of this lawsuit.

120.  As the assignee of Aetna's subscribers, BrainBuilders is also entitled to payment under the PLANS for the autism therapy services provided to Aetna's subscribers.

121.  Upon information and belief, the PLANS did not prohibit Aetna from assigning its rights to benefits under the PLANS to BrainBuilders, including the right of direct payment of benefits under the PLANS to BrainBuilders.

122.  Further, to the extent that the PLANS prohibited the assignment of benefits to BrainBuilders, Aetna has waived any purported anti-assignment provisions, has ratified the assignment of benefits to BrainBuilders, and/or is estopped from using any purported anti-assignment provisions against BrainBuilders due to Aetna's course of dealing and conduct with and statements to BrainBuilders as out-of-network providers, discussed fully above.

123.  For example, Aetna waives the anti-assignment provisions by treating the Individual Plaintiffs as one account for all benefit payment and billing purposes: BrainBuilders' account. Aetna repeatedly deducts payments for one BrainBuilders patient due to alleged overpayments made on behalf of another patient, making it impossible for the Individual Plaintiffs to maintain their own accounts and track the flow of credit and deductions. In one

explanation of benefits for plaintiff CHILD S.C.(1) from August 2020, Aetna deducted $665.76 for alleged overpayments from dates of service dating back to May 2019 for plaintiff *J.B.(2)*. Rather than deducting the alleged overpayment from J.B.(2)'s account, Aetna deducted the $665.76 from CHILD S.C.(1)'s account instead. Even though Aetna found CHILD S.C.(1) was entitled to $1,269.48 in payments for the submitted claims, Aetna only paid $603.72 on CHILD S.C.(1)'s claims. Aetna thus treated CHILD S.C.(1) as having assigned the claims to BrainBuilders, rather than as having CHILD S.C.(1)'s own account. The only common thread between CHILD S.C.(1) and J.B.(2) is that they both were treated at BrainBuilders. Significantly, they are not even on the same PLAN. This is not an isolated incident. Aetna has applied deductions for various of its insureds meant for other insureds, and the amounts deducted are often higher than the foregoing example. Aetna has even sought refunds from BrainBuilders directly, rather than from its patients' accounts.

124.    Further, any purported anti-assignment prohibitions are unenforceable as drafted.

125.    All of the PLANS require payment of medical expenses incurred by Aetna subscribers at the rate of BrainBuilders' fully billed charges (less in-network patient responsibility) for autism therapy services.

126.    BrainBuilders' billed charges represent usual and customary rates for the treatment provided to Aetna subscribers.

127.    Pursuant to AOBs executed by BrainBuilders' patients (or their guardians) who are members of Aetna PLANS, BrainBuilders has appealed these underpayments in accordance with the PLANS.  As discussed below, Aetna has either failed entirely to respond to the appeals, responded in an insufficient or untimely manner contrary to the terms of the PLANS documents, or denied the appeals.

128.    In regard to these patients, BrainBuilders has also sought information and documents from Aetna regarding its benefits reductions related to autism therapy services.  As discussed below, Aetna has either failed entirely to respond to the requests for information and documents or responded in an insufficient or untimely manner contrary to the requirements of ERISA.

### A.    THE SCHI PLAN

129.    Several of BrainBuilders' patients are members of Aetna's Open Access Managed Choice Plan prepared exclusively for employees of the School for Children with Hidden Intelligence (the "SCHI Plan").  The SCHI plan is a fully-insured plan that is provided as a large group employee benefit by a private employer.  *See* Exhibit 5.

130.    Both ERISA and New Jersey state regulations govern fully-insured ERISA plans, such as the SCHI Plan.

131.    Aetna's SCHI Plan permits subscribers to obtain OON health care services from providers who have not entered into contracts with Aetna.

132.    According to the SCHI Plan Booklet, "Diagnosis and Treatment of Autism and Other Developmental Disabilities" are covered services.  *See id.* at 31-32.

133.    According to the SCHI Plan Booklet, "[y]ou have the choice to access licensed providers, hospitals and facilities outside the network for covered benefits. . . .  Out-of-network providers have not agreed to accept the negotiated charge and may balance bill you for charges over the amount Aetna pays under the plan.  Aetna will only pay up to the recognized charge." *Id.* at 11.

134.    Under the SCHI Plan, Aetna will reimburse for covered expenses by OON providers "up to the recognized charge."  *Id.* at 11.   Under the SCHI Plan, the "recognized charge" is defined as:

> The covered expense is only that part of a charge which is the recognized charge.
>
> As to medical, vision and hearing expenses, the recognized charge for each service or supply is the lesser of*:*
>
> - What the provider bills or submits for that service or supply; and
> - For professional services and other services or supplies not mentioned below:
>   - 300% of the Medicare Allowable Rate;
>   for the Geographic Area where the service is furnished.

*Id.* at 110.

135.    According to the SCHI Plan Booklet, "[i]f Medicare does not have a rate for a particular service, the rate will be based on the same method that CMS uses to set Medicare rates."  *Id.* at 111.  Therefore, pursuant to these terms, the recognized charge for BrainBuilders' autism therapy services under the SCHI Plan is the lesser of BrainBuilders' billed charge and 300% of the autism therapy services using the same method CMS uses to set the Medicare Allowable Rate.

136.    However, as recognized by CMS in its letter to Rep. Chris Smith, and as detailed above, there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

137.    Therefore, under the plain terms of the SCHI Plan, Aetna must reimburse BrainBuilders at the "recognized charge," which is BrainBuilders' billed charge.  *See* Exhibit 5 at 110.

138.    Upon information and belief, Aetna has instead reimbursed BrainBuilders based on Aetna's standard rates that it uses to begin contract negotiations with doctors in Aetna's network.

139.   In accordance with the SCHI Plan Booklet, BrainBuilders appealed Aetna's reductions of benefits for autism therapy services provided to certain patients.  Aetna denied BrainBuilders' appeal and request for reconsideration.

140.   In regard to appeals of adverse benefit decisions, the SCHI Plan states the following:

> You may contact the New Jersey Department of Banking and Insurance to file a complaint/appeal or request an investigation of a complaint/appeal at any time.  You are not required to exhaust the Level One and Level Two appeals process before contacting the New Jersey Department of Banking and Insurance.
>
> * * *
>
> Unless serious or significant harm has occurred or will imminently occur to you, you must exhaust an appeal through the Independent Health Care Appeals Program ["IHCAP"] before you establish any litigation, arbitration, or administrative proceeding regarding an alleged breach of the group policy terms by Aetna Life Insurance Company; or any matter within the scope of the appeal procedure.

*Id.* at 92-93.

141.   The Individual Plaintiffs covered by the SCHI Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.      Patient E.D.

142.   E.D., a minor child, is a member of the SCHI Plan through E.D.'s mother S.M.D.'s employment.

143.   E.D.'s pediatrician, Dr. Eli Eilenberg, diagnosed E.D. with autism, and in September 2014, Dr. Eilenberg referred E.D. to autism therapy services.

144.   There are no in-network autism therapy providers in E.D.'s geographical area; therefore BrainBuilders, an OON provider, is entitled to be reimbursed for the recognized charge, *i.e.*, BrainBuilders' billed charge.

145.   Aetna did not reimburse BrainBuilders for autism therapy services provided to E.D. at BrainBuilders' billed charge.

146.   BrainBuilders has filed numerous internal appeals with Aetna on behalf of E.D. appealing Aetna's incorrect reimbursement rates for numerous services provided to E.D.  Aetna failed to respond to the vast majority of these appeals in violation of N.J.A.C. 11:24A-3.5(j)-(k) and 29 C.F.R. §2560.503-1.  As of 2017, the total amount of the claims for which BrainBuilders had been underpaid is $2,875,311.53, and the amount for which Aetna has failed to respond to BrainBuilders' appeals was $259,900.  *See* Exhibit 6.

147.   Aetna issued a Final Appeal Resolution for services provided to E.D. between May 3, 2015 and May 31, 2015 for Claim Number(s) described in the letter as "Multiple – see prior spreadsheet".  *See* Exhibit 7 at 1.[5]  In the Final Appeal Resolution letter, received by BrainBuilders on February 1, 2016, Aetna upheld the rates used for payment of E.D.'s services stating that the payment was at "300 percent of Medicare allowable" for services described by Aetna as codes 0365T, 0364T, 0370T-HO, and 0366T.  *See* Exhibit 7 at 1.  Aetna did not provide an explanation as to how Aetna determined the rate it used.  *See id.*[6]

148.   By letter dated March 16, 2016, BrainBuilders attempted to come to a reasonable resolution with Aetna, but Aetna failed to respond.  *See* Exhibit 8.[7]

---

[5] Partially redacted because it contains HIPAA Protected Health Information.
[6] Partially redacted pursuant to HIPAA.
[7] Partially redacted pursuant to HIPAA.

149.    In accordance with the terms of the SCHI Plan, on June 3, 2016, BrainBuilders filed an external appeal on behalf of E.D. with the New Jersey Department of Banking and Insurance's ("DOBI") Independent Health Care Appeals Program ("IHCAP").  *See* Exhibit 9.[8]

150.    On June 20, 2016, DOBI returned BrainBuilders' appeal and filing fee, stating that the IHCAP may only consider appeals related to utilization review ("UR"), and that "since this is a dispute regarding a payment issue, this appeal is not eligible to be processed as a Stage 3 (external) appeal with the Department . . . ."  *See* Exhibit 10 at 1.[9]   A review of DOBI's regulations and bulletins related to IHCAP confirm that IHCAP does not have jurisdiction over non-UR appeals.

151.    As DOBI's IHCAP lacks jurisdiction to review BrainBuilders' non-UR appeals of Aetna's adverse benefit determinations under the SCHI Plan, it is futile to file any further such appeals on behalf of E.D. or any other SHCI insured patient with DOBI's Independent Health Care Appeals Program.

ii.        Patient Y.G.

152.    Y.G., a minor child, is a member of the SCHI Plan through Y.G.'s mother A.G.(1)'s employment.

153.    Y.G.'s pediatrician, Dr. Norman Indich, diagnosed Y.G. with autism and referred Y.G. to autism therapy services.

154.    There are no in-network autism therapy providers in Y.G.'s geographical area; therefore BrainBuilders, an OON provider, is entitled to be reimbursed for the recognized charge, *i.e.*, BrainBuilders' billed charge

---

[8] Partially redacted pursuant to HIPAA.
[9] Partially redacted pursuant to HIPAA.

155.    Aetna did not reimburse BrainBuilders for autism therapy services provided to Y.G. at BrainBuilders' billed charge.

156.    BrainBuilders has filed numerous internal appeals with Aetna on behalf of Y.G. appealing Aetna's incorrect reimbursement rates for numerous services provided to Y.G.  Aetna failed to respond to the vast majority of these appeals in violation of ERISA and state law.  As of 2017, the total amount of the claims for which BrainBuilders has been underpaid was $2,875,311.53, and the amount for which Aetna had failed to respond to BrainBuilders' appeals was $259,900.  *See* Exhibit 6.

157.    Aetna issued two Final Appeal Resolutions for services provided to Y.G. on March 16, 2016 and March 14, 2017 for Claim Number(s) described in the letter as "Multiple – see prior spreadsheet".  In the Final Appeal Resolution letters, received by BrainBuilders shortly thereafter, Aetna upheld the rates used for payment of Y.G.'s services.  Aetna did not provide an explanation as to how Aetna determined the rates it used.

158.    By letter dated, March 16, 2016 BrainBuilders attempted to come to a reasonable resolution with Aetna, but Aetna failed to respond.  *See* Exhibit 8.

159.    In accordance with the terms of the SCHI Plan, on June 3, 2016, BrainBuilders filed an external appeal on behalf of Y.G. with the New Jersey DOBI's IHCAP.  *See* Exhibit 9.

160.    On June 20, 2016, DOBI returned BrainBuilders' appeal and filing fee, stating that the IHCAP may only consider appeals related to utilization review ("UR"), and that "since this is a dispute regarding a payment issue, this appeal is not eligible to be processed as a Stage 3 (external) appeal with the Department . . . ."  *See* Exhibit 10.  A review of DOBI's regulations and bulletins related to IHCAP confirm that IHCAP does not have jurisdiction over non-UR appeals.

161.    As DOBI's IHCAP lacks jurisdiction to review BrainBuilders' non-UR appeals of Aetna's adverse benefit determinations under the SCHI Plan, it is futile to file any further such appeals on behalf of Y.G. with DOBI's IHCAP.

iii.    Patient M.J.

162.    M.J., a minor child, is a member of the SCHI Plan through M.J.'s mother R.Z.J.'s employment.

163.    M.J.'s pediatrician, Dr. Robyn Koslowitz, diagnosed M.J. with autism, and on February 13, 2013, Dr. Koslowitz referred M.J. to autism therapy services.

164.    There are no in-network autism therapy providers in M.J.'s geographical area; therefore BrainBuilders, an OON provider, is entitled to be reimbursed for the recognized charge, *i.e.*, BrainBuilders' billed charge.

165.    Aetna did not reimburse BrainBuilders for autism therapy services provided to M.J. at BrainBuilders' billed charge.

166.    BrainBuilders has filed numerous internal appeals with Aetna on behalf of M.J. appealing Aetna's incorrect reimbursement rates for numerous services provided to M.J.  Aetna failed to respond to the vast majority of these appeals in violation of N.J.A.C. 11:24A-3.5(j)-(k) and 29 C.F.R. §2560.503-1.  As of 2017, the total amount of the claims for which BrainBuilders had been underpaid was $2,875,311.53, and the amount for which Aetna had failed to respond to BrainBuilders' appeals was $259,900.  *See* Exhibit 6.

167.    Aetna issued one Final Appeal Resolution for services provided to M.J. between February 23, 2016 and February 24, 2016 for Claim Number(s) described in the letter as "Multiple – see prior spreadsheet."   In the Final Appeal Resolution letter, received by

BrainBuilders shortly thereafter, Aetna upheld the rates used for M.J.'s services.    Aetna did not provide an  explanation as to how Aetna determined the rates it used.

168.    By letters dated February 23, 2016 and February 24, 2016, BrainBuilders attempted to come to a reasonable resolution with Aetna, but Aetna failed to respond.

169.    In accordance with the terms of the SCHI Plan, on June 3, 2016 BrainBuilders filed an external appeal on behalf of M.J. with New Jersey DOBI's IHCAP.  *See* Exhibit 9.

170.    On June 20, 2016 DOBI returned BrainBuilders' appeal and filing fee, stating that the IHCAP may only consider appeals related to utilization review ("UR"), and that "since this is a dispute regarding a payment issue, this appeal is not eligible to be processed as a Stage 3 (external) appeal with the Department . . . ."  *See* Exhibit 10.  A review of DOBI's regulations and bulletins related to IHCAP confirm that IHCAP does not have jurisdiction over non-UR appeals.

171.    As DOBI's IHCAP lacks jurisdiction to review BrainBuilders' non-UR appeals of Aetna's adverse benefit determinations under the SCHI Plan, it is futile to file any further such appeals on behalf of M.J. with DOBI's IHCAP.

iv.    Patient CHILD A.G.

172.    CHILD A.G., a minor child, is a member of the SCHI Plan through CHILD A.G.'s mother M.G.(1)'s employment.

173.    CHILD A.G.'s pediatrician, Dr. William Fenster, diagnosed CHILD A.G. with autism, and on January 13, 2016, Dr. Fenster referred CHILD A.G. to autism therapy services.

174.    There are no in-network autism therapy providers in CHILD A.G.'s geographical area; therefore BrainBuilders, an OON provider, is entitled to be reimbursed for the recognized charge, *i.e.*, BrainBuilders' billed charge.

175.    Aetna did not reimburse BrainBuilders for autism therapy services provided to CHILD A.G. at BrainBuilders' billed charge.

176.    BrainBuilders has filed numerous internal appeals with Aetna on behalf of CHILD A.G. appealing Aetna's incorrect reimbursement rates for numerous services provided to CHILD A.G.   Aetna failed to respond to the vast majority of these appeals in violation of N.J.A.C. 11:24A-3.5(j)-(k) and 29 C.F.R. §2560.503-1.   As of 2017, the total amount of the claims for which BrainBuilders had been underpaid was $2,875,311.53, and the amount for which Aetna had failed to respond to BrainBuilders' appeals was $259,900.  *See* Exhibit 6.

177.    Aetna never issued a Final Appeal Resolution for services provided to CHILD A.G.

178.    BrainBuilders attempted to come to a reasonable resolution with Aetna but Aetna failed to respond.

179.    In accordance with the terms of the SCHI Plan, on June 3, 2016, BrainBuilders filed an external appeal on behalf of CHILD A.G. with the New Jersey DOBI's IHCAP.  *See* Exhibit 9.

180.    On June 20, 2016 DOBI returned BrainBuilders' appeal and filing fee, stating that the IHCAP may only consider appeals related to utilization review ("UR"), and that "since this is a dispute regarding a payment issue, this appeal is not eligible to be processed as a Stage 3 (external) appeal with the Department . . . ."  *See* Exhibit 10.  A review of DOBI's regulations and bulletins related to IHCAP confirm that IHCAP does not have jurisdiction over non-UR appeals.

181.     As DOBI's IHCAP lacks jurisdiction to review BrainBuilders' non-UR appeals of Aetna's adverse benefit determinations under the SCHI Plan, it is futile to file any further such appeals on behalf of CHILD A.G. with DOBI's IHCAP.

v.        Patient CHILD C.B.

182.     CHILD C.B., a minor child, is a member of the SCHI Plan through CHILD C.B.'s mother B.D.B.'s employment.

183.     CB's pediatrician, Dr. Sajjad A. Zaidi, diagnosed CHILD C.B. with autism, and on August 24, 2016, Dr. Zaidi referred CHILD C.B. to autism therapy services.

184.     There are no in-network autism therapy providers in CHILD C.B.'s geographical area; therefore BrainBuilders, an OON provider, is entitled to be reimbursed for the recognized charge, *i.e.*, BrainBuilders' billed charge.

185.     Aetna did not reimburse BrainBuilders for autism therapy services provided to CHILD C.B. at BrainBuilders' billed charge.

186.     BrainBuilders has filed numerous internal appeals with Aetna on behalf of CHILD C.B. appealing Aetna's incorrect reimbursement rates for numerous services provided to CHILD C.B.   Aetna failed to respond to the vast majority of these appeals in violation of N.J.A.C. 11:24A-3.5(j)-(k) and 29 C.F.R. §2560.503-1.   As of 2017, the total amount of the claims for which BrainBuilders had been underpaid was $2,875,311.53, and the amount for which Aetna had failed to respond to BrainBuilders' appeals was $259,900. *See* Exhibit 6.

187.     Aetna never issued a Final Appeal Resolution for services provided to CHILD C.B.

188.     BrainBuilders attempted to come to a reasonable resolution with Aetna, but Aetna failed to respond.

48

189.   In accordance with the terms of the SCHI Plan, on June 3, 2016, BrainBuilders filed an external appeal on behalf of CHILD C.B. with the New Jersey DOBI's IHCAP.  *See* Exhibit 9.

190.   On June 20, 2016 DOBI returned BrainBuilders' appeal and filing fee, stating that the IHCAP may only consider appeals related to utilization review ("UR"), and that "since this is a dispute regarding a payment issue, this appeal is not eligible to be processed as a Stage 3 (external) appeal with the Department . . . ."  *See* Exhibit 10.  A review of DOBI's regulations and bulletins related to IHCAP confirm that IHCAP does not have jurisdiction over non-UR appeals.

191.   As DOBI's IHCAP lacks jurisdiction to review BrainBuilders' non-UR appeals of Aetna's adverse benefit determinations under the SCHI Plan, it is futile to file any further such appeals on behalf of CHILD C.B. with DOBI's IHCAP.

vi.   Patients C.P., D.S.(1), S.Y.(1) and Y.S.(1)

192.   C.P., D.S.(1), Y.S.(1) and S.Y.(1), are all minor children who participate in the SCHI Plan through their parent's employment, respectively.

193.   C.P.'s pediatrician, Dr. Daniel Lepidus, diagnosed C.P. with autism, and on February 7, 2017, Dr. Lepidus referred C.P. to autism therapy services.

194.   D.S.(1)'s pediatrician, Dr. Randye F. Huron, diagnosed D.S.(1) with autism, and on May 13, 2016, Dr. Huron referred D.S.(1) to autism therapy services.

195.   S.Y.(1)'s pediatrician, Dr. Freddie M. Marton, diagnosed S.Y.(1) with autism, and on January 26, 2016, Dr. Marton referred S.Y.(1) to autism therapy services.

196.   Y.S.(1)'s pediatrician, Dr. William R. Fenster, diagnosed Y.S.(1) with autism, and on March 23, 2016, Dr. Fenster referred Y.S.(1) to autism therapy services.

197.    There are no in-network autism therapy providers in C.P., D.S.(1), S.Y.(1) and Y.S's geographical areas; therefore BrainBuilders, an OON provider, is entitled to be reimbursed for the recognized charge, *i.e.*, BrainBuilders' billed charge.

198.    Aetna did not reimburse BrainBuilders for autism therapy services provided to C.P., D.S.(1), S.Y.(1) and Y.S at BrainBuilders' billed charge.

199.    BrainBuilders timely submitted all claims forms to Aetna associated with their treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

### B.    THE GLOBAL PLAN

200.    Several of BrainBuilders' patients are members of Aetna's Open Access Managed Choice Plan prepared exclusively for Global Healthcare Fiscal Services Group LLC (the "Global Plan"), which is a fully-insured preferred provider organization ("PPO") plan that is provided as a large group employee benefit by a private employer.  *See* Exhibit 11.

201.    Both ERISA and New Jersey regulations govern fully-insured ERISA plans, such as the Global Plan.

202.    Aetna's Global Plan permits subscribers to obtain OON health care services from providers who have not entered into contracts with Aetna.

203.    According to the Global Plan Booklet, "Diagnosis and Treatment of Autism and Other Developmental Disabilities" are covered services.  *See id.* at 34.

204.    According to the Global Plan Booklet, "[y]ou have the choice to access licensed providers, hospitals, and facilities outside the network for covered benefits. . . .  Out-of-network providers have not agreed to accept the negotiated charge and may balance bill you for charges

over the amount Aetna pays under the plan.  Aetna will only pay up to the recognized charge."

*Id.* at 12.

205.    Under the Global Plan, Aetna will reimburse for covered expenses by OON providers "up to the recognized charge."  *See id.* at 12.   According to the Global Plan, the "recognized charge" is defined as:

> The amount of an out-of-network provider's charge that is eligible for coverage.
> * * *
> Except for Aetna facility fee schedule, the recognized charge is determined based on the Geographic area where you receive the service or supply.
>
> Except as otherwise specified below, the recognized charge for each service or supply is the lesser of what the provider bills and:
>
> ▪ For professional services and for other services or supplies not mentioned below:
> - 150% of the Medicare allowable rate . . . .

*Id.* at 116.

206.    Pursuant to these terms, the recognized charge for BrainBuilders' autism therapy services under the Global Plan is the lesser of BrainBuilders' billed charge and 150% of the autism therapy services using the same method CMS uses to set the Medicare Allowable Rate.

207.     However, as recognized by CMS in its letter to Rep. Chris Smith, and as detailed above, there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

208.    Therefore, under the plain terms of the Global Plan, Aetna must reimburse BrainBuilders at the "recognized charge," which is BrainBuilders' billed charge

209.    The Global Plan provides procedures for appealing adverse benefits determinations that are not UR related.  *See* Exhibit 11 at 96-99.  These procedures provide "180 calendar days . . . following the receipt of notice of an adverse benefit determination to request [a] Level One appeal."  *Id.* at 97.  There is no time limit specified for filing a Level Two appeal for non-UR claims.  *See id.* at 98.   Furthermore, if Aetna "does not adhere to all claim

determination and appeal requirements", then the appeal requirements are considered exhausted. *Id.*

210.   It is unclear whether the Global Plan contemplates external appeals through DOBI's IHCAP for non-UR appeals.  The Global Plan provisions related to "External Review" specify that external review may be sought for "final adverse benefit determinations based on medical necessity, appropriateness, health care setting, level of care, or effectiveness of a covered benefit."  *Id.* at 99.  However, the Global Plan provisions related to "Exhaustion of Process" state that:

> Unless serious or significant harm has occurred or will imminently occur to you, you must exhaust an appeal through the Independent Health Care Appeals Program before you establish any litigation, arbitration, or administrative proceeding regarding an alleged breach of the group policy terms by Aetna Life Insurance Company; or any matter within the scope of the appeal procedure.

*Id.* at 99.

211.    In accordance with the Global Plan Booklet, BrainBuilders appealed Aetna's reductions of benefits for autism therapy services provided to certain patients.

212.   The Individual Plaintiffs covered by the Global Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.        Patient C.S.

213.   C.S., a minor child, is a member of the Global Plan through C.S.'s mother H.S.'s employment.

214.     C.S.'s pediatrician, Dr. Dorothy M. Pietrucha, diagnosed C.S. with autism, and on or about February 21, 2012, Dr. Pietrucha referred C.S. to autism therapy services.

215.     There are no in-network autism therapy providers in C.S.'s geographical area; therefore BrainBuilders, an OON provider, is entitled to be reimbursed the recognized charge, *i.e.*, BrainBuilders' billed charge.

216.     Aetna did not reimburse BrainBuilders for autism therapy services provided to C.S. at BrainBuilders' billed charge.

217.     BrainBuilders has filed numerous internal appeals with Aetna on behalf of C.S. appealing Aetna's incorrect reimbursement rates for numerous services provided to C.S.  Aetna failed to respond to the vast majority of these appeals, in violation of ERISA and state law.  As of 2017, the total amount of the claims for which BrainBuilders had been underpaid was $2,875,311.53, and the amount for which Aetna has failed to respond to BrainBuilders' appeals was $259,900.  *See* Exhibit 6.

218.     Aetna did issue one Final Appeal Resolution for services provided to C.S. on March 28, 2017 for Claim Number(s) described in the letter as "Multiple – see prior spreadsheet."  In the Final Appeal Resolution letter, received by BrainBuilders shortly thereafter, Aetna upheld the rates used for payment of C.S.'s services, without any explanation as to how Aetna determined the rates it used.

219.     BrainBuilders attempted to come to a reasonable resolution with Aetna, but Aetna failed to respond.

220.     In accordance with the terms of the Global Plan, on June 3, 2016, BrainBuilders filed an external appeal on behalf of C.S. with the New Jersey DOBI's IHCAP. *See* Exhibit 9.

221.    On June 20, 2016, DOBI returned BrainBuilders' appeal and filing fee, stating that the IHCAP may only consider appeals related to utilization review ("UR"), and that "since this is a dispute regarding a payment issue, this appeal is not eligible to be processed as a Stage 3 (external) appeal with the Department . . . ."  *See* Exhibit 10.  A review of DOBI's regulations and bulletins related to IHCAP confirm that IHCAP does not have jurisdiction over non-UR appeals.

222.    As DOBI's IHCAP lacks jurisdiction to review BrainBuilders' non-UR appeals of Aetna's adverse benefit determinations under the Global Plan, it is futile to file any further such appeals on behalf of C.S. with DOBI's IHCAP.

### C.      THE CITRIN PLAN

223.    Certain Brainbuilders' patients are members of Aetna's Open Access Managed Choice (Open Access Gatekeeper PPO Plan) High Deductible Health Plan prepared exclusively for Citrin Cooperman & Company, LLP (the "Citrin Plan"), which is a large group self-funded employee benefit plan provided by a private employer.  *See* Exhibit 12.

224.    As a self-funded plan, the Citrin Plan is governed solely by ERISA.

225.    Aetna's Citrin Plan permits subscribers to obtain OON health care services from providers who have not entered into contracts with Aetna.

226.    According to the Citrin Plan Booklet, covered services for patients with autism spectrum disorder include assessments, evaluations, tests, behavioral health treatments and therapeutic care provided by occupational therapists, physical therapists, and social workers.  *See Id.* at 25-26.

227.    Upon information and belief, under the Citrin Plan services that are arranged by a patient's primary care physician are considered network services.

228.    Upon information and belief, the Citrin Plan reimburses for covered expenses by OON providers.

229.    Upon information and belief, Aetna, under the Citrin Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "300 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 300% rate.

230.    As discussed above, there is no Fair Health rate for the services or CPT codes at issue.

231.    Under the Citrin Plan, if a claim is denied or ignored, in whole or in part, subscribers have a right to know why this was done, to obtain documents relating to the decision without charge, and to appeal any denial.  *See* Exhibit 12 at 96.

232.    In accordance with the requirements of the Citrin Plan Booklet, BrainBuilders has appealed Aetna's reductions in benefits related to certain patients.

233.    The Individual Plaintiffs covered by the Citrin Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.    Patient M.D.F.

234.    M.D.F., a minor child, is a member of the Citrin Plan through M.D.F.'s father D.D.F.'s employment.

235.    M.D.F.'s pediatrician, Dr. Neil Gittlelman, diagnosed M.D.F. with autism, and on January 5, 2015, Dr. Gittlelman referred M.D.F. to autism therapy services.

236.    There are no in-network autism therapy providers in M.D.F.'s geographical area; therefore BrainBuilders, an OON provider, is entitled to be reimbursed for the recognized charge, *i.e.*, BrainBuilders' billed charge.

237.    BrainBuilders has filed numerous internal appeals with Aetna on behalf of M.D.F. appealing Aetna's incorrect reimbursement rates for numerous services provided to M.D.F. Aetna failed to respond to the vast majority of these appeals, in violation of ERISA and state law.  As of 2017, the total amount of the claims for which BrainBuilders had been underpaid was $2,875,311.53, and the amount for which Aetna had failed to respond to BrainBuilders' appeals was $259,900. *See* Exhibit 6.

238.    Despite the Citrin Plan's coverage of the autism therapy services provided by BrainBuilders (*see* Exhibit 12 at 30), Aetna has upheld its denial of M.D.F.'s benefits for autism therapy services by claiming that M.D.F.'s "plan does not cover educational services or training." *See* Exhibit 12.  In so classifying M.D.F.'s covered autism therapy services as not-covered "educational services or training," Aetna has acted arbitrarily, capriciously, and in direct contravention of the plain terms of the Citrin Plan.

239.    Aetna never issued a Final Appeal Resolution to M.D.F.

240.    BrainBuilders attempted to come to a reasonable resolution with Aetna, but Aetna failed to respond.

241.    In accordance with the terms of the Citrin Plan, on June 3, 2016, BrainBuilders filed an external appeal on behalf of M.D.F. with the New Jersey DOBI's IHCAP. *See* Exhibit 9.

242.     On June 20, 2016, DOBI returned BrainBuilders' appeal and filing fee, stating that the IHCAP may only consider appeals related to utilization review ("UR"), and that "since this is a dispute regarding a payment issue, this appeal is not eligible to be processed as a Stage 3 (external) appeal with the Department . . . ."  *See* Exhibit 10.  A review of DOBI's regulations and bulletins related to IHCAP confirm that IHCAP does not have jurisdiction over non-UR appeals.

243.     As DOBI's IHCAP lacks jurisdiction to review BrainBuilders' non-UR appeals of Aetna's adverse benefit determinations under the Citrin Plan, it is futile to file any further such appeals on behalf of M.D.F. with DOBI's IHCAP.

### D.     THE WILNER PLAN

244.     Certain BrainBuilders' patients are members of the Wilner Plan, Aetna's NJ Silver OAMC 2500 90/70 PY HAS TIF Plan, which is a self-funded employee benefit plan provided by a private employer.

245.     As a self-funded plan, the Wilner Plan is governed solely by ERISA.  *See* Exhibit 13.

246.     Aetna's Wilner Plan permits subscribers to obtain Non-Network health care services from providers who have not entered into contracts with Aetna.  *See id.* at 6.

247.     According to the Wilner Plan Booklet, covered services for patients with autism spectrum disorder include occupational therapy, physical therapy, speech therapy, and medically necessary behavioral interventions based on the principles of applied behavior analysis.  *See id.* at 61.

248. According to the Wilner Plan Booklet, "Aetna pays benefits for Covered Charges a Covered person incurs for the treatment of Mental Illness . . . the same way Aetna would for any other Illness, if such treatment is prescribed by a Practitioner." *See id.* at 45.

249. The Individual Plaintiffs covered by the Wilner Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, i.e., BrainBuilders' billed rate.

i.      Patient A.W.

250. A.W., a minor child, is a member of the Wilner Plan through A.W.'s parent S.W.'s employment

251. A.W.'s pediatrician diagnosed A.W. with autism and referred A.W. for autism therapy services.

252. BrainBuilders has filed numerous internal appeals with Aetna on behalf of A.W. appealing Aetna's incorrect reimbursement rates for numerous services provided to A.W. Aetna failed to respond to the vast majority of these appeals in violation of ERISA and state law.

E.      THE NEW ROADS PLAN

253. Certain BrainBuilders' patients are members of Aetna's New Roads Healthcare Plan (the "New Roads Plan").  The New Roads Plan is a fully-insured employee benefit plan provided by a private employer.

254. As a fully-insured plan, the New Roads Plan is governed by ERISA and New Jersey regulations.

255. Upon information and belief, the New Roads Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

256.    Upon information and belief, the New Roads Plan provides covered benefits for patients with mental health illness including autism.

257.    Upon information and belief, the New Roads Plan reimburses for covered expenses by OON providers.

258.    Upon information and belief, Aetna, under the New Roads Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."   As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

259.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

260.    The Individual Plaintiffs covered by the New Roads Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.      Patient CHILD T.M.

261.    CHILD T.M., a minor child, is a member of the New Roads Plan through CHILD T.M.'s parent B.M.'s employment.

262.    BrainBuilders has filed numerous internal appeals with Aetna on behalf of CHILD T.M. appealing Aetna's incorrect reimbursement rates for numerous services provided to CHILD T.M.  Aetna has failed to respond to the vast majority of these appeals in violation of ERISA and state law.

### F.     THE EXTENSIS PLAN

263.    Certain BrainBuilders' patients are members of the Extensis Plan.  The Extensis Plan is a fully-insured employee benefit plan provided by a private employer.

264.    As a fully-insured plan, the Extensis Plan is governed by ERISA and New Jersey regulations.

265.    Upon information and belief, the Extensis Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

266.    Upon information and belief, the Extensis Plan provides covered benefits for patients with mental health illness including autism.

267.    Upon information and belief, the Extensis Plan reimburses for covered expenses by OON providers.

268.    Upon information and belief, Aetna, under the Extensis Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

269.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

270.    The Individual Plaintiffs covered by the Extensis Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion

would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.      Patient I.S.

271.    I.S., a minor child, was treated by BrainBuilders between January 1, 2015 and December 16, 2016. BrainBuilders timely submitted all claims forms to Aetna associated with I.S.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

ii.     Patient S.B.

272.    S.B., a minor child, was treated by BrainBuilders between June 4, 2018 and November 26, 2021. BrainBuilders timely submitted all claims forms to Aetna associated with S.B.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

iii.    Patient M.D.

273.    M.D., a minor child, was treated by BrainBuilders between August 27, 2020 and August 31, 2020. BrainBuilders timely submitted all claims forms to Aetna associated with M.D.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

iv.     Patient CHILD Y.F.

274.    CHILD Y.F., a minor child, has been treated by BrainBuilders since July 12, 2021. BrainBuilders timely submitted all claims forms to Aetna associated with CHILD Y.F.'s

treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

v.      Patient S.G.

275.    S.G., a minor child, was treated by BrainBuilders between July 13, 2017 and December 31, 2019. BrainBuilders timely submitted all claims forms to Aetna associated with S.G.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

vi.      Patient Y.K.

276.    Y.K., a minor child, was treated by BrainBuilders between March 18, 2019 and August 30, 2020. BrainBuilders timely submitted all claims forms to Aetna associated with Y.K.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

vii.      Patient CHILD S.S.

277.    CHILD S.S., a minor child, has been treated by BrainBuilders since February 13, 2020. BrainBuilders timely submitted all claims forms to Aetna associated with CHILD S.S.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

### G.    THE SUPERB STAFFING SERVICES PLAN

278.    Certain BrainBuilders' patients are members of the Superb Staffing Services Plan. On information and belief, the Superb Staffing Services Plan is a fully-insured employee benefit plan provided by a private employer.

279.    As a fully-insured plan, the Superb Staffing Services Plan is governed by ERISA and New Jersey regulations.

280.    Upon information and belief, the Superb Staffing Services Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

281.    Upon information and belief, the Superb Staffing Services Plan provides covered benefits for patients with mental health illness including autism.

282.    Upon information and belief, the Superb Staffing Services Plan reimburses for covered expenses by OON providers.

283.    Upon information and belief, Aetna, under the Superb Staffing Services Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

284.     As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

285.    The Individual Plaintiffs covered by the Superb Staffing Services Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.

In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.      Patient R.L.

286.    R.L., a minor child, was treated by BrainBuilders between January 2, 2017 and July 30, 2017. BrainBuilders timely submitted all claims forms to Aetna associated with R.L.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

## H.      THE WALMART PLAN

287.    Certain BrainBuilders' patients are members of the Walmart Plan.  The Walmart Plan is a self-funded employee benefit plan.

288.    As a self-funded plan, the Walmart Plan is governed solely by ERISA.

289.    Upon information and belief, the Walmart Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

290.    Upon information and belief, the Walmart Plan provides covered benefits for patients with mental health illness including autism.

291.    Upon information and belief, the Walmart Plan reimburses for covered expenses by OON providers.

292.    Upon information and belief, Aetna, under the Walmart Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor

the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

293.     As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

294.     The Individual Plaintiffs covered by the Walmart Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.        Patients CHILD J.M. and Z.M.

295.     CHILD J.M. and Z.M., minor children, have both been treated by BrainBuilders. CHILD J.M. was treated between March 9, 2017 and October 31, 2021. Z.M. has been treated by BrainBuilders since November 27, 2017. BrainBuilders timely submitted all claims forms to Aetna associated with their treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

I.        THE DILIGENCE RESEARCH GROUP PLAN

296.     Certain BrainBuilders' patients are members of the Diligence Research Group Plan.  The Diligence Research Group Plan is a self-funded employee benefit plan.

297.     As a self-funded plan, the Diligence Research Group Plan is governed solely by ERISA.

298.    Upon information and belief, the Diligence Research Group Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

299.    Upon information and belief, the Diligence Research Group Plan provides covered benefits for patients with mental health illness including autism.

300.    Upon information and belief, the Diligence Research Group Plan reimburses for covered expenses by OON providers.

301.    Upon information and belief, Aetna, under the Diligence Research Group Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

302.     As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

303.    The Individual Plaintiffs covered by the Diligence Research Group Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders. In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.      Patient S.O.

304.    S.O., a minor child, was treated by BrainBuilders between January 3, 2017 and December 31, 2017. BrainBuilders timely submitted all claims forms to Aetna associated with

S.O's treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

### J.    THE BRISTOL MYERS SQUIBB PLAN

305.    Certain BrainBuilders' patients are members of the Bristol Myers Squibb Plan. The Bristol Myers Squibb Plan is a self-funded employee benefit plan.

306.    As a self-funded plan, the Bristol Myers Squibb Plan is governed solely by ERISA.

307.    Upon information and belief, the Bristol Myers Squibb Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

308.    Upon information and belief, the Bristol Myers Squibb Plan provides covered benefits for patients with mental health illness including autism.

309.    Upon information and belief, the Bristol Myers Squibb Plan reimburses for covered expenses by OON providers.

310.    Upon information and belief, Aetna, under the Bristol Myers Squibb Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

311.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

312.    The Individual Plaintiffs covered by the Bristol Myers Squibb Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.   In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.        Patient Y.A.

313.    Y.A., a minor child, has been treated by BrainBuilders since July 1, 2019. BrainBuilders timely submitted all claims forms to Aetna associated with Y.A.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

ii.        Patient O.C.

314.    O.C., a minor child, was treated by BrainBuilders between September 3, 2020 and March 18, 2021. BrainBuilders timely submitted all claims forms to Aetna associated with O.C.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

iii.        Patient Q.P.

315.    Q.P., a minor child, was treated by BrainBuilders between January 11, 2021 and January 17, 2021. BrainBuilders timely submitted all claims forms to Aetna associated with Q.P.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

## K.    THE TRINET GROUP PLAN

316.    Certain BrainBuilders' patients are members of the Trinet Group Plan.  The Trinet Group Plan is a fully-insured employee benefit plan provided by a private employer.

317.    As a fully-insured plan, the Trinet Group Plan is governed by ERISA and New Jersey regulations.

318.    Upon information and belief, the Trinet Group Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

319.    Upon information and belief, the Trinet Group Plan provides covered benefits for patients with mental health illness including autism.

320.    Upon information and belief, the Trinet Group Plan reimburses for covered expenses by OON providers.

321.    Upon information and belief, Aetna, under the Trinet Group Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

322.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

323.    The Individual Plaintiffs covered by the Trinet Group Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion

would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.        Patient N.A.

324.    N.A., a minor child, was treated by BrainBuilders between January 16, 2019 and July 24, 2019. BrainBuilders timely submitted all claims forms to Aetna associated with N.A.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

ii.        Patient Y.B.

325.    Y.B., a minor child was treated by BrainBuilders between December 3, 2018 and September 30, 2020. BrainBuilders timely submitted all claims forms to Aetna associated with Y.B.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

iii.        Patients E.B. and G.B.

326.    E.B. and G.B., minor children, were treated by BrainBuilders between January 1, 2019 and December 31, 2020. BrainBuilders timely submitted all claims forms to Aetna associated with their treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

iv.        Patient J.B.(2)

327.    J.B.(2), a minor child, was treated by BrainBuilders between May 16, 2019 and March 9, 2022. BrainBuilders timely submitted all claims forms to Aetna associated with

J.B.(2)'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

v.       Patient C.F.

328.     C.F., a minor child, was treated by BrainBuilders between May 5, 2020 and June 25, 2020. BrainBuilders timely submitted all claims forms to Aetna associated with C.F. treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

vi.      Patient M.R.(2)

329.     M.R.(2), a minor child, was treated by BrainBuilders between February 24, 2021 and June 3, 2022. BrainBuilders timely submitted all claims forms to Aetna associated with M.R.(2) treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

**L.     THE TOMS RIVER REGIONAL SCHOOLS PLAN**

330.     Certain BrainBuilders' patients are members of the Toms River Regional Schools Plan. The Toms River Regional Schools Plan is a self-funded employee benefit plan.

331.     As a self-funded plan, the Toms River Regional Schools Plan is governed solely by ERISA.

332.     Upon information and belief, the Toms River Regional Schools Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

333.    Upon information and belief, the Toms River Regional Schools Plan provides covered benefits for patients with mental health illness including autism.

334.    Upon information and belief, the Toms River Regional Schools Plan reimburses for covered expenses by OON providers.

335.    Upon information and belief, Aetna, under the Toms River Regional Schools Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable." As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

336.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue. *See* Exhibit 4.

337.    The Individual Plaintiffs covered by the Toms River Regional Schools Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders. In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.      Patient CHILD A.B.(1)

338.    CHILD A.B.(1), a minor child, has been treated by BrainBuilders since February 10, 2018. BrainBuilders timely submitted all claims forms to Aetna associated with CHILD A.B.(1)'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

ii.     Patient D.E.

339.    D.E., a minor child, has been treated by BrainBuilders since November 27, 2016. BrainBuilders timely submitted all claims forms to Aetna associated with D.E.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

iii.    Patient M.R.(1)

340.    M.R.(1), a minor child, has been treated by BrainBuilders since July 6, 2022. 2022. BrainBuilders timely submitted all claims forms to Aetna associated with M.R.(1)'s treatments, which Aetna then denied or failed to respond to. Due to Aetna's prior course of dealing and performance in responding to appeals from BrainBuilders, any appeals would be futile.

## M.     THE AMTRAK PLAN

341.    Certain BrainBuilders' patients are members of the Amtrak Plan.  The Amtrak Plan is a self-funded employee benefit plan.

342.    As a self-funded plan, the Amtrak Plan is governed solely by ERISA.

343.    Upon information and belief, the Amtrak Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

344.    Upon information and belief, the Amtrak Plan provides covered benefits for patients with mental health illness including autism.

345.    Upon information and belief, the Amtrak Plan reimburses for covered expenses by OON providers.

346.    Upon information and belief, Aetna, under the Amtrak Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

347.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

348.    The Individual Plaintiffs covered by the Amtrak Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.      Patient B.B.

349.    B.B., a minor child, was treated by BrainBuilders between June 10, 2020 and March 25, 2021. BrainBuilders timely submitted all claims forms to Aetna associated with B.B.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

N.      THE ADP PLAN

350.    Certain BrainBuilders' patients are members of the ADP Plan.  The ADP Plan is a self-funded employee benefit plan.

351.    As a self-funded plan, the ADP Plan is governed solely by ERISA.

352.    Upon information and belief, the ADP Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

353.    Upon information and belief, the ADP Plan provides covered benefits for patients with mental health illness including autism.

354.    Upon information and belief, the ADP Plan reimburses for covered expenses by OON providers.

355.    Upon information and belief, Aetna, under the ADP Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."   As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

356.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

357.    The Individual Plaintiffs covered by the ADP Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.       Patient J.B.(1)

358.    J.B.(1), a minor child, was treated by BrainBuilders between July 14, 2018 and February 12, 2019. BrainBuilders timely submitted all claims forms to Aetna associated with J.B.(1)'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely

appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

### O.   THE TELOS PLAN

359.   Certain BrainBuilders' patients are members of the Telos Plan.  The Telos Plan is a self-funded employee benefit plan.

360.   As a self-funded plan, the Telos Plan is governed solely by ERISA.

361.   Upon information and belief, the Telos Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

362.   Upon information and belief, the Telos Plan provides covered benefits for patients with mental health illness including autism.

363.   Upon information and belief, the Telos Plan reimburses for covered expenses by OON providers.

364.   Upon information and belief, Aetna, under the Telos Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

365.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

366.   The Individual Plaintiffs covered by the Telos Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion

would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.      Patient CHILD A.B.(2)

367.    CHILD A.B.(2), a minor child, was treated by BrainBuilders between September 5, 2017 and August 10, 2018. BrainBuilders timely submitted all claims forms to Aetna associated with CHILD A.B.(2)'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

**P.      THE COHN REZNICK PLAN**

368.    Certain BrainBuilders' patients are members of the Cohn Reznick Plan.  The Cohn Reznick Plan is a self-funded employee benefit plan.

369.    As a self-funded plan, the Cohn Reznick Plan is governed solely by ERISA.

370.    Upon information and belief, the Cohn Reznick Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

371.    Upon information and belief, the Cohn Reznick Plan provides covered benefits for patients with mental health illness including autism.

372.    Upon information and belief, the Cohn Reznick Plan reimburses for covered expenses by OON providers.

373.    Upon information and belief, Aetna, under the Cohn Reznick Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor

the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

374.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

375.    The Individual Plaintiffs covered by the Cohn Reznick Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.      Patient A.Y.B.

376.    A.Y.B., a minor child, has been treated by BrainBuilders since January 1, 2021.  BrainBuilders timely submitted all claims forms to Aetna associated with A.Y.B.'s treatments, which Aetna then denied or underpaid.  BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

## Q.     THE NEW YORK POST PLAN

377.    Certain BrainBuilders' patients are members of the New York Post Plan.  The New York Post Plan is a self-funded employee benefit plan.

378.    As a self-funded plan, the New York Post Plan is governed solely by ERISA.

379.    Upon information and belief, the New York Post Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

380.    Upon information and belief, the New York Post Plan provides covered benefits for patients with mental health illness including autism.

381.    Upon information and belief, the New York Post Plan reimburses for covered expenses by OON providers.

382.    Upon information and belief, Aetna, under the New York Post Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

383.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

384.    The Individual Plaintiffs covered by the New York Post Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.    Patient CHILD L.B.

385.    CHILD L.B., a minor child, was treated by BrainBuilders between August 24, 2020 and January 28, 2021. BrainBuilders timely submitted all claims forms to Aetna associated with CHILD L.B.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

### R.      THE DOCUSIGN INC. PLAN

386.   Certain BrainBuilders' patients are members of the Docusign Inc. Plan.   The Docusign Inc. Plan is a self-funded employee benefit plan.

387.   As a self-funded plan, the Docusign Inc. Plan is governed solely by ERISA.

388.   Upon information and belief, the Docusign Inc. Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

389.   Upon information and belief, the Docusign Inc. Plan provides covered benefits for patients with mental health illness including autism.

390.   Upon information and belief, the Docusign Inc. Plan reimburses for covered expenses by OON providers.

391.   Upon information and belief, Aetna, under the Docusign Inc. Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."   As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

392.   As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

393.   The Individual Plaintiffs covered by the Docusign Inc. Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.      Patient CHILD J.C.(1)

394.    CHILD J.C.(1), a minor child, has been treated by BrainBuilders since June 3, 2022. BrainBuilders timely submitted all claims forms to Aetna associated with CHILD J.C.(1)'s treatments, which Aetna has denied or failed to respond to. Due to Aetna's prior course of dealing and performance in responding to appeals from BrainBuilders, any appeals would be futile.

### S.      THE AMNEAL PHARMACEUTICALS LLC PLAN

395.    Certain BrainBuilders' patients are members of the Amneal Pharmaceuticals LLC Plan.  The Amneal Pharmaceuticals LLC Plan is a self-funded employee benefit plan.

396.    As a self-funded plan, the Amneal Pharmaceuticals LLC Plan is governed solely by ERISA.

397.    Upon information and belief, the Amneal Pharmaceuticals LLC Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

398.    Upon information and belief, the Amneal Pharmaceuticals LLC Plan provides covered benefits for patients with mental health illness including autism.

399.    Upon information and belief, the Amneal Pharmaceuticals LLC Plan reimburses for covered expenses by OON providers.

400.    Upon information and belief, Aetna, under the Amneal Pharmaceuticals LLC Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes

0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

401.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

402.    The Individual Plaintiffs covered by the Amneal Pharmaceuticals LLC Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.      Patient CHILD S.C.(1)

403.    CHILD S.C.(1), a minor child, has been treated by BrainBuilders since November 20, 2018. BrainBuilders timely submitted all claims forms to Aetna associated with CHILD S.C.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

**T.      THE INFOSYS LIMITED PLAN**

404.    Certain BrainBuilders' patients are members of the Infosys Limited Plan.  The Infosys Limited Plan is a self-funded employee benefit plan.

405.    As a self-funded plan, the Infosys Limited Plan is governed solely by ERISA.

406.    Upon information and belief, the Infosys Limited Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

407.    Upon information and belief, the Infosys Limited Plan provides covered benefits for patients with mental health illness including autism.

408.     Upon information and belief, the Infosys Limited Plan reimburses for covered expenses by OON providers.

409.     Upon information and belief, Aetna, under the Infosys Limited Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

410.     As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

411.     The Individual Plaintiffs covered by the Infosys Limited Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.     Patient CHILD S.C.(2)

412.     CHILD S.C.(2), a minor child, has been treated by BrainBuilders since September 16, 2021. BrainBuilders timely submitted all claims forms to Aetna associated with CHILD S.C.(2)'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

## U.    THE RECKITT BENCKISER LLC PLAN

413.    Certain BrainBuilders' patients are members of the Reckitt Benckister LLC Plan. The Reckitt Benckister LLC Plan is a self-funded employee benefit plan.

414.    As a self-funded plan, the Reckitt Benckister LLC Plan is governed solely by ERISA.

415.    Upon information and belief, the Reckitt Benckister LLC Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

416.    Upon information and belief, the Reckitt Benckister LLC Plan provides covered benefits for patients with mental health illness including autism.

417.    Upon information and belief, the Reckitt Benckister LLC Plan reimburses for covered expenses by OON providers.

418.    Upon information and belief, Aetna, under the Reckitt Benckister LLC Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

419.     As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

420.    The Individual Plaintiffs covered by the Reckitt Benckister LLC Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders. In each of these instances, after Plaintiffs exhausted their administrative remedies or where

exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.       Patient C.C.

421.    C.C., a minor child, was treated by BrainBuilders between December 13, 2021 and April 27, 2022. BrainBuilders timely submitted all claims forms to Aetna associated with C.C.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

## V.    THE MAIL HANDLERS BENEFIT PLAN

422.    Certain BrainBuilders' patients are members of the Mail Handlers Benefit Plan. The Mail Handlers Benefit Plan is a self-funded employee benefit plan.

423.    As a self-funded plan, the Mail Handlers Benefit Plan is governed solely by ERISA.

424.    Upon information and belief, the Mail Handlers Benefit Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

425.    Upon information and belief, the Mail Handlers Benefit Plan provides covered benefits for patients with mental health illness including autism.

426.    Upon information and belief, the Mail Handlers Benefit Plan reimburses for covered expenses by OON providers.

427.    Upon information and belief, Aetna, under the Mail Handlers Benefit Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable." As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T –

0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

428.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

429.    The Individual Plaintiffs covered by the Mail Handlers Benefit Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders. In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.      Patient J.C.(2)

430.    J.C.(2), a minor child, has been treated by BrainBuilders since April 28, 2021. BrainBuilders timely submitted all claims forms to Aetna associated with J.C.(2)'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

W.      **THE PRIDESTAFF INC. PLAN**

431.    Certain BrainBuilders' patients are members of the Pridestaff Inc. Plan.  On information and belief, the Pridestaff Inc. Plan is a self-funded employee benefit plan.

432.    As a self-funded plan, the Pridestaff Inc. Plan is governed solely by ERISA.

433.    Upon information and belief, the Pridestaff Inc. Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

434.    Upon information and belief, the Pridestaff Inc. Plan provides covered benefits for patients with mental health illness including autism.

435.    Upon information and belief, the Pridestaff Inc. Plan reimburses for covered expenses by OON providers.

436.    Upon information and belief, Aetna, under the Pridestaff Inc. Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

437.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

438.    The Individual Plaintiffs covered by the Pridestaff Inc. LLC Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.    Patient I.C.

439.    I.C., a minor child, has been treated by BrainBuilders since February 8, 2022. BrainBuilders timely submitted all claims forms to Aetna associated with I.C.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

## X.       THE UNISYS PLAN

440.    Certain BrainBuilders' patients are members of the Unisys Plan.  The Unisys Plan is a self-funded employee benefit plan.

441.    As a self-funded plan, the Unisys Plan is governed solely by ERISA.

442.    Upon information and belief, the Unisys Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

443.    Upon information and belief, the Unisys Plan provides covered benefits for patients with mental health illness including autism.

444.    Upon information and belief, the Unisys Plan reimburses for covered expenses by OON providers.

445.    Upon information and belief, Aetna, under the Unisys Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."   As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

446.     As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

447.    The Individual Plaintiffs covered by the Unisys Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.      Patient CHILD D.C.

448.    CHILD D.C., a minor child, was treated by BrainBuilders between August 13, 2020 and December 31, 2021. BrainBuilders timely submitted all claims forms to Aetna associated with CHILD D.C.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

## Y.      THE SOUTHERN COASTAL HIF PLAN

449.    Certain BrainBuilders' patients are members of the Southern Coastal HIF Plan. The Southern Coastal HIF Plan is a self-funded employee benefit plan.

450.    As a self-funded plan, the Southern Coastal HIF Plan is governed solely by ERISA.

451.    Upon information and belief, the Southern Coastal HIF Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

452.    Upon information and belief, the Southern Coastal HIF Plan provides covered benefits for patients with mental health illness including autism.

453.    Upon information and belief, the Southern Coastal HIF Plan reimburses for covered expenses by OON providers.

454.    Upon information and belief, Aetna, under the Southern Coastal HIF Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

455.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

456.    The Individual Plaintiffs covered by the Southern Coastal HIF Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.    Patient D.D.

457.    D.D., a minor child, has been treated by BrainBuilders since April 13, 2022. BrainBuilders timely submitted all claims forms to Aetna associated with D.D.'s treatments, which Aetna has denied or failed to respond to. Due to Aetna's prior course of dealing and performance in responding to appeals from BrainBuilders, any appeals would be futile.

**Z.    THE IMS TECHNOLOGIES PLAN**

458.    Certain BrainBuilders' patients are members of the IMS Technologies Plan.  The IMS Technologies Plan is a self-funded employee benefit plan.

459.    As a self-funded plan, the IMS Technologies Plan is governed solely by ERISA.

460.    Upon information and belief, the IMS Technologies Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

461.    Upon information and belief, the IMS Technologies Plan provides covered benefits for patients with mental health illness including autism.

462.    Upon information and belief, the IMS Technologies Plan reimburses for covered expenses by OON providers.

463.    Upon information and belief, Aetna, under the IMS Technologies Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including

but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

464.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

465.    The Individual Plaintiffs covered by the IMS Technologies Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.      Patient D.D.J.

466.    D.D.J., a minor child, has been treated by BrainBuilders since February 1, 2022. BrainBuilders timely submitted all claims forms to Aetna associated with D.D.J.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

## AA.    THE OFS FITEL LLC PLAN

467.    Certain BrainBuilders' patients are members of the OFS Fitel LLC Plan.  The OFS Fitel LLC Plan is a self-funded employee benefit plan.

468.    As a self-funded plan, the OFS Fitel LLC Plan is governed solely by ERISA.

469.    Upon information and belief, the OFS Fitel LLC Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

470.     Upon information and belief, the OFS Fitel LLC Plan provides covered benefits for patients with mental health illness including autism.

471.     Upon information and belief, the OFS Fitel LLC Plan reimburses for covered expenses by OON providers.

472.     Upon information and belief, Aetna, under the OFS Fitel LLC Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

473.     As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

474.     The Individual Plaintiffs covered by the OFS Fitel LLC Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.        Patient E.F.

475.     E.F., a minor child, has been treated by BrainBuilders since May 12, 2022. BrainBuilders timely submitted all claims forms to Aetna associated with E.F.'s treatments, which Aetna then denied or failed to respond to. Due to Aetna's prior course of dealing and performance in responding to appeals from BrainBuilders, any appeals would be futile.

## BB.   THE BANK OF AMERICA PLAN

476.   Certain BrainBuilders' patients are members of the Bank of America Plan.  The Bank of America Plan is a self-funded employee benefit plan.

477.   As a self-funded plan, the Bank of America Plan is governed solely by ERISA.

478.   Upon information and belief, the Bank of America Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

479.   Upon information and belief, the Bank of America Plan provides covered benefits for patients with mental health illness including autism.

480.   Upon information and belief, the Bank of America Plan reimburses for covered expenses by OON providers.

481.   Upon information and belief, Aetna, under the Bank of America Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

482.   As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

483.   The Individual Plaintiffs covered by the Bank of America Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.      Patient W.F.

484.    W.F., a minor child, has been treated by BrainBuilders since June 10, 2018. BrainBuilders timely submitted all claims forms to Aetna associated with W.F.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

## CC.    THE ARUP US INC. PLAN

485.    Certain BrainBuilders' patients are members of the Arup US Inc. Plan.  The Arup US Inc. Plan is a self-funded employee benefit plan.

486.    As a self-funded plan, the Arup US Inc. Plan is governed solely by ERISA.

487.    Upon information and belief, the Arup US Inc. Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

488.    Upon information and belief, the Arup US Inc. Plan provides covered benefits for patients with mental health illness including autism.

489.    Upon information and belief, the Arup US Inc. Plan reimburses for covered expenses by OON providers.

490.    Upon information and belief, Aetna, under the Arup US Inc. Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

491.     As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

492.     The Individual Plaintiffs covered by the Arup US Inc. Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.       Patient G.F.

493.     G.F., a minor child, has been treated by BrainBuilders since March 8, 2022. BrainBuilders timely submitted all claims forms to Aetna associated with G.F.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

## DD.     THE RAY BUILDERS INC. PLAN

494.     Certain BrainBuilders' patients are members of the Ray Builders Inc. Plan.  The Ray Builders Inc. Plan is a fully-insured employee benefit plan.

495.     As a fully-insured plan, the Ray Builders Inc. Plan is governed by ERISA and New Jersey regulations.

496.     Upon information and belief, the Ray Builders Inc. Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

497.     Upon information and belief, the Ray Builders Inc. Plan provides covered benefits for patients with mental health illness including autism.

498.    Upon information and belief, the Ray Builders Inc. Plan reimburses for covered expenses by OON providers.

499.    Upon information and belief, Aetna, under the Ray Builders Inc. Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

500.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

501.    The Individual Plaintiffs covered by the Ray Builders Inc. Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.    Patient R.G.

502.    R.G., a minor child, has been treated by BrainBuilders since January 5, 2022. BrainBuilders timely submitted all claims forms to Aetna associated with R.G.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

### EE.   THE TRYKO PARTNERS PLAN

503.   Certain BrainBuilders' patients are members of the Tryko Partners Plan.   The Tryko Partners Plan is a fully-insured employee benefit plan.

504.   As a fully-insured plan, the Tryko Partners Plan is governed by ERISA and New Jersey regulations.

505.   Upon information and belief, the Tryko Partners Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

506.   Upon information and belief, the Tryko Partners Plan provides covered benefits for patients with mental health illness including autism.

507.   Upon information and belief, the Tryko Partners Plan reimburses for covered expenses by OON providers.

508.   Upon information and belief, Aetna, under the Tryko Partners Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."   As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

509.   As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

510.   The Individual Plaintiffs covered by the Tryko Partners Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.   In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion

would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.      Patient CHILD M.G.

511.     CHILD M.G., a minor child, was treated by BrainBuilders between November 1, 2018 and January 18, 2022. BrainBuilders timely submitted all claims forms to Aetna associated with CHILD M.G.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

**FF.     THE JOHNSON & JOHNSON PLAN**

512.     Certain BrainBuilders' patients are members of the Johnson & Johnson Plan.  The Johnson & Johnson Plan is a self-funded employee benefit plan.

513.     As a self-funded plan, the Johnson & Johnson Plan is governed solely by ERISA.

514.     Upon information and belief, the Johnson & Johnson Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

515.     Upon information and belief, the Johnson & Johnson Plan provides covered benefits for patients with mental health illness including autism.

516.     Upon information and belief, the Johnson & Johnson Plan reimburses for covered expenses by OON providers.

517.     Upon information and belief, Aetna, under the Johnson & Johnson Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor

the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

518.     As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

519.     The Individual Plaintiffs covered by the Johnson & Johnson Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.       Patient N.G.

520.     N.G., a minor child, has been treated by BrainBuilders since January 4, 2021. BrainBuilders timely submitted all claims forms to Aetna associated with N.G.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

## GG.   THE TRANSAMERICA CORPORATION PLAN

521.     Certain BrainBuilders' patients are members of the Transamerica Corporation Plan.  On information and belief, the Transamerica Corporation Plan is a self-funded employee benefit plan.

522.     As a self-funded plan, the Transamerica Corporation Plan is governed solely by ERISA.

523.   Upon information and belief, the Transamerica Corporation Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

524.   Upon information and belief, the Transamerica Corporation Plan provides covered benefits for patients with mental health illness including autism.

525.   Upon information and belief, the Transamerica Corporation Plan reimburses for covered expenses by OON providers.

526.   Upon information and belief, Aetna, under the Transamerica Corporation Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."   As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

527.   As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

528.   The Individual Plaintiffs covered by the Transamerica Corporation Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders. In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.      Patient M.K.

529.   M.K., a minor child, was treated by BrainBuilders between April 1, 2020 and December 30, 2021. BrainBuilders timely submitted all claims forms to Aetna associated with

M.K.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

### HH.   THE JUSTWORKS EMPLOYMENT GROUP PLAN

530.    Certain BrainBuilders' patients are members of the Justworks Employment Group Plan.  The Justworks Employment Group Plan is a fully-insured employee benefit plan.

531.    As a fully-insured plan, the Justworks Employment Group Plan is governed by ERISA and New Jersey regulations.

532.    Upon information and belief, the Justworks Employment Group Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

533.    Upon information and belief, the Justworks Employment Group Plan provides covered benefits for patients with mental health illness including autism.

534.    Upon information and belief, the Justworks Employment Group Plan reimburses for covered expenses by OON providers.

535.    Upon information and belief, Aetna, under the Justworks Employment Group Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

536.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

537.    The Individual Plaintiffs covered by the Justworks Employment Group Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.      Patients T.Y. and Y.Y.

538.    T.Y. and Y.Y., minor children, were treated by BrainBuilders between August 1, 2019 and January 31, 2022. BrainBuilders timely submitted all claims forms to Aetna associated with their treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

## II.    THE BED BATH & BEYOND PLAN

539.    Certain BrainBuilders' patients are members of the Bed Bath & Beyond Plan. The Bed Bath & Beyond Plan is a self-funded employee benefit plan.

540.    As a self-funded plan, the Bed Bath & Beyond Plan is governed solely by ERISA.

541.    Upon information and belief, the Bed Bath & Beyond Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

542.    Upon information and belief, the Bed Bath & Beyond Plan provides covered benefits for patients with mental health illness including autism.

543.    Upon information and belief, the Bed Bath & Beyond Plan reimburses for covered expenses by OON providers.

544.    Upon information and belief, Aetna, under the Bed Bath & Beyond Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including

but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

545.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

546.    The Individual Plaintiffs covered by the Bed Bath & Beyond Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

### i.        Patient CHILD A.L.

547.    CHILD A.L., a minor child, has been treated by BrainBuilders since January 18, 2022. BrainBuilders timely submitted all claims forms to Aetna associated with CHILD A.L.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

### ii.       Patients CHILD J.S. and CHILD R.S.(2)

548.    CHILD J.S. and CHILD R.S.(2), minor children, have been treated by BrainBuilders since February 11, 2020. BrainBuilders timely submitted all claims forms to Aetna associated with their treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

JJ.     THE 315 ARCH ST REALTY LP PLAN

549.    Certain BrainBuilders' patients are members of the 315 Arch St Realty LP Plan. The 315 Arch St Realty LP Plan is a fully-insured employee benefit plan.

550.    As a fully-insured plan, the 315 Arch St Realty LP Plan is governed by ERISA and New Jersey regulations.

551.    Upon information and belief, the 315 Arch St Realty LP Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

552.    Upon information and belief, the 315 Arch St Realty LP Plan provides covered benefits for patients with mental health illness including autism.

553.    Upon information and belief, the 315 Arch St Realty LP Plan reimburses for covered expenses by OON providers.

554.    Upon information and belief, Aetna, under the 315 Arch St Realty LP Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

555.     As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

556.    The Individual Plaintiffs covered by the 315 Arch St Realty LP Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders. In each of these instances, after Plaintiffs exhausted their administrative remedies or where

exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.      Patient A.M.

557.    A.M., a minor child, was treated by BrainBuilders between December 6, 2018 and April 14, 2019. BrainBuilders timely submitted all claims forms to Aetna associated with A.M.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

## KK.    THE AMAZON PLAN

558.    Certain BrainBuilders' patients are members of the Amazon Plan.  The Amazon Plan is a self-funded employee benefit plan.

559.    As a self-funded plan, the Amazon Plan is governed solely by ERISA.

560.    Upon information and belief, the Amazon Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

561.    Upon information and belief, the Amazon Plan provides covered benefits for patients with mental health illness including autism.

562.    Upon information and belief, the Amazon Plan reimburses for covered expenses by OON providers.

563.    Upon information and belief, Aetna, under the Amazon Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor

the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

564.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

565.    The Individual Plaintiffs covered by the Amazon Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.      Patient X.M.

566.    X.M., a minor child, has been treated by BrainBuilders since May 30, 2022. BrainBuilders timely submitted all claims forms to Aetna associated with X.M.'s treatments, which Aetna then denied or failed to respond to. Due to Aetna's prior course of dealing and performance in responding to appeals from BrainBuilders, any appeals would be futile.

ii.     Patients D.M. and CHILD T.W.

567.    D.M. and CHILD T.W., minor children, have both been treated by BrainBuilders. D.M. was treated by BrainBuilders between October 29, 2021 and May 14, 2022. CHILD T.W. has been treated by BrainBuilders since March 29, 2022. BrainBuilders timely submitted all claims forms to Aetna associated with their treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

iii.    Patient S.T.

568.     S.T., a minor child, has been treated by BrainBuilders since June 23, 2022. BrainBuilders timely submitted all claims forms to Aetna associated with S.T.'s treatments, which Aetna then denied or failed to respond to. Due to Aetna's prior course of dealing in responding to appeals from BrainBuilders, any appeals would be futile.

## LL.     THE PERTH AMBOY BOARD OF EDUCATION PLAN

569.     Certain BrainBuilders' patients are members of the Perth Amboy Board of Education Plan.  The Perth Amboy Board of Education Plan is a self-funded employee benefit plan.

570.     As a self-funded plan, the Perth Amboy Board of Education Plan is governed solely by ERISA.

571.     Upon information and belief, the Perth Amboy Board of Education Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

572.     Upon information and belief, the Perth Amboy Board of Education Plan provides covered benefits for patients with mental health illness including autism.

573.     Upon information and belief, the Perth Amboy Board of Education Plan reimburses for covered expenses by OON providers.

574.     Upon information and belief, Aetna, under the Perth Amboy Board of Education Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

575.   As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

576.   The Individual Plaintiffs covered by the Perth Amboy Board of Education Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.       Patient N.M.

577.   N.M., a minor child, has been treated by BrainBuilders since July 4, 2018. BrainBuilders timely submitted all claims forms to Aetna associated with N.M.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

**MM.   THE CITIBANK PLAN**

578.   Certain BrainBuilders' patients are members of the Citibank Plan.  The Citibank Plan is a self-funded employee benefit plan.

579.   As a self-funded plan, the Citibank Plan is governed solely by ERISA.

580.   Upon information and belief, the Citibank Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

581.   Upon information and belief, the Citibank Plan provides covered benefits for patients with mental health illness including autism.

582.   Upon information and belief, the Citibank Plan reimburses for covered expenses by OON providers.

583.    Upon information and belief, Aetna, under the Citibank Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

584.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

585.    The Individual Plaintiffs covered by the Citibank Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.    Patient R.M.

586.    R.M., a minor child, was treated by BrainBuilders between October 24, 2018 and March 25, 2019. BrainBuilders timely submitted all claims forms to Aetna associated with R.M.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

**NN.    THE TAIHO ONCOLOGY INC. PLAN**

587.    Certain BrainBuilders' patients are members of the Taiho Oncology Inc. Plan. The Taiho Oncology Inc. Plan is a self-funded employee benefit plan.

588.    As a self-funded plan, the Taiho Oncology Inc. Plan is governed solely by ERISA.

589.    Upon information and belief, the Taiho Oncology Inc. Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

590.    Upon information and belief, the Taiho Oncology Inc. Plan provides covered benefits for patients with mental health illness including autism.

591.    Upon information and belief, the Taiho Oncology Inc. Plan reimburses for covered expenses by OON providers.

592.    Upon information and belief, Aetna, under the Taiho Oncology Inc. Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

593.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

594.    The Individual Plaintiffs covered by the Taiho Oncology Inc. Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

    i.   Patient D.N.

595.     D.N., a minor child, has been treated by BrainBuilders since January 31, 2022. BrainBuilders timely submitted all claims forms to Aetna associated with D.N.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

## OO.     THE BAUSCH HEALTH US LLC PLAN

596.     Certain BrainBuilders' patients are members of the Bausch Health LLC Plan. The Bausch Health LLC Plan is a self-funded employee benefit plan.

597.     As a self-funded plan, the Bausch Health LLC Plan is governed solely by ERISA.

598.     Upon information and belief, the Bausch Health LLC Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

599.     Upon information and belief, the Bausch Health LLC Plan provides covered benefits for patients with mental health illness including autism.

600.     Upon information and belief, the Bausch Health LLC Plan reimburses for covered expenses by OON providers.

601.     Upon information and belief, Aetna, under the Bausch Health LLC Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

602.     As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

603.    The Individual Plaintiffs covered by the Bausch Health LLC Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.    Patient N.P.

604.    N.P., a minor child, has been treated by BrainBuilders since January 29, 2022. BrainBuilders timely submitted all claims forms to Aetna associated with N.P.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

## PP.    THE CENTRAL JERSEY HIF PLAN

605.    Certain BrainBuilders' patients are members of the Central Jersey HIF Plan.  The Central Jersey HIF Plan is a self-funded employee benefit plan.

606.    As a self-funded plan, the Central Jersey HIF Plan is governed solely by ERISA.

607.    Upon information and belief, the Central Jersey HIF Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

608.    Upon information and belief, the Central Jersey HIF Plan provides covered benefits for patients with mental health illness including autism.

609.    Upon information and belief, the Central Jersey HIF Plan reimburses for covered expenses by OON providers.

610.    Upon information and belief, Aetna, under the Central Jersey HIF Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including

but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

611.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

612.    The Individual Plaintiffs covered by the Central Jersey HIF Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.      Patient Y.S.(2)

613.    Y.S.(2), a minor child, has been treated by BrainBuilders since April 28, 2022. BrainBuilders timely submitted all claims forms to Aetna associated with Y.S.(2)'s treatments, which Aetna then denied or failed to respond to. Due to Aetna's prior course of dealing and performance in responding to appeals from BrainBuilders, any appeals would be futile.

## QQ.   THE BETH MEDRASH GOVOHA OF AMERICA INC. PLAN

614.    Certain BrainBuilders' patients are members of the Beth Medrash Govoha of America Inc. Plan.  The Beth Medrash Govoha of America Inc. Plan is a fully-insured employee benefit plan.

615.    As a fully-insured plan, the Beth Medrash Govoha of America Inc. Plan is governed by ERISA and New Jersey regulations.

616.    Upon information and belief, the Beth Medrash Govoha of America Inc. Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

617.    Upon information and belief, the Beth Medrash Govoha of America Inc. Plan provides covered benefits for patients with mental health illness including autism.

618.    Upon information and belief, the Beth Medrash Govoha of America Inc. Plan reimburses for covered expenses by OON providers.

619.    Upon information and belief, Aetna, under the Beth Medrash Govoha of America Inc. Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

620.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

621.    The Individual Plaintiffs covered by the Beth Medrash Govoha of America Inc. Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.    Patient T.S.

622.    T.S., a minor child, was treated by BrainBuilders between April 9, 2018 and December 31, 2018. BrainBuilders timely submitted all claims forms to Aetna associated with

T.S.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

### RR.    THE RJ BRANDS LLC DBA CHEFMAN PLAN

623.    Certain BrainBuilders' patients are members of the RJ Brands LLC DBA Chefman Plan.  The RJ Brands LLC DBA Chefman Plan is a fully-insured employee benefit plan.

624.    As a fully-insured plan, the RJ Brands LLC DBA Chefman Plan is governed by ERISA and New Jersey regulations.

625.    Upon information and belief, the RJ Brands LLC DBA Chefman Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

626.    Upon information and belief, the RJ Brands LLC DBA Chefman Plan provides covered benefits for patients with mental health illness including autism.

627.    Upon information and belief, the RJ Brands LLC DBA Chefman Plan reimburses for covered expenses by OON providers.

628.    Upon information and belief, Aetna, under the RJ Brands LLC DBA Chefman Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

629.     As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

630.     The Individual Plaintiffs covered by the RJ Brands LLC DBA Chefman Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.     Patient CHILD A.S.(1)

631.     CHILD A.S.(1), a minor child, was treated by BrainBuilders between January 5, 2021 and December 31, 2021. BrainBuilders timely submitted all claims forms to Aetna associated with CHILD A.S.(1)'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

SS.     THE COGNIZANT PLAN

632.     Certain BrainBuilders' patients are members of the Cognizant Plan.  The Cognizant Plan is a self-funded employee benefit plan.

633.     As a self-funded plan, the Cognizant Plan is governed solely by ERISA.

634.     Upon information and belief, the Cognizant Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

635.     Upon information and belief, the Cognizant Plan provides covered benefits for patients with mental health illness including autism.

636.     Upon information and belief, the Cognizant Plan reimburses for covered expenses by OON providers.

637.    Upon information and belief, Aetna, under the Cognizant Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."   As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

638.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

639.    The Individual Plaintiffs covered by the Cognizant Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.    Patient D.S.(2)

640.    D.S.(2), a minor child, has been treated by BrainBuilders since July 22, 2021. BrainBuilders timely submitted all claims forms to Aetna associated with D.S.(2)'s treatments, which Aetna then denied or failed to respond to. Due to Aetna's prior course of dealing and performance in responding to appeals from BrainBuilders, any appeals would be futile.

ii.    Patient CHILD R.S.(1)

641.    CHILD R.S.(1), a minor child, has been treated by BrainBuilders since December 7, 2021. BrainBuilders timely submitted all claims forms to Aetna associated with CHILD R.S.(1)'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely

117

appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

iii.      Patient V.T.

642.    V.T., a minor child, was treated by BrainBuilders between November 5, 2018 and December 31, 2018. BrainBuilders timely submitted all claims forms to Aetna associated with V.T.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

**TT.    THE TIAA CONSUMER CHOICE PLAN**

643.    Certain BrainBuilders' patients are members of the TIAA Consumer Choice Plan. The TIAA Consumer Choice Plan is a self-funded employee benefit plan.

644.    As a self-funded plan, the TIAA Consumer Choice Plan is governed solely by ERISA.

645.    Upon information and belief, the TIAA Consumer Choice Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

646.    Upon information and belief, the TIAA Consumer Choice Plan provides covered benefits for patients with mental health illness including autism.

647.    Upon information and belief, the TIAA Consumer Choice Plan reimburses for covered expenses by OON providers.

648.    Upon information and belief, Aetna, under the TIAA Consumer Choice Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there

currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T –
0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare
allowable amount" that it is using to calculate the 150% rate.

649.     As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is
no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

650.     The Individual Plaintiffs covered by the TIAA Consumer Choice Plan have had
their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.
In each of these instances, after Plaintiffs exhausted their administrative remedies or where
exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at
the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.          Patient CHILD A.S.(2)

651.     CHILD A.S.(2), a minor child, has been treated by BrainBuilders since January
12, 2022. BrainBuilders timely submitted all claims forms to Aetna associated with CHILD
A.S.(2)'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely
appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored
by Aetna, and thus rendering any additional appeals futile.

UU.    THE CLARK BOARD OF EDUCATION PLAN

652.     Certain BrainBuilders' patients are members of the Clark Board Of Education
Plan.  The Clark Board Of Education Plan is a self-funded employee benefit plan.

653.     As a self-funded plan, the Clark Board Of Education Plan is governed solely by
ERISA.

654. Upon information and belief, the Clark Board Of Education Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

655. Upon information and belief, the Clark Board Of Education Plan provides covered benefits for patients with mental health illness including autism.

656. Upon information and belief, the Clark Board Of Education Plan reimburses for covered expenses by OON providers.

657. Upon information and belief, Aetna, under the Clark Board Of Education Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

658. As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

659. The Individual Plaintiffs covered by the Clark Board Of Education Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders. In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.      Patients G.S. and N.S.

660. G.S. and N.S., minor children, have been treated by BrainBuilders since September 1, 2020. BrainBuilders timely submitted all claims forms to Aetna associated with

their treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

## VV.   THE PACIRA PHARMACEUTICALS PLAN

661.    Certain BrainBuilders' patients are members of the Pacira Pharmaceuticals Plan. The Pacira Pharmaceuticals Plan is a self-funded employee benefit plan.

662.    As a self-funded plan, the Pacira Pharmaceuticals Plan is governed solely by ERISA.

663.    Upon information and belief, the Pacira Pharmaceuticals Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

664.    Upon information and belief, the Pacira Pharmaceuticals Plan provides covered benefits for patients with mental health illness including autism.

665.    Upon information and belief, the Pacira Pharmaceuticals Plan reimburses for covered expenses by OON providers.

666.    Upon information and belief, Aetna, under the Pacira Pharmaceuticals Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

667.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

668.   The Individual Plaintiffs covered by the Pacira Pharmaceuticals Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders. In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.      Patient G.T.

669.   G.T., a minor child, was treated by BrainBuilders between June 3, 2019 and May 30, 2020. BrainBuilders timely submitted all claims forms to Aetna associated with G.T.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

## WW.   THE TATA CONSULTANCY SERVICES PLAN

670.   Certain BrainBuilders' patients are members of the Tata Consultancy Services Plan.  The Tata Consultancy Services Plan is a self-funded employee benefit plan.

671.   As a self-funded plan, the Tata Consultancy Services Plan is governed solely by ERISA.

672.   Upon information and belief, the Tata Consultancy Services Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

673.   Upon information and belief, the Tata Consultancy Services Plan provides covered benefits for patients with mental health illness including autism.

674.   Upon information and belief, the Tata Consultancy Services Plan reimburses for covered expenses by OON providers.

675.     Upon information and belief, Aetna, under the Tata Consultancy Services Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

676.     As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

677.     The Individual Plaintiffs covered by the Tata Consultancy Services Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders. In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.     Patient CHILD P.T.

678.     CHILD P.T., a minor child, was treated by BrainBuilders between September 10, 2020 and November 16, 2020. BrainBuilders timely submitted all claims forms to Aetna associated with CHILD P.T.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

## XX.   THE SAP AMERICA PLAN

679.     Certain BrainBuilders' patients are members of the SAP America Plan.  The SAP America Plan is a self-funded employee benefit plan.

680.     As a self-funded plan, the SAP America Plan is governed solely by ERISA.

681.    Upon information and belief, the SAP America Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

682.    Upon information and belief, the SAP America Plan provides covered benefits for patients with mental health illness including autism.

683.    Upon information and belief, the SAP America Plan reimburses for covered expenses by OON providers.

684.    Upon information and belief, Aetna, under the SAP America Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

685.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

686.    The Individual Plaintiffs covered by the SAP America Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.    Patient I.V.

687.    I.V., a minor child, has been treated by BrainBuilders since January 3, 2022. BrainBuilders timely submitted all claims forms to Aetna associated with I.V.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such

denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

## YY.    THE ADAPT HEALTH PLAN

688.    Certain BrainBuilders' patients are members of the Adapt Health Plan.   The Adapt Health Plan is a self-funded employee benefit plan.

689.    As a self-funded plan, the Adapt Health Plan is governed solely by ERISA.

690.    Upon information and belief, the Adapt Health Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

691.    Upon information and belief, the Adapt Health Plan provides covered benefits for patients with mental health illness including autism.

692.    Upon information and belief, the Adapt Health Plan reimburses for covered expenses by OON providers.

693.    Upon information and belief, Aetna, under the Adapt Health Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."   As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

694.     As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

695.    The Individual Plaintiffs covered by the Adapt Health Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion

would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

           i.        Patient M.W.

696.    M.W., a minor child, was treated by BrainBuilders between June 28, 2020 and December 31, 2021. BrainBuilders timely submitted all claims forms to Aetna associated with M.W.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

## ZZ.    THE CFGI LLC PLAN

697.    Certain BrainBuilders' patients are members of the CFGI LLC Plan.  The CFGI LLC Plan is a fully-insured employee benefit plan.

698.    As a fully-insured plan, the CFGI LLC Plan is governed by ERISA and New Jersey regulations.

699.    Upon information and belief, the CFGI LLC Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

700.    Upon information and belief, the CFGI LLC Plan provides covered benefits for patients with mental health illness including autism.

701.    Upon information and belief, the CFGI LLC Plan reimburses for covered expenses by OON providers.

702.    Upon information and belief, Aetna, under the CFGI LLC Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor

the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

703.     As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue. *See* Exhibit 4.

704.     The Individual Plaintiffs covered by the CFGI LLC Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.     Patient D.W.

705.     D.W., a minor child, was treated by BrainBuilders between July 4, 2019 and December 18, 2019. BrainBuilders timely submitted all claims forms to Aetna associated with D.W.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

### AAA.  THE VERANOVA PLAN

706.     Certain BrainBuilders' patients are members of the Veranova Plan.  On information and belief, the Veranova Plan is a self-funded employee benefit plan.

707.     As a self-funded plan, the Veranova Plan is governed solely by ERISA.

708.     Upon information and belief, the Veranova Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

709.     Upon information and belief, the Veranova Plan provides covered benefits for patients with mental health illness including autism.

710.    Upon information and belief, the Veranova Plan reimburses for covered expenses by OON providers.

711.    Upon information and belief, Aetna, under the Veranova Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."   As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

712.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

713.    The Individual Plaintiffs covered by the Veranova Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.       Patient S.S.Y.

714.    S.S.Y., a minor child, has been treated by BrainBuilders since June 6, 2022. BrainBuilders timely submitted all claims forms to Aetna associated with S.S.Y.'s treatments, which Aetna then denied or failed to respond to. Due to Aetna's prior course of dealing and performance in responding to appeals from BrainBuilders, any appeals would be futile.

### BBB.   THE ICON CLINICAL RESEARCH LLC PLAN

715.     Certain BrainBuilders' patients are members of the Icon Clinical Research LLC Plan.  On information and belief, the Icon Clinical Research LLC Plan is a self-funded employee benefit plan.

716.     As a self-funded plan, the Icon Clinical Research LLC Plan is governed solely by ERISA.

717.     Upon information and belief, the Icon Clinical Research LLC Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

718.     Upon information and belief, the Icon Clinical Research LLC Plan provides covered benefits for patients with mental health illness including autism.

719.     Upon information and belief, the Icon Clinical Research LLC Plan reimburses for covered expenses by OON providers.

720.     Upon information and belief, Aetna, under the Icon Clinical Research LLC Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

721.     As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

722.     The Individual Plaintiffs covered by the Icon Clinical Research LLC Plan have had their claims improperly denied by Aetna for autism therapy services provided by

BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.      Patient E.Y.

723.    E.Y., a minor child, has been treated by BrainBuilders since July 5, 2021. BrainBuilders timely submitted all claims forms to Aetna associated with E.Y.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

### CCC.  THE BEACH STREET PLAN

724.    Certain BrainBuilders' patients are members of the Beach Street Plan.  On information and belief, the Beach Street Plan is a self-funded employee benefit plan.

725.    As a self-funded plan, the Beach Street Plan is governed solely by ERISA.

726.    Upon information and belief, the Beach Street Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

727.    Upon information and belief, the Beach Street Plan provides covered benefits for patients with mental health illness including autism.

728.    Upon information and belief, the Beach Street Plan reimburses for covered expenses by OON providers.

729.    Upon information and belief, Aetna, under the Beach Street Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor

the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

730.     As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

731.     The Individual Plaintiffs covered by the Beach Street Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders.  In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

        i.        Patient S.Y.(2)

732.     S.Y.(2), a minor child, was treated by BrainBuilders between July 29, 2020 and May 6, 2021. BrainBuilders timely submitted all claims forms to Aetna associated with S.Y.(2)'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

### DDD.  THE LOCKHEED MARTIN CORP. PLAN

733.     Certain BrainBuilders' patients are members of the Lockheed Martin Corp. Plan. The Lockheed Martin Corp. Plan is a self-funded employee benefit plan.

734.     As a self-funded plan, the Lockheed Martin Corp. Plan is governed solely by ERISA.

735.     Upon information and belief, the Lockheed Martin Corp. Plan permits a patient to obtain OON health care services from providers who have not entered into contracts with Aetna.

736.    Upon information and belief, the Lockheed Martin Corp. Plan provides covered benefits for patients with mental health illness including autism.

737.    Upon information and belief, the Lockheed Martin Corp. Plan reimburses for covered expenses by OON providers.

738.    Upon information and belief, Aetna, under the Lockheed Martin Corp. Plan, is using arbitrary, fictitious, and unsupported reimbursement rates for autism therapy services including but not limited to "150 percent of Medicare allowable."  As discussed above, there currently is no published non-hospital Medicare rate for the temporary AMA CPT codes 0359T – 0374T (nor the revised codes 97151-97158), and Aetna has never provided the "Medicare allowable amount" that it is using to calculate the 150% rate.

739.    As discussed above, CMS recognized in its letter to Rep. Chris Smith that there is no Medicare Allowable Rate for the services at issue.  *See* Exhibit 4.

740.    The Individual Plaintiffs covered by the Lockheed Martin Corp. Plan have had their claims improperly denied by Aetna for autism therapy services provided by BrainBuilders. In each of these instances, after Plaintiffs exhausted their administrative remedies or where exhaustion would be futile, Aetna refused to reimburse BrainBuilders for the services provided at the recognized charge, *i.e.*, BrainBuilders' billed rate.

i.      Patient F.Z.

741.    F.Z., a minor child, has been treated by BrainBuilders since July 1, 2021. BrainBuilders timely submitted all claims forms to Aetna associated with F.Z.'s treatments, which Aetna then denied or underpaid. BrainBuilders then submitted timely appeals for such denials and underpayments, which appeals were exhausted or otherwise ignored by Aetna, and thus rendering any additional appeals futile.

132

**Aetna's Response to the Lawsuit**

742.   Since filing the lawsuit, Aetna has engaged in a malicious pattern of delay, denial, and underpayment of claims, with the intent to undermine BrainBuilders' relationship with its current Aetna patients and prospective patients.

743.   Aetna's behavior, meant to penalize BrainBuilders, has been destructive and irreparable, threatening BrainBuilders' operational status and facilities, goodwill, and reputation.

744.   On November 7, 2017—not even six months since the filing of the Complaint—Aetna notified BrainBuilders that it had placed BrainBuilders on pre-payment review, ostensibly for the purpose of reviewing BrainBuilders' submissions prior to remitting payment for any services provided by BrainBuilders.

745.   In reality, Aetna used this process to delay payments even further and, in fact, reduced its payments to BrainBuilders to approximately 10% of BrainBuilders' billed claims.

746.   Then, around June 2021, when this lawsuit was re-activated and Aetna retained new counsel, Aetna doubled down even further and started denying all but approximately 5% of BrainBuilders' claims, reducing its payments in 2022 to about less than 0.5% of the total billed amounts.

747.   Operationally, this process is not sustainable for BrainBuilders; it needs the funds to be able to provide treatment to not only Aetna subscribers but other subscribers and to maintain its ongoing operations so that it can consider providing services to prospective patients.

748.   These funds are necessary to cover overhead costs and the salary of personnel, equipment, and tests.

749.     BrainBuilders has even had to begin turning Aetna-insured patients away because it cannot afford to treat them, knowing Aetna will only pay pennies on the dollar for the billed claims.

750.     Aetna is fully aware of the magnitude of its actions, leveraging its expansive market share in a way to harm a local operation like BrainBuilders.

751.     Through this leverage, Aetna intends to squeeze out its insureds and other patients from BrainBuilders' reach even though there are insufficient local alternatives for these patients to receive autism therapy services except for BrainBuilders.

## CAUSES OF ACTION

### COUNT ONE
**(Breach of Plan Provisions for Benefits in Violation of ERISA §502(a)(1)(B))**

752.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

753.     Individual Plaintiffs are entitled to the benefit of the PLANS, including the requisite payments from Aetna that are necessary to cover their medically necessary ABA therapy services.

754.     All of the PLANS require payment of medical expenses incurred by Aetna subscribers at the rate of BrainBuilders' fully billed charges (less in-network patient responsibility) for autism therapy services.

755.     BrainBuilders' billed charges represent usual and customary rates for the treatment provided to Aetna subscribers.

756.     Aetna breached the terms of the PLANS by refusing to make out-of-network payments for charges covered by the PLANS, which are recoverable under ERISA § 502(a)(1)(B) and 29 U.S.C. §1132(a)(1)(B). These breaches include, *inter alia*, refusing to pay

BrainBuilders' billed charges (less in-network patient responsibility) for autism services that BrainBuilders provided Aetna subscribers, as required by the PLANS, and otherwise refusing to pay BrainBuilders the amounts due under the PLANS for the medically necessary services performed by BrainBuilders.

757.    As a result of, among other acts, Aetna's numerous procedural and substantive violations of ERISA, any appeals are futile and deemed exhausted or excused, and Plaintiffs are entitled to have the Court undertake a *de novo* review of the issues raised herein.

758.    Under 29 U.S.C. §1132(a)(1)(B), Plaintiffs are entitled to recover unpaid and/or underpaid benefits from Aetna.  Plaintiffs are also entitled to declaratory and injunctive relief to enforce the terms of the PLANS and to clarify their right to future benefits under such PLANS, as well as attorney's fees.

759.    Alternatively, as set forth more fully above, Aetna subscribers received health services from BrainBuilders and executed AOB contracts, among other documents, in which they assigned to BrainBuilders their right to benefits under the Plans for the services that BrainBuilders provided to Aetna subscribers.

760.    By virtue of these assignments, BrainBuilders also has standing to pursue claims under ERISA as the assignee and authorized representative of Aetna's subscribers' claims under the PLANS.

761.    As the assignee of Aetna's subscribers, BrainBuilders is entitled to payment under the PLANS for the autism therapy services provided to Aetna's subscribers.

762.    Upon information and belief, the PLANS did not prohibit Aetna from assigning its rights to benefits under the PLANS to BrainBuilders, including the right of direct payment of benefits under the PLANS to BrainBuilders.

763.    Further, to the extent that the PLANS prohibited the assignment of benefits to BrainBuilders, Aetna has waived any purported anti-assignment provisions, has ratified the assignment of benefits to BrainBuilders, and/or is estopped from using any purported anti-assignment provisions against BrainBuilders due to Aetna's course of dealing with and statements to BrainBuilders as out-of-network providers, discussed fully above.

764.    Further, any purported anti-assignment prohibitions are unenforceable.

765.    All of the PLANS require payment of medical expenses incurred by Aetna subscribers at the rate of BrainBuilders' fully billed charges (less in-network patient responsibility) for autism therapy services.

766.    BrainBuilders' billed charges represent usual and customary rates for the treatment provided to Aetna subscribers.

767.    Aetna breached the terms of the PLANS by refusing to make out-of-network payments for charges covered by the PLANS, which are recoverable under ERISA 502(a)(1)(B) and 29 U.S.C. §1132(a)(1)(B). These breaches include, *inter alia*, refusing to pay BrainBuilders' billed charges (less in-network patient responsibility) for autism services that BrainBuilders provided Aetna subscribers, as required by the PLANS, and otherwise refusing to pay BrainBuilders the amounts due under the PLANS for the medically necessary services performed by BrainBuilders.

768.    As a result of, among other acts, Aetna's numerous procedural and substantive violations of ERISA, any appeals are futile and deemed exhausted or excused, and BrainBuilders is entitled to have the Court undertake a *de novo* review of the issues raised herein.

769.    Under 29 U.S.C. §1132(a)(1)(B), BrainBuilders is entitled to recover unpaid and/or underpaid benefits from Aetna. BrainBuilders is also entitled to declaratory and

injunctive relief to enforce the terms of the PLANS and to clarify its right to future benefits under such PLANS, as well as attorney's fees.

**COUNT TWO**
**(Breach of Fiduciary Duties of Loyalty and Due Care in Violation of ERISA)**

770.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

771.    Pursuant to 29 U.S.C. §1132(a)(3), a civil action may be brought by "a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan".

772.    As set forth more fully above, Aetna subscribers received health services from BrainBuilders and executed AOB contracts, among other documents, in which they assigned to BrainBuilders their right to benefits under the Plans for the services that BrainBuilders provided to Aetna subscribers.

773.    By virtue of these assignments, BrainBuilders also has standing to pursue claims under ERISA as the assignee and authorized representative of Aetna's subscribers' claims under the PLANS.

774.    As the assignee of Aetna's subscribers, BrainBuilders is entitled to assert a claim for relief for Aetna's breach of fiduciary duties of loyalty and care and for failure to follow PLAN documents under 29 U.S.C. § 1104(a)(1)(B), (D).

775.    Aetna exercised discretion, control, authority, and oversight in determining whether PLANS benefits would be paid and the amounts of PLANS benefits that would be paid.

776.    As an ERISA fiduciary, Aetna owed Plaintiffs a duty of care, defined as an obligation to act prudently, with the care, skill, prudence, and diligence that a prudent fiduciary would use in the conduct of an enterprise of like character.  Further, as a fiduciary, Aetna was required to ensure that it was acting in accordance with the documents and instruments governing the PLANS and in accordance with ERISA § 4040(a)(1)(B), (D) and 29 U.S.C. § 1104(a)(1)(B), (D).   In failing to act prudently, and in failing to act in accordance with the documents governing the PLANS, Aetna has violated its fiduciary duty of care.

777.    As a fiduciary, Aetna also owed a duty of loyalty, defined as an obligation to make decisions in the interest of its beneficiaries and to avoid self-dealing or financial arrangements that benefit the fiduciary at the expense of members, in accordance with ERISA § 404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A) and ERISA § 406, 29 U.S.C. § 1106.  Thus, Aetna could not make benefit determinations for the purpose of saving money at the expense of Aetna subscribers.

778.    Aetna violated its fiduciary duty of loyalty to Plaintiffs by, among other things, refusing to make out-of-network payments for autism therapy services provided by BrainBuilders for Aetna's own benefit and at the expense of Aetna's subscribers.  Moreover, Aetna violated its fiduciary duty of loyalty by failing to inform BrainBuilders, as assignee of Aetna subscribers, of information material to the claims and Aetna's handling of the claims.

779.    Plaintiffs are entitled to relief to remedy Aetna's violation of its fiduciary duties under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including declaratory and injunctive relief.

## COUNT THREE
### (Denial of Full and Fair Review in Violation of ERISA § 503)

780.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

781.    The Individual Plaintiffs are entitled to receive protection under ERISA, including (a) a "full and fair review" of all claims denied by Aetna; and (b) compliance by Aetna with applicable claims procedure regulations.

782.    As assignee and authorized representative of Aetna subscribers' claims, BrainBuilders is also entitled to receive protection under ERISA, including (a) a "full and fair review" of all claims denied by Aetna; and (b) compliance by Aetna with applicable claims procedure regulations.

783.    Although Aetna is obligated to provide a "full and fair review" of denied claims pursuant to ERISA § 503, 29 U.S.C. § 1133 and applicable regulations, including 29 C.F.R. § 2590.715-2719, Aetna has failed to do so by, among other actions:

a.    Refusing to provide the specific reason or reasons for the denial of claims;

b.    Refusing to provide the specific PLANS provisions relied upon to support its denials;

c.    Refusing to provide the specific rule, guideline, or protocol relied upon in making the decisions to deny claims;

d.    Refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code;

e.    Refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records, and other information relevant to the claims for benefits; and

f.    Refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.

784.    By failing to comply with ERISA claims procedure regulations, Aetna failed to provide a reasonable claims procedure.

785.    Because Aetna has failed to comply with the substantive and procedural requirements of ERISA, any administrative remedies are deemed exhausted pursuant to 29

C.F.R. § 2560.503-1(1) and 29 C.F.R. § 2590.715-2719(b)(2)(ii)(F)(1). Exhaustion is also excused because it would be futile to pursue administrative remedies, as Aetna does not acknowledge any basis for its denials and thus offers no meaningful administrative process for challenging its denials.

786.    Plaintiffs have been harmed by Aetna's failure to provide a full and fair review of appeals submitted under ERISA § 503, 29 U.S.C. §1133, and by Aetna's failures to disclose information relevant to appeals and to comply with applicable claims procedure regulations.

787.    Plaintiffs are entitled to relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including declaratory and injunctive relief, to remedy Aetna's failures to provide full and fair review, to disclose information relevant to appeals, and to comply with applicable claims procedure regulations.

## COUNT FOUR
## (Failure to Provide Information: ERISA 29 U.S.C. § 1132(c)(1)(B))

788.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

789.    Upon information and belief, Aetna is the plan administrator of the PLANS.

790.    Aetna's subscribers are permitted to request certain information that ERISA § 502(c), 29 U.S.C. § 1132(c), and 29 C.F.R. § 2560.502c-1, requires the plan administrator to provide within 30 days after the request.

791.    As assignee and authorized representative of Aetna subscribers, BrainBuilders is also entitled to request certain information from the plan administrator.

792.    BrainBuilders, on behalf of the Aetna subscribers, requested plan documents, including documentation regarding how Aetna was calculating reimbursement for ABA therapy for Aetna insured patients who had assigned their insurance benefits to BrainBuilders.

793.    As the plan administrator, Aetna failed to provide the requested plan documents.

794.    Under 29 U.S.C. § 1132(c)(1)(B) if a plan administrator does not provide plan documents within 30 days of a request, a court may impose a penalty of $100 per day.

795.    As of the date of this filing, it has been nearly 2,500 days since BrainBuilders requested certain plan documents. This penalty will continue to grow.

### COUNT FIVE
**(Violations of New Jersey Healthcare Information Networks and Technologies Act and Health Claims Authorization, Processing and Payment Act)**

796.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

797.    Under the New Jersey Healthcare Information Networks and Technologies Act (the "HINT Act"), N.J.S.A. 17B:30-23, 17:48-8.4, 17:48A-7.12, 17:48E-10.1, 17B:26-9.1, 17B:27-44.2 and 26:2J-8.1, and the corresponding regulations, N.J.A.C. 11:22-1, *et seq.*, Aetna must remit payment to BrainBuilders for an "eligible" non-capitated claim for medical services no later than thirty (30) calendar days following electronic receipt of the claim by Aetna, or forty (40) calendar days following non-electronic receipt of the claim by Aetna.  Alternatively, Aetna must notify BrainBuilders within seven (7) calendar days of the specific reasons for a denial or dispute, and to expeditiously request any missing information or documentation required to process the claims, pursuant to the Health Claims Authorization, Processing and Payment Act ("HCAPPA").

798.    BrainBuilders has a private right of action, express or implied, to prosecute its claims under the HINT Act, HCAPPA and their regulations.

799.    All overdue payments must bear simple interest at the rate of twelve (12) percent per annum, pursuant to HCAPPA.

800.   Despite its statutory duties, Aetna has a matter of practice and/or policy delayed payment of properly submitted claims from BrainBuilders and did not pay the claims correctly, and then did not pay interest on delayed payments.  By delaying payment of a claim, Aetna earned and continues to earn profits from its use of the funds, profits that it would not have earned or continued to earn if payment were made in a timely manner.

801.   BrainBuilders has submitted "clean" or "eligible" non-capitated claims for services rendered to the patients that Aetna failed to pay within the prescribed statutory time period despite numerous attempts by BrainBuilders to address and resolve these issues with Aetna.  These practices by Aetna are in violation of the HINT Act and HCAPPA.

802.   As a result of these violations, BrainBuilders has been damaged.

## COUNT SIX
### (Declaratory Judgment Under 28 U.S.C. §2201)

803.   The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

804.   This is a count for declaratory relief pursuant to 28 U.S.C. § 2201.

805.   Aetna claims that the PLANS may be interpreted as permitting to unilaterally and arbitrarily establish an allowed amount that it will pay for claims for treatment provided by out-of-network providers.

806.   Upon information and belief, none of the PLANS allows Aetna to unilaterally and arbitrarily establish allowed amounts payable with respect to treatment provided by out-of-network providers.

807.   Likewise, on information and belief, none of the PLANS contains any formula or other methodology for determining an "allowed amount" that is payable under the Plan with respect to treatment provided by out-of-network providers.

142

808.    Insurers who provide coverage for an out-of-network service are required to pay an amount sufficient to protect the patient/insured from being balance billed.  To protect its insured against balance billing, an insurer may (a) pay the full amount of charges, (b) negotiate a settlement of the claim with the provider, or (c) negotiate an in-network agreement with the provider.  *Aetna Health, Inc. v. Srinivasan*, No. A-2035-14T2, 2016 WL 3525298, at *2-4 (N.J. Super. Ct. App. Div. June 29, 2016).   The insurer may not unilaterally and arbitrarily decide whether it will pay the out-of-network provider's claim and, if so, how much of the claim it will pay.

809.    As a direct and proximate result of Aetna's acts and omissions, including but not limited to, its use of a non-disclosed, arbitrary methodology to calculate "allowed amounts" it will pay for treatment provided by out-of-network providers and its failure to comply with the terms of the PLANS and statutory requirements to pay claims timely, BrainBuilders has sustained and will continue to sustain damages and have been deprived of and will continue to be deprived of the compensation to which they are entitled for providing covered hospital services to Aetna subscribers.

810.    Likewise, the Individual Plaintiffs have sustained and will continue to sustain damages and have been deprived of and will continue to be deprived of the compensation required by the PLANS to cover the hospital services provided to them by BrainBuilders.

811.    The existence of another potentially adequate remedy does not preclude a judgment for relief.  *See* Fed. R. Civ. P. 57.

812.    Plaintiffs are entitled to supplemental relief pursuant to 28 U.S.C. § 2201, including the payment of all money that was not paid by Aetna to BrainBuilders for providing the covered autism therapy serviced described in this Complaint.

## COUNT SEVEN
### (Temporary and Permanent Injunctive Relief)

813.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

814.    Currently, Aetna is wrongfully denying payment in whole or in part for virtually all claims for benefits submitted for hospital services provided to Aetna subscribers by BrainBuilders as out-of-network providers.  In so doing, Aetna has failed and is failing to comply with the terms of the PLANS and its other obligations, including its obligations under ERISA.

815.    Unless enjoined from doing so, Aetna will continue not to comply with the terms of the PLANS and its other obligations, including under ERISA, to BrainBuilders' severe detriment.  A monetary judgment in this case will only compensate BrainBuilders for past losses and will not stop Aetna from continuing to withhold payment earned by BrainBuilders.  Those funds are necessary to maintain BrainBuilders' facilities.  BrainBuilders has no practical or adequate remedy, either administratively or at law, to avoid these future losses.

816.    BrainBuilders is entitled to a preliminary and permanent injunction requiring Aetna to process claims for autism therapy services provided to Aetna subscribers at BrainBuilders in accordance with the terms of the PLANS and requiring Aetna to stop summarily denying claims for medically-necessary services BrainBuilders provides to Aetna subscribers.

## COUNT EIGHT
### (Violation of New Jersey's Autism Mandate)

817.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

818.    Aetna PLANS that are fully-insured plans are subject to New Jersey's insurance laws and regulations.

819.    Under the New Jersey Autism Mandate, Aetna must cover autism therapy services.   *See*  N.J.S.A. §§  26:2J-4.34,  17B:27A-19.20(b)-(c);  17B:27-46.1ii(b)-(c);  17B:27A-7.16(b)-(c); 17B:26-2.1cc(b)-(c) (the "Autism Mandate").

820.    By denying and reducing coverage for autism therapy benefits, Aetna has violated New Jersey law requiring insurance coverage for such services.

821.    With very limited Aetna in-network providers who render autism therapy services, and limited out-of-network benefits under Aetna's health plans, Aetna's patients in the area are left without coverage for autism therapy services in clear violation of N.J.'s Autism Mandate.

## COUNT NINE
### (Conversion)

822.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

823.    Aetna repeatedly deducts payments for one BrainBuilders patient due to alleged overpayments made on behalf of another patient.

824.    In so doing, Aetna improperly converts funds and assets in possession of BrainBuilders for entitled services for one patient into debits that are applied towards another patient.

825.    For instance, in one explanation of benefits for plaintiff CHILD S.C.(1) from August 2020, Aetna deducted $665.76 for alleged overpayments from dates of service dating back to May 2019 for plaintiff J.B.(2). Rather than deducting the alleged overpayment from J.B.(2)'s account, Aetna deducted the $665.76 from CHILD S.C.(1)'s account instead.

826.   Aetna has improperly misappropriated BrainBuilders' funds and assets and wrongfully exercised dominion and control over these funds and assets.

827.   Aetna, by engaging in and undertaking the foregoing actions, improperly exercised or assumed authority over funds and assets that BrainBuilders was entitled to.

828.   In doing so, Aetna deprived BrainBuilders from its rightful ownership and possession of such funds and assets.

829.   Aetna's actions were willful, wanton, and taken in conscious disregard of BrainBuilders' rights.

830.   As a direct and proximate result of Aetna's actions, BrainBuilders has sustained damages in an amount to be proven at trial.

831.   Because of the intentional and malicious nature of Aetna's conversion, BrainBuilders is entitled to recover punitive damages.

## COUNT TEN
### (Tortious Interference with Business Relations)

832.   The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

833.   BrianBuilders has a protected interest in its current relationships with patients.

834.   Since the filing of this lawsuit, Aetna has maliciously and tortiously interfered with BrainBuilders' current relationships with patients through its pattern of delay, denial, and underpayment of claims.

835.   Aetna's behavior, meant to penalize BrainBuilders, has been destructive and irreparable, threatening BrainBuilders' operational status and facilities, goodwill, and reputation.

836.   This drastic reduction in funding has threatened BrainBuilders' operational status, as it struggles to cover overhead costs and pay for personnel salary, equipment, and testing.

837.    Aetna is fully aware of the magnitude of its actions, leveraging its expansive market share in a way to harm a local operation like BrainBuilders.

838.    Through this leverage, Aetna intends to squeeze out its insureds and other patients from BrainBuilders' reach even though there are insufficient local alternatives for these patients to receive autism therapy services except for BrainBuilders.

839.    Aetna's actions were willful, wanton, and taken in conscious disregard of BrainBuilders' rights.

840.    As a direct and proximate result of Aetna's actions, BrainBuilders has sustained damages in an amount to be proven at trial.

841.    Because of the intentional and malicious nature of Aetna's actions, BrainBuilders is entitled to recover punitive damages.

## COUNT ELEVEN
### (Tortious Interference with Prospective Economic Advantage)

842.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

843.    BrianBuilders has a reasonable expectation of advantage from a prospective contractual or economic relationship from potential patients who seek and need autism therapy services.

844.    Since the filing of this lawsuit and without justification or excuse, Aetna has maliciously and tortiously interfered with BrainBuilders' prospective relationships with patients through its pattern of delay, denial, and underpayment of claims.

845.    Aetna's behavior, meant to penalize BrainBuilders, has been destructive and irreparable, threatening BrainBuilders' operational status and facilities, goodwill, and reputation.

846.     This drastic reduction in funding has threatened BrainBuilders' operational status, as it struggles to cover overhead costs and pay for personnel salary, equipment, and testing.

847.     Aetna is fully aware of the magnitude of its actions, leveraging its expansive market share in a way to harm a local operation like BrainBuilders.

848.     Through this leverage, Aetna intends to squeeze out its insureds and other patients from BrainBuilders' reach even though there are insufficient local alternatives for these patients to receive autism therapy services except for BrainBuilders.

849.     BrainBuilders has even had to begin turning Aetna-insured patients away because it cannot afford to treat them, knowing Aetna will only pay pennies on the dollar for the billed claims.

850.     Aetna's actions were willful, wanton, and taken in conscious disregard of BrainBuilders' rights.

851.     As a direct and proximate result of Aetna's actions, BrainBuilders has sustained damages in an amount to be proven at trial.

852.     Because of the intentional and malicious nature of Aetna's actions, BrainBuilders is entitled to recover punitive damages.

## COUNT TWELVE
### (Quantum Meruit)

853.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

854.     BrainBuilders pleads this count in the alternative if the Court finds that BrainBuilders lacks standing under ERISA to sue as an assignee of the Individual Plaintiffs.

855.     BrainBuilders has provided autism therapy services in good faith to Aetna subscribers without entering into a relationship with Aetna.

856.    Aetna has knowledge that BrainBuilders treated its subscribers and conferred benefits upon Aetna.

857.    BrainBuilders is entitled to receive compensation for its services in accordance with New Jersey law.

858.    Aetna has wrongfully withheld compensation for the services performed by BrainBuilders despite the proper submission of claims forms and appeals by BrainBuilders to Aetna.

859.    It is inequitable for Aetna to retain the benefits of the services without paying the fair rate for such services.

860.    BrainBuilders therefore seeks reimbursement of the reasonable value for these services due in an amount to be proven at trial.

## COUNT THIRTEEN
### (Unjust Enrichment)

861.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

862.    BrainBuilders pleads this count in the alternative if the Court finds that BrainBuilders lacks standing under ERISA to sue as an assignee of the Individual Plaintiffs.

863.    BrainBuilders has provided autism therapy services in good faith to Aetna subscribers without entering into a relationship with Aetna.

864.    At the expense of BrainBuilders, Aetna received the benefit of its insureds receiving autism therapy services without proper compensation.

865.    It is unjust for Aetna to retain the benefit of these services without commensurate compensation.

866.    Aetna has wrongfully withheld compensation for the services performed by BrainBuilders despite the proper submission of claims forms and appeals by BrainBuilders to Aetna.

867.    Aetna is in possession of funds that are the rightful property of BrainBuilders.

868.    As a consequence, Aetna has unjustly enriched itself by withholding the reasonable compensation owed to BrainBuilders under New Jersey law.

## COUNT FOURTEEN
### (Breach of Implied Contract)

869.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

870.    BrainBuilders pleads this count in the alternative if the Court finds that BrainBuilders lacks standing under ERISA to sue as an assignee of the Individual Plaintiffs.

871.    BrainBuilders has provided autism therapy services in good faith to Aetna subscribers without entering into a relationship with Aetna.

872.    Prior to rendering these services to Aetna subscribers, BrainBuilders received and relied upon written pre-authorization from Aetna that these services would be covered under the PLANS at issue.

873.    Aetna maintained a course of dealing and course of conduct that, through these written pre-authorizations, induced BrainBuilders to render services to the Aetna subscribers.

874.    Aetna represented that its members and beneficiaries are covered for OON services, that they may go to BrainBuilders to receive autism therapy services, and that Aetna will remit payment at the rate of BrainBuilders' fully billed charges (less in-network patient responsibility) for autism therapy services.

875.     Aetna received premiums from its members for such OON coverage, which were medically necessary for the members and their beneficiaries.

876.     A reasonable person in Aetna's position would know, or reasonably should have known, that BrainBuilders was performing its autism therapy services with the expectation that Aetna would pay it appropriately.

877.     Despite indicating to BrainBuilders through its course of conduct, course of dealing, and circumstances surrounding the relationship that Aetna would properly and timely reimburse BrainBuilders for its fully billed charges (less in-network patient responsibility), Aetna has failed to do so.

878.     The failure by Aetna to pay for these services constitutes a breach of the implied contract between BrainBuilders and Aetna.

879.     As a result of this breach, BrainBuilders has been damaged.

**COUNT FIFTEEN**
**(Promissory Estoppel)**

880.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

881.     BrainBuilders pleads this count in the alternative if the Court finds that BrainBuilders lacks standing under ERISA to sue as an assignee of the Individual Plaintiffs.

882.     BrainBuilders has provided autism therapy services in good faith to Aetna subscribers without entering into a relationship with Aetna.

883.     Prior to rendering these services to Aetna subscribers, BrainBuilders received and relied upon written pre-authorization from Aetna that these services would be covered under the PLANS at issue.

884.   Aetna maintained a course of dealing and course of conduct that, through these written pre-authorizations, induced BrainBuilders to render services to the Aetna subscribers.

885.   Aetna represented that its members and beneficiaries are covered for OON services, that they may go to BrainBuilders to receive autism therapy services, and that Aetna will remit payment at the rate of BrainBuilders' fully billed charges (less in-network patient responsibility) for autism therapy services.

886.   Aetna received premiums from its members for such OON coverage, which were medically necessary for the members and their beneficiaries.

887.   Aetna expected, or reasonably should have expected, that BrainBuilders would rely on the written pre-authorizations and the parties' course of conduct and dealings to render autism therapy services with the expectation that Aetna would pay for the services appropriately.

888.   BrainBuilders reasonably relied on the written pre-authorizations and the parties' course of conduct and dealings.

889.   BrainBuilders' reasonable reliance has led it to suffer a definite and substantial detriment.

890.   As a result, BrainBuilders has been damaged.

## CONDITIONS PRECEDENT

891.   All conditions precedent have been performed or have occurred.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby request a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment in their favor against Aetna as follows:

A.    Declaring that Aetna has breached the terms of the PLANS with regard to out-of-network benefits and awarding damages for unpaid out-of-network benefits, as well as awarding injunctive and declaratory relief to prevent Aetna's continuing actions detailed herein that are unauthorized by the PLANS;

B.    Ordering that Aetna is to provide plan information and documents that BrainBuilders requested on behalf of Plaintiffs for all health benefit plans for which Aetna is, or acts as, a plan administrator;

C.    Declaring that Aetna failed to provide "full and fair review" under § 503 of ERISA, 29 U.S.C. § 1133, and applicable claims procedure regulations, and that "deemed exhaustion" under such regulations is in effect as a result of Aetna's actions, as well as awarding injunctive, declaratory, and other equitable relief to ensure compliance with ERISA and its claims procedure regulations;

D.    Declaring that Aetna violated its fiduciary duties under § 404 of ERISA, 29 U.S.C. § 1104, and awarding injunctive, declaratory, and other equitable relief to ensure compliance with ERISA;

E.    Declaring that Aetna is obligated to pay out-of-network providers for autism therapy services rendered to Aetna subscribers and that Aetna may not refuse to pay or delay paying such claims, unilaterally and arbitrarily set an "allowed amount" it will pay on such claims, or otherwise unilaterally and arbitrarily reduce its obligation to pay for such claims;

F.    Awarding compensatory and consequential damages resulting from injury to Plaintiffs' business and property in the millions of dollars, as set forth above and to be further established at trial;

G.      Trebling the damages sustained by Plaintiffs as described above under 18 U.S.C. § 1964(c);

H.      Awarding damages based on Aetna's misrepresentations and nondisclosures regarding the existence of benefits for these autism therapy services, including any exemplary damages permitted by law;

I.      Temporarily and permanently enjoining Aetna from continuing to pursue its actions detailed herein, and ordering Aetna to pay benefits in accordance with the terms of the PLANS and applicable law;

J.      Awarding lost profits, contractual damages, and compensatory damages in such amounts as the proofs at trial shall show;

K.      Awarding punitive and exemplary damages for Aetna's intentional and tortious conduct in such amounts as the proofs at trial will show;

L.      Awarding restitution for payments improperly withheld by Aetna;

M.      Declaring that Aetna has violated the terms of the relevant PLANS and/or policies of insurance covering the Aetna subscribers;

N.      Requiring Aetna to make full payment on all previously denied charges relating to Aetna subscribers;

O.      Requiring Aetna to pay BrainBuilders the benefit amounts as required under the PLANS;

P.      Awarding reasonable attorney's fees, as provided by common law, federal or state statute, or equity, including 29 U.S.C. § 1132(g) and 18 U.S.C. § 1964(c);

Q.      Awarding damages for Aetna's violations of New Jersey Healthcare Information Networks and Technologies Act and  Health Claims Authorization, Processing and Payment Act;

R.      Awarding damages for Aetna's violation of New Jersey's Autism Mandate;

S.      Awarding damages for Aetna's conversion;

T.      Awarding damages for Aetna's tortious interference with business relations;

U.      Awarding damages for Aetna's tortious interference with prospective economic advantage;

V.      Awarding damages for Aetna's quantum meruit;

W.      Awarding damages for Aetna's unjust enrichment;

X.      Awarding damages for Aetna's breach of implied contract;

Y.      Awarding damages for Aetna's promissory estoppel;

Z.      Awarding damages;

AA.     Awarding costs of suit;

BB.     Awarding pre-judgment and post-judgment interest as provided by common law, federal or state or rule, or equity; and

CC.     Awarding all other relief to which Plaintiffs are entitled.


Dated:      August 15, 2022

Respectfully submitted,


*/s/ William Lesser*
William Lesser (NJ ID #162532015)
Barry Golob (*pro hac vice*)
COZEN O'CONNOR
1200 Nineteenth Street, N.W.
Washington, DC  20036
Telephone: 202-912-4815
E-mail: wlesser@cozen.com
bgolob@cozen.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 11.2</u>

I hereby certify that the matter in controversy is not the subject of any other action pending in this court any other court, or of any pending arbitration of administrative proceeding.

Dated:   August 15, 2022

Respectfully submitted,

*/s/ William Lesser*
William Lesser (NJ ID #162532015)
Barry Golob (*pro hac vice*)
COZEN O'CONNOR
1200 Nineteenth Street, N.W.
Washington, DC  20036
Telephone: 202-912-4815
E-mail: wlesser@cozen.com
bgolob@cozen.com

*Attorneys for Plaintiffs*

156

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that a true and correct copy of the forgoing **First Amended Complaint and Jury Demand**, along with all supporting documents, were filed electronically through this Court's ECF System in this matter.

Dated:  August 15, 2022

*/s/ William Lesser*
William Lesser, Esq. (NJ ID #162532015)
