**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BRAINBUILDERS, LLC, *et al.*,<br><br>            Plaintiffs,<br><br>      v.<br><br>AETNA LIFE INSURANCE COMPANY, AETNA HEALTH INC., and AETNA INC.,<br><br>            Defendants. | Civil Action No. 17-03626 (GC) (DEA)<br><br>**OPINION** |

**CASTNER, U.S.D.J.**

**THIS MATTER** comes before the Court upon the Motion to Dismiss the Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) filed by Defendants Aetna Life Insurance Company, Aetna Health Inc., and Aetna Inc. (together, "Aetna"). (ECF No. 80.) Plaintiffs opposed, and Defendants replied. (ECF Nos. 92 & 95.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Aetna's motion is **GRANTED**.

## I.    BACKGROUND

This case involves claims brought under state law as well as the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, based on Aetna's alleged nonpayment or underpayment for autism therapy services provided by BrainBuilders, LLC. Plaintiffs allege that, from August 2014 through June 2022, Aetna underpaid for these services by

about $50,000,000.00 in total.

## A. FACTUAL BACKGROUND[1]

Because the allegations in the operative pleading span 156 pages and 891 paragraphs, the Court summarizes only the facts critical to understanding the dispute.

BrainBuilders is a therapeutic intervention agency located in Lakewood, New Jersey. (ECF No. 72 ¶ 8.)  It provides to children with autism-spectrum-related disorders a variety of medical services, including applied behavioral analysis, physical therapy, occupational therapy, and speech therapy.  (*Id.*)  BrainBuilders requires its patients to execute assignments of benefits and assignments of rights to pursue ERISA and other legal and administrative remedies.  (*Id.*)  The eighty-four individual Plaintiffs are the parents and/or legal guardians of ninety patients[2] who have been diagnosed with autism.  (*Id.* ¶¶ 9-92, 129-741.)  The patients have been or are currently being treated by BrainBuilders under the terms of at least fifty-six different ERISA-governed health benefit plans issued by Aetna.[3]  (*Id.*)  Aetna is both a health insurer and a health plan administrator. (*Id.* ¶¶ 93-95.)

---

[1]    On motions to dismiss pursuant to Rule 12(b)(6), courts accept as true all well-pleaded facts in the complaint.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[2]    Some of the patients are no longer children.  (*See* ECF No. 71 at 6 ("Because several of the patients are no longer minors, Plaintiffs revised the language to reflect that.").)

[3]    The plans include the 315 Arch St Realty LP Plan, Adapt Health Plan, ADP Plan, Amazon Plan, Amneal Pharmaceuticals Plan, Amtrak Plan, Arup US Inc. Plan, Bank of America Plan, Bausch Health US LLC Plan, Beach Street Plan, Bed Bath & Beyond Plan, Beth Medrash Govoha of America Inc. Plan, Bristol Myers Squibb Plan, Central Jersey HIF Plan, CFGI LLC Plan, Citibank Plan, Citrin Cooperman & Company, LLP Open Access Elect Choice—Low Plan ("Citrin Plan"), Clark Board of Education Plan, Cognizant Plan, Cohn Reznick Plan, Diligence Research Group Plan, Docusign Inc. Plan, Extensis Plan, Global Healthcare Fiscal Services Group LLC Open Access Managed Choice Plan ("Global Plan"), Icon Clinical Research LLC Plan, IMS Technologies Plan, Infosys Limited Plan, Johnson & Johnson Plan, Justworks Employment Group Plan, Lockheed Martin Corp. Plan, Mail Handlers Benefit Plan, New Roads Healthcare Plan ("New Roads Plan"), New York Post Plan, OFS Fitel LLC Plan, Pacira Pharmaceuticals Inc. Plan, Perth Amboy Board of Education Plan, Pridestaff Inc. Plan, Ray Builders Inc. Plan, Reckitt

Prior to providing services to Aetna's members, BrainBuilders (an out-of-network provider) received "written pre-authorization from Aetna that these services would be covered under the [plans] at issue." (*Id.* ¶ 102.) Specifically, "Aetna represented that its members and beneficiaries are covered for [the out-of-network] services, that they may go to BrainBuilders to receive autism therapy services, and that Aetna will remit payment at the rate of BrainBuilders' fully billed charges (less in-network patient responsibility)." (*Id.* ¶ 103.) BrainBuilders bills Aetna using recognized CPT codes.[4] (*Id.* ¶ 102.)

Until July 2014, Aetna reimbursed BrainBuilders for its services at approximately ninety percent of BrainBuilders' billed rates. (*Id.* ¶ 106.) Then, without explanation, Aetna began reimbursing BrainBuilders at "much lower . . . and inconsistent rates that do not adhere with any coverage or reimbursement provisions under the [plans]." (*Id.* ¶¶ 107-08.) Aetna also began using new temporary CPT codes for autism therapy services that do not correspond to any usual, customary, reasonable and/or Medicare-based rate on FAIR Health's Consumer Cost Lookup.[5] (*Id.* ¶ 109.) Aetna acknowledged that no rate existed for the new CPT codes. (*Id.* ¶ 111.)

---

Benckiser LLC Plan, RJ Brands LLC DBA Chefman Plan, SAP America Plan, School for Children with Hidden Intelligence Open Access Managed Choice Plan ("SCHI Plan"), Southern Coastal HIF Plan, Superb Staffing Services Plan, Taiho Oncology Inc. Plan, Tata Consultancy Services Plan, Telos Plan, TIAA Consumer Choice Plan, Toms River Regional Schools Plan, Transamerica Corporation Plan, Trinet Group Plan, Tryko Partners Plan, Unisys Plan, Veranova Plan, Walmart Plan, and the NJ Silver OAMC 2500 90/70 PY HAS TIF Small Group Health Benefits Plan ("Wilner Plan"). (ECF No. 72 ¶ 3.)

[4]  "CPT" refers to the Current Procedures Terminology, which is a system for coding medical services and procedures.

[5]  FAIR Health "is a national, independent, nonprofit organization dedicated to bringing transparency to healthcare costs and healthcare insurance information and data products, consumer resources and health systems research support." *Univ. Physicians Assocs. v. Transp. Drivers, Inc.*, 2017 WL 3597249, at *2 n.4 (N.J. Super. Ct. App. Div. Aug. 22, 2017) (citation omitted).

Aetna's inconsistent reimbursement rates are illustrated by its use of "different reimbursement calculations" for children who are on the same plan. (*Id.* ¶ 112.) This resulted in at least three different rates "for patients for whom BrainBuilders billed for the same services using the same CPT codes." (*Id.* ¶ 114.) Aetna did not "offer any explanation as to the actual numbers used as a basis for its calculations in determining the[] varying rate amounts." (*Id.*) Despite these inconsistencies, BrainBuilders continued to provide autism therapy services to Aetna's members. (*Id.* ¶ 116.)

Pursuant to duly-executed assignments of benefits, BrainBuilders appealed Aetna's alleged underpayments in accordance with the terms of the patients' ERISA plans. (*Id.* ¶ 127.) Aetna either "failed . . . to respond to the appeals, responded in an insufficient or untimely manner contrary to the terms of the [plan] documents, or denied the appeals." (*Id.*) Aetna also failed to respond, or responded "in an insufficient or untimely manner," to BrainBuilders' requests for "information and documents from Aetna regarding its benefits reductions related to autism therapy services." (*Id.* ¶ 128.)

On November 7, 2017, shortly after Plaintiffs initiated this suit, Aetna notified BrainBuilders that it was placed on pre-payment review. (*Id.* ¶ 744.) Aetna used this process to delay and reduce payment to BrainBuilders to about ten percent of its billed claims. (*Id.* ¶ 745.) Then, in June 2021, Aetna began denying all but approximately five percent of BrainBuilders' claims and reducing its payments in 2022 to about less than half a percent of the total billed amounts. (*Id.* ¶ 746.) BrainBuilders has turned away Aetna-insured patients because it can no longer afford to treat them. (*Id.* ¶ 749.)

### B. PROCEDURAL BACKGROUND

Plaintiffs sued on May 20, 2017. (ECF No. 1.) On August 21, 2017, Aetna moved to dismiss the original Complaint under Rules 12(b)(1), 12(b)(6), and 12(f). (ECF No. 22.) The

parties completed briefing on September 26, 2017.  (ECF Nos. 27 & 29.)

On October 3, 2017, Aetna moved to stay the case.  (ECF No. 30.)  Aetna argued that one of the issues raised in its motion to dismiss—the enforceability of anti-assignment clauses in the applicable health benefit plans—was before the United States Court of Appeals for the Third Circuit, and it asked for a stay pending a decision.  (ECF No. 30-1 at 4-8.[6])  Plaintiffs opposed on November 6, 2017.  (ECF No. 35.)  Following oral argument, the Court (Shipp, J.) granted the stay and terminated the motion to dismiss without prejudice.  (ECF No. 42.)

On May 16, 2018, the Third Circuit issued its opinion in *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445 (3d Cir. 2018).  Among other things, the Court held that "anti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable."  *Id.* at 453.  This Court then lifted the stay and reopened the case.  (ECF No. 44.)

On August 15, 2022, Plaintiffs filed the First Amended Complaint.  (ECF No. 69.)  Then, on September 14, 2022, Plaintiffs filed, with consent, the Second Amended Complaint.  (ECF Nos. 71 & 72.)  The Court allowed the SAC to remain under seal because it includes the names of patients and information relating to autism therapy services provided to them.  (ECF No. 75.)

Plaintiffs assert fifteen causes of action in the SAC.  The first four counts are asserted by all Plaintiffs under ERISA: Count One, breach of plan provisions for benefits in violation of 29 U.S.C. § 1132(a)(1)(B); Count Two, breach of fiduciary duties of loyalty and due care in violation of 29 U.S.C. §§ 1104(a)(1) and 1132(a)(3); Count Three, denial of full and fair review in violation of 29 U.S.C. § 1133; and Count Four, failure to provide information in violation of 29 U.S.C. § 1132(c).  (ECF No. 72 ¶¶ 752-795.)  The remaining eleven counts are asserted by BrainBuilders under New Jersey law: Count Five, violations of New Jersey's Healthcare Information Networks

---

[6]      Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

and Technologies Act ("HINT Act") and Health Claims Authorization, Processing and Payment Act ("HCAPPA"); Count Six, declaratory judgment; Count Seven, temporary and permanent injunctive relief; Count Eight, violation of New Jersey's Autism Mandate; Count Nine, conversion; Count Ten, tortious interference with business relations; Count Eleven, tortious interference with prospective economic advantage; Count Twelve, quantum meruit; Count Thirteen, unjust enrichment; Count Fourteen, breach of implied contract; and Count Fifteen, promissory estoppel. (*Id.* ¶¶ 796-890.)

On October 26, 2022, Aetna moved to dismiss the SAC under Rule 12(b)(6). (ECF No. 80.) Plaintiffs opposed, and Aetna replied. (ECF Nos. 92 & 95.)

## II.   <u>LEGAL STANDARD</u>

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg.,*

*Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

## III.   DISCUSSION

### A.   INDIVIDUAL PLAINTIFFS' ARTICLE III STANDING

Aetna argues that the individual Plaintiffs lack standing under Article III of the United States Constitution because they have not alleged that "the[y] . . . have suffered or will suffer any injury." (ECF No. 80-2 at 22-23.) There is no indication, Aetna posits, that BrainBuilders will "balance bill" the patients for the services rendered, and there are thus no "plausible allegations of actual harm." (*Id.* at 23.)

Challenges to Article III standing are brought pursuant to Rule 12(b)(1), "because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citations omitted); *accord N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n.3 (3d Cir. 2015) ("Ordinarily, Rule 12(b)(1) governs motions to dismiss for lack of standing, as standing is a jurisdictional matter."). There are two types of standing challenges under Rule 12(b)(1): "either a facial or a factual attack." *Davis*, 824 F.3d at 346. The distinction determines, among other things, whether the court accepts as true the non-moving party's facts as alleged in the pleadings. *Id.* Here, Aetna's challenge is a facial challenge based on the SAC's allegations.

Article III standing consists of three inquiries: has plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). As to the first element, "an injury in fact must be both concrete and particularized." *Id.* at 340 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000)). To be "concrete," an injury must "actually exist," that is, be "real, and not abstract." *Id.* (citations

omitted); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (explaining that "traditional tangible harms, such as physical harms and monetary harms" qualify as concrete, as do certain "intangible harms" such as "reputational harms, disclosure of private information, and intrusion upon seclusion"). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 561 n.1).

The Court finds little merit in Aetna's contention that the individual Plaintiffs, as participants or beneficiaries in Aetna's health benefit plans, lack standing to sue for benefits. Even if BrainBuilders, the out-of-network provider, has not yet billed the individual Plaintiffs for what Aetna refuses to cover, there is certainly the risk that this might occur. Consequently, the individual Plaintiffs face the ongoing threat of a collectable debt. *See, e.g.*, *James v. City of Dallas, Tex.*, 254 F.3d 551, 564 (5th Cir. 2001), *abrogated on other grounds by M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 839-41 (5th Cir. 2012) ("The continued threat of collection actions . . . on the unpaid debt also suffices to demonstrate the likelihood of real and immediate future injury.").

Further, courts "have recognized that an insured has standing when she alleges violations of an ERISA plan without having to prove that the insured paid the provider or was balance billed by the provider." *Peters v. Aetna, Inc.*, Civ. No. 15-00109, 2016 WL 4547151, at *6 (W.D.N.C. Aug. 31, 2016) (collecting cases). Courts in this District support this conclusion. *See, e.g.*, *Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, Civ. No. 17-4599, 2018 WL 5630030, at *6 (D.N.J. Oct. 31, 2018) ("To the extent Anthem argues the Providers have not yet billed [the individual plaintiff] for the balance due, and therefore any potential injury is speculative, drawing all inferences in favor of Plaintiffs, the consequential liability [the individual plaintiff] faces is sufficient to constitute a concrete and particularized injury."); *Pro. Orthopedic Assocs., Pa., Cohen v. Horizon Blue Cross Blue Shield of New Jersey*, Civ. No. 14-4731, 2015 WL 5455820, at *2 (D.N.J. Sept. 16, 2015) ("[T]he receipt of a lesser benefit than Horizon allegedly

8

should have paid had it honored plan terms is a sufficiently concrete invasion of [the insured's] legally protected interest under ERISA and her plan to confer Article III standing.").

Accordingly, the Court finds that the individual Plaintiffs have Article III standing to pursue their claims for unpaid and underpaid health benefits.[7]

### B. BRAINBUILDERS' STANDING AS AN ASSIGNEE UNDER ERISA

Aetna next argues that BrainBuilders, as an alleged assignee of the individual Plaintiffs, does not have standing under ERISA, because the plans at issue contain anti-assignment clauses. (ECF No. 80-2 at 24-25.)

Typically, "standing to sue under ERISA is 'limited to participants and beneficiaries.'" *Prestige Inst. for Plastic Surgery, P.C. o/b/o S.A. v. Horizon Blue Cross Blue Shield of New Jersey*, Civ. No. 20-3733, 2021 WL 4206323, at *3 (D.N.J. Sept. 16, 2021) (quoting *Univ. Spine Ctr. v. Anthem Blue Cross Blue Shield*, Civ. No. 18-2912, 2018 WL 6567702, at *2 (D.N.J. Dec. 13, 2018)). Nevertheless, "[h]ealthcare providers that are neither participants nor beneficiaries in their own right may obtain derivative standing by assignment from a plan participant or beneficiary," *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015), so long as the ERISA plan does not include a valid anti-assignment clause, *Am. Orthopedic*, 890 F.3d at 453.

---

[7]     The two cases cited by Aetna do not compel a different result. In *Franco v. Connecticut Gen. Life Ins. Co.*, a panel of the Third Circuit Court of Appeals, in a non-precedential opinion, considered standing for a claim under the Racketeer Influenced and Corrupt Organizations Act (not ERISA), and summarily affirmed without providing reasoning. 647 F. App'x 76, 81 (3d Cir. 2016). And in *Bryant v. Am. Seafoods Co.*, the plaintiffs did not show that "any medical provider was dissatisfied with an employer's initial payment." 348 F. App'x 256, 257 (9th Cir. 2009). Here, in contrast, it is evident that BrainBuilders is dissatisfied with Aetna's rate of reimbursement. *Bryant*, moreover, was followed by a precedential opinion from the Ninth Circuit Court of Appeals, which held that "[n]o one . . . would contend that the beneficiaries [of an ERISA plan] would have lacked Article III standing," even if the provider had not yet "sought to recover from its patients any shortfall." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1291 (9th Cir. 2014).

Here, Aetna provides a summary chart and excerpts from forty-nine of the fifty-six plans to demonstrate that those plans contain valid anti-assignment clauses. (ECF No. 80-3 at 2-15.) The plans generally state (except for four of the forty-nine plans provided[8]) that they "will not accept an assignment to an out-of-network provider" or will accept an assignment only with Aetna's written consent, which is not alleged to have been obtained. (*Id.*) In response, Plaintiffs argue that Aetna waived the anti-assignment provisions because of "cross-plan offsetting." (ECF No. 92 at 29.) In other words, Plaintiffs claim that Aetna treats BrainBuilders' patients "as one account for all benefit payment and billing purposes" and that this should result in waiver of the anti-assignment provisions. (*Id.*) However, Plaintiffs give only one alleged instance when Aetna deducted from the benefits payment for a child based on an alleged overpayment made to a different child. (*Id.* at 29-30.)

The Court agrees with Aetna that BrainBuilders is foreclosed from pursuing ERISA claims via derivative standing where the plans contain valid anti-assignment provisions. *See Am. Orthopedic*, 890 F.3d at 453 ("We now join that consensus and hold that anti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable."); *Neurosurgical Assocs. of NJ, P.C. v. Aetna, Inc.*, Civ. No. 17-13210, 2019 WL 851280, at *3 (D.N.J. Feb. 22, 2019) ("[T]he *American Orthopedic* decision is consistent with a long line of decisions from this

---

[8]     Aetna did not respond to Plaintiffs' assertion that the Bank of America Plan anti-assignment language is limited to the context of long-term disability. (ECF No. 80-22 at 3; ECF No. 92 at 29 n.15.) Further, the Pridestaff Plan merely states that "[a] direction to pay a provider is not an assignment of legal rights." (ECF No. 80-36 at 3.) No explanation is given for how such language can foreclose an assignment. For the Unisys Plan, the parties do not explain how the seemingly conflicting language should be interpreted. The plan states that an insured "may assign [their] right to benefits to a provider who rendered medical . . . services" and then states that "[c]overage and [their] rights under this plan may not be assigned." (ECF No. 80-50 at 3.) For the Walmart Plan, no anti-assignment language appears in the excerpt from the summary plan description that has been submitted. (ECF No. 80-52 at 3.) For these four plans, the Court reserves judgment on the enforceability of the anti-assignment provisions.

district that have denied standing after finding a valid anti-assignment clause in an ERISA-governed health insurance plan."). And the Court is unconvinced that the single alleged example of supposed "cross-plan offsetting" is sufficient to find any enforceable anti-assignment provisions waived.

Under New Jersey law,[9] "waiver is defined as an 'intentional relinquishment of a known right.'" *Sleep Tight Diagnostic Ctr., LLC v. Aetna Inc.*, 399 F. Supp. 3d 241, 253 (D.N.J. 2019) (quoting *Knorr v. Smeal*, 836 A.2d 794, 798 (N.J. Super. Ct. 2003)). "The intent to waive need not be stated expressly, provided the circumstances clearly show that the party knew of the right and then abandoned it." *Id.* at 254. "Such words or acts, however, must be 'voluntary, clear and decisive,' such that they imply 'an election to forego some advantage which the waiving party might have insisted on.'" *Id.* (quoting *Deerhurst Ests. v. Meadow Homes, Inc.*, 165 A.2d 543, 549 (N.J. Super. Ct. App. Div. 1960)). "The burden of proving waiver is upon the party asserting it." *Id.* (quoting *Cacon, Inc. v. Rand Env't Servs., Inc.*, 2006 WL 2389553, at *3 (N.J. Super. Ct. App. Div. Aug. 21, 2006)).

Here, weighed against the clear anti-assignment provisions present in forty-five of the plans, the Court does not find that BrainBuilders has met its burden to plausibly establish waiver under those plans. Plaintiffs cite no authority that persuades the Court that the anti-assignment provisions in dozens of Aetna plans (involving at least ninety patients) could be inferred to be waived or rendered unenforceable by one alleged example (involving two patients) of Aetna engaging in cross-plan offsetting.[10] Plaintiffs point to one case, *Lutz Surgical Partners PLLC v. Aetna, Inc.*, Civ. No. 15-02595, 2021 WL 2549343 (D.N.J. June 21, 2021), *vacated*, 2023 WL

---

[9]     Both parties cite New Jersey law, and the Court concurs that New Jersey law is applicable.

[10]    Plaintiffs does not support with well-pleaded factual matter its conclusory allegation that Aetna generally "treat[s] the [i]ndividual Plaintiffs as one account." (ECF No. 72 ¶ 123.)

2472403 (D.N.J. Feb. 8, 2023), but not only was *Lutz* vacated following a settlement by the parties—it is also largely inapposite. There, the crux of the plaintiffs' claims was that Aetna's recovery policy was unlawful because Aetna withheld amounts allegedly overpaid to providers on behalf of Plan A (for services rendered to Plan A insureds) from payments due to providers of Plan B (for services rendered to Plan B insureds). *Id.* at *1. On summary judgment, the court declined to decide if such conduct constituted waiver and reserved on the question as to whether "Aetna, by undertaking cross-plan offsets, deemed the benefits as being owed to Plaintiffs and recognized Plaintiffs had a legal claim to the benefit payment." *Id.* at *10. In comparison, this case is focused on alleged underpayments or nonpayments of claims by Aetna—not overpayments that then resulted in cross-plan offsetting. Nor do Plaintiffs plausibly allege that Aetna has engaged in the same kinds of widespread billing practices at issue in *Lutz*. *See Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, Civ. No. 17-4600, 2018 WL 1420496, at *5 (D.N.J. Mar. 22, 2018) ("[C]ourts within this District routinely enforce unambiguous anti-assignment provisions contained in ERISA-governed plans, and thus, find that providers lack derivative standing to seek benefits from the plan on behalf of their patients." (collecting cases)).

Accordingly, because BrainBuilders is not a beneficiary or participant in Aetna's plans, and because the anti-assignment provisions in forty-five of the plans provided invalidate any purported assignment of benefits to BrainBuilders, BrainBuilders lacks standing to pursue the ERISA claims at issue under those plans, and Aetna's motion to dismiss is granted on this issue.[11]

---

[11]    As noted above, the Court has reserved judgment on the enforceability of the anti-assignment provisions in the Bank of America, Pridestaff, Unisys, and Walmart Plans, which cover five patients (W.F., I.C., D.C., J.M., and Z.M.). Aetna also did not submit the anti-assignment provisions from seven plans that allegedly cover the claims of seven patients in this case: Wilner Plan (patient A.W.), Diligence Research Group Plan (patient S.O.), Docusign Inc. Plan (patient J.C.(1)), Mail Handlers Benefit Plan (patient J.C.(2)), Southern Coastal HIF Plan (patient D.D.), Citibank Plan (patient R.M.), and Taiho Oncology Inc. Plan (patient D.N.). Due to this omission,

### C. COUNT ONE—PLAN BENEFITS

Even if Plaintiffs have standing to sue for unpaid or underpaid health plan benefits under ERISA, Aetna argues that they do not state such a claim because the SAC does not identify the terms of the plans allegedly breached. (ECF No. 80-2 at 27-28.)

ERISA establishes "a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). Specifically, Section 502(a)(1) provides that a "participant or beneficiary" may bring a civil action "to recover benefits due . . . under the terms of [the] plan, to enforce . . . rights under the terms of the plan, or to clarify . . . rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

To plead a plausible claim for benefits, a plaintiff "must demonstrate that the benefits are actually 'due'; that is, he or she must have a right to benefits that is legally enforceable against the plan." *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006). Phrased differently, a plaintiff "must identify a term of the plan which [the defendant] allegedly breached." *Open MRI & Imaging of RP Vestibular Diagnostics, P.A. v. Cigna Health & Life Ins. Co.*, Civ. No. 20-10345, 2022 WL 1567797, at *3 (D.N.J. May 18, 2022); *see also Emami v. Cmty. Ins. Co.*, Civ. No. 19-21061, 2021 WL 4150254, at *5 (D.N.J. Sept. 13, 2021) ("The Complaint does not point to a specific provision within the ERISA Plan. . . . Rather, Dr. Emami vaguely pleads in his Complaint that '[d]efendants improperly denied benefits due . . . under the terms of the Plan for the reasons set forth above.' Such an allegation is not enough.").

Plaintiffs contend that they sufficiently identify the ERISA plan terms breached where they allege that "all 56 Plans cover ABA therapy and mental therapy, including via out-of-network providers." (ECF No. 92 at 35-38.) Plaintiffs insist that they are not required to attach ERISA

---

the Court cannot now find that those plans contain valid anti-assignment provisions that foreclose BrainBuilders from suing for benefits thereunder as an assignee.

plan documents to their pleadings or to quote from the plans.  (*Id.*)  Although Plaintiffs may not be required to quote from or to attach ERISA plan documents at this stage, they must "identif[y] a particular [plan] provision . . . which . . . entitles [them] to benefits."  *Shapiro v. Aetna, Inc.*, Civ. No. 22-1958, 2023 WL 4348601, at *4 (D.N.J. June 5, 2023).  That is, they must show in some way—typically, through a description of the plan terms—that there is a plausible basis, not simply speculative, to infer that they are owed unpaid benefits under each plan.

In *Hudson Hospital OPCO, LLC v. Cigna Health and Life Insurance Company*, for example, the district court dismissed ERISA benefits claims where the plaintiffs did "not point to, describe, or quote any language from the actual Cigna Plans that, they claim[ed], entitle[d] them to reimbursement for elective services on the thousands of allegedly underpaid claims."  Civ. No. 22-4964, 2023 WL 6439893, at *5 (D.N.J. Oct. 3, 2023) (Salas, J.).  Collecting cases, the court explained that "judges in this district have required plaintiffs to do more than vaguely plead that benefits are due under the terms of the plan, and courts have required plaintiffs to 'tie [their] allegations of ERISA violations to specific provisions of an applicable plan.'"  *Id.* at *6 (citations omitted).  This is because "[o]nly the words of the Plan itself can create an entitlement to benefits."[12]  *Id.* (quoting *Hein v. F.D.I.C.*, 88 F.3d 210, 215 (3d Cir. 1996)).

---

[12]     The court highlighted an opinion from the Southern District of Florida, *Sanctuary Surgical Centre, Inc. v. UnitedHealth Group, Inc.*, where the plaintiffs sought out-of-network benefits under "at least 300 different health insurance plans governing 996 derivative ERISA benefit claims asserted on behalf of approximately 500 different patients."  Civ. No. 10-81589, 2013 WL 149356, at *1 (S.D. Fla. Jan. 14, 2013).  There, the district court dismissed the ERISA benefits claims, reasoning that the "plaintiffs must at least identify the specific plan provisions under which coverage is conferred with respect to *each* of the 996 derivative ERISA claims identified in its complaint, and to allege sufficient facts to plausibly show the services rendered to each patient were indeed covered under that *particular* plan."  *Id.* at *3 (emphases in original).  The court wrote that "[w]ithout a precise description of the relevant coverage and exclusionary language of all plans, . . . plaintiffs fail[] to state plausible ERISA benefits claims upon which relief can be granted."  *Id.* at *6.

The court's approach in *Hudson Hospital* is consistent with many others in this District. *See, e.g.*, *Gotham City Orthopedics, LLC v. Cigna Health & Life Ins. Co.*, Civ. No. 21-1703, 2022 WL 2116864, at *2 (D.N.J. June 13, 2022) (Wigenton, J.) ("Plaintiff asserts that, 'upon information and belief,' payment was required at the Usual Customary and Reasonable rates . . . but fails to put forth a cognizable basis for its assertions or delineate the source of the information and belief undergirding the allegations.  Such blanket assertions are insufficient under Rule 8."); *Univ. Spine Ctr. v. Anthem Blue Cross of California*, Civ. No. 19-12639, 2020 WL 814181, at *6 (D.N.J. Feb. 18, 2020) (McNulty, J.) ("It is a plaintiff's duty to cite specific plan provisions that entitle it to recovery."); *E.S. by & through To.S. v. Marsh & McLennan Companies, Inc. Benefits Admin. Comm.*, Civ. No. 17-03351, 2019 WL 3928660, at *6 (D.N.J. Aug. 20, 2019) (Hayden, J.) ("What is not identified in any way, however, is language in any other self-funded plan for which Aetna is the claims administrator that allegedly provoked the same application of the same criteria with the same result—in other words, the specific facts that would make plausible E.S.'s charge that in adopting its allegedly uniform codified criteria, Aetna breached its fiduciary duties . . . ."); *Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, Civ. No. 11-2775, 2012 WL 762498, at *15 (D.N.J. Mar. 6, 2012) (Simandle, C.J.) ("It is the Plaintiff's burden of proof to have the plan documents and cite to specific plan provisions when filing a civil complaint to obtain ERISA benefits.  As the Plaintiff has not cited to or attached the plan documents for the remaining nine ERISA plans, the Plaintiff has failed to state a claim under ERISA's civil enforcement provision.").

Here, there are a few instances in the SAC where Plaintiffs identify language in plan booklets that they assert support their benefits claims: for the SCHI Plan (ECF No. 72 ¶¶ 131-134), Global Plan (*id.* ¶¶ 202-205), Citrin Plan (*id.* ¶¶ 225-226), and Wilner Plan (*id.* ¶¶ 246-248).  Even if the Court accepts this as sufficient, those four plans cover only twelve patients.  For the majority of the fifty-six plans and ninety patients, however, Plaintiffs do not cite to any particular plan

provision. Rather, Plaintiffs base the alleged entitlement to health benefits on the cookie cutter assertion that, "[u]pon information and belief": each plan "permits a patient to obtain [out-of-network] health care services from providers who have not entered into contracts with Aetna," "provides covered benefits for patients with mental health illness including autism," and "reimburses for covered expenses by out-of-network providers." (*Id.* ¶¶ 255-257, 265-267, 280-282, 289-291, 298-300, 307-309, 318-320, 332-334, 343-345, 352-354, 361-363, 370-372, 379-381, 388-390, 397-399, 406-408, 415-417, 424-426, 433-435, 442-444, 451-453, 460-462, 469-471, 478-480, 487-489, 496-498, 505-507, 514-516, 523-525, 532-534, 541-543, 551-553, 560-562, 571-573, 580-582, 589-591, 598-600, 607-609, 616-618, 625-627, 634-636, 645-647, 654-656, 663-665, 672-674, 681-683, 690-692, 699-701, 708-710, 717-719, 726-728, 735-737.) Such allegations are not precise enough to elevate claims for unpaid benefits to a plausible level. The Court therefore finds that Plaintiffs have not stated ERISA benefits claims upon which relief can be granted for these plans.

Based on the substantial number of plans and patients impacted by this pleading defect, the Court will dismiss without prejudice Count One in its entirety and grant Plaintiffs an opportunity to submit a further amended pleading.

### D. Count Two—Breach of Fiduciary Duties

Because the Court finds that Plaintiffs do not state their benefits claims in Count One, it is unnecessary to address whether Aetna has allegedly breached its fiduciary duties under 29 U.S.C. §§ 1104(a)(1) and 1132(a)(3) in connection with the benefits denials. "Absent a plausible claim for additional reimbursement," the Court need not "evaluate any alleged associated breach of fiduciary duty claim." *Univ. Spine Ctr. v. Anthem Blue Cross Blue Shield*, Civ. No. 17-9108, 2018 WL 3327930, at *7 (D.N.J. July 5, 2018). Accordingly, Count Two is also dismissed without prejudice.

16

### E.   COUNT THREE—DENIAL OF FULL AND FAIR REVIEW

Aetna argues that the Court should dismiss Count Three for denial of full and fair review in violation of 29 U.S.C. § 1133 because there is no separate cause of action under this section of ERISA.  (ECF No. 80-2 at 34.)  The Court concurs.  In this District, it is settled that section 503, 29 U.S.C. § 1133, "does not provide an independent cause of action." *Advanced Orthopedics & Sports Med. Inst. on behalf of MS v. Anthem Blue Cross Life & Health Ins. Co.*, Civ. No. 20-13243, 2022 WL 13477952, at \*12 (D.N.J. Oct. 21, 2022); *see also Rahul Shah, M.D. v. Horizon Blue Cross Blue Shield*, Civ. No. 15-8590, 2016 WL 4499551, at \*11 (D.N.J. Aug. 25, 2016) ("Recent decisions in this District, faced with similar fact patterns and arguments, have also reached the conclusion that neither [s]ection 503 of ERISA, 29 U.S.C. § 1133, nor its accompanying regulation, 29 C.F.R. § 2560.503-1, gives rise to a private cause of action."  (collecting cases)).  To the extent Aetna is alleged to have failed to comply with the requirements of 29 U.S.C. § 1133, this can be appropriately considered on review of a claim for denial of plan benefits.  *See Advanced Orthopedics*, 2022 WL 13477952, at \*12 ("[C]omplying with § 503 may be 'probative of whether the decision to deny benefits was arbitrary and capricious.'"  (quoting *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 851 (3d Cir. 2011))).  And if it is found that Aetna has not conducted a full and fair review, "the remedy . . . is to remand to the plan administrator so the claimant gets the benefit of [such] a . . . review."  *Syed v. Hercules Inc.*, 214 F.3d 155, 162 (3d Cir. 2000).  Accordingly, Count Three is dismissed without prejudice.

### F.   COUNT FOUR—FAILURE TO PROVIDE PLAN DOCUMENTS

The fourth count of the SAC, for failure to provide plan documents, is asserted pursuant to Section 502(c)(1) of ERISA, which in relevant part provides:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such

> failure or refusal results from matters reasonably beyond the control
> of the administrator) by mailing the material requested to the last
> known address of the requesting participant or beneficiary within 30
> days after such request may in the court's discretion be personally
> liable to such participant or beneficiary in the amount of up to
> $100[13] a day from the date of such failure or refusal, and the court
> may in its discretion order such other relief as it deems proper.

[29 U.S.C. § 1132(c)(1).]

"In order to state a claim under § 1132(c)(1), a [plan participant or beneficiary] must allege

that 1) it made a request to a plan administrator, 2) who was required to provide the requested

material, but 3) failed to do so within 30 days of the request." *Spine Surgery Assocs. & Discovery

Imaging, PC v. INDECS Corp.*, 50 F. Supp. 3d 647, 656 (D.N.J. 2014).

Here, Plaintiffs allege that "BrainBuilders, on behalf of the Aetna subscribers, requested

plan documents, including documentation regarding how Aetna was calculating reimbursement

for ABA therapy for Aetna insured patients who had assigned their insurance benefits to

BrainBuilders." (ECF No. 72 ¶ 792.) Then Aetna, "[a]s the plan administrator, . . . failed to

provide the requested plan documents." (*Id.* ¶ 793.) According to Plaintiffs, "it has been nearly

2,500 days since BrainBuilders requested certain plan documents." (*Id.* ¶ 795.)

These vague allegations are insufficient to plausibly state a claim under section 1132(c)(1).

Essential factual matter omitted includes: on which participant's/beneficiary's behalf such a

request (or requests) for documents was made, to which plan or plans such a request (or requests)

was directed, and specific allegations that Aetna is in fact the plan administrator for the plan or

plans at issue. Indeed, it is unclear if BrainBuilders is claiming that it directed a single request for

documents to Aetna on behalf of all the insureds under fifty-six different plans or if it sent separate

requests on behalf of each insured to each plan, or if it pursued some other course of action. While

---

[13]     The penalty for an administrator's failure to respond to a request for information was
increased to $110.00 per day for violations after July 29, 1997. *See* 29 C.F.R. § 2575.502c-1.

there is no "probability requirement at the pleading stage," a plaintiff must furnish "enough fact to raise a reasonable expectation that discovery will reveal evidence" in support of the elements of the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Plaintiffs have not yet done so. Accordingly, Count Four is dismissed without prejudice.

### G. Express Preemption of BrainBuilders' State Law Claims

Aetna argues that BrainBuilders' state law claims should be dismissed as expressly preempted by ERISA because they "relate to" ERISA plans and "all seek benefits provided under the [p]lan[s]." (ECF No. 80-2 at 37-40.) BrainBuilders disagrees, arguing that it should be allowed to plead its state law claims in the alternative. (ECF No. 92 at 48-52.) BrainBuilders says that the plans have "no bearing on [its] independent relationship" with Aetna that allegedly gives rise to its state law claims. (*Id.* at 52-55.)

A critical part of the ERISA scheme is section 514(a)—"a broad express preemption provision"—that states that ERISA "'supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.'" *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 226 (3d Cir. 2020) (quoting 29 U.S.C. § 1144(a)). Congress aimed "to make clear that ERISA's mandates supplanted the patchwork of state law previously in place and to ensure that plans were not crippled by the administrative cost of complying with not only ERISA, but also innumerable, potentially conflicting state laws." *Id.*

Recognizing, however, that without any limiting principles the preemption provision could be stretched too far, the United States Supreme Court "has sought to craft a functional test for express preemption, instructing that a state law 'relates to' an employee benefit plan if it has either (1) a 'reference to' or (2) a 'connection with' that plan." *Id.* (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983)). "The first applies '[w]here a State's law acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's

operation.'  The second covers state laws that 'govern[] . . . a central matter of plan administration or interfere[] with nationally uniform plan administration,' and those state laws that have 'acute, albeit indirect, economic effects [that] force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers.'"  *Id.* (quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319-20 (2016)).

To determine if a state law cause of action makes "impermissible 'reference to' ERISA plans," the Third Circuit has "distill[ed] two overlapping categories of claims 'premised on' ERISA plans: (a) claims predicated on the plan or plan administration, *e.g.*, claims for benefits due under a plan, or where the plan 'is a critical factor in establishing liability'; and (b) claims that 'involve construction of [the] plan[],' or 'require interpreting the plan's terms.'"  *Id.* at 230 (citations omitted).  To determine if a state law cause of action has a "connection with" an ERISA plan, the analysis "focus[es] primarily on whether claims (a) 'directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries'; (b) interfere with plan administration; or (c) undercut ERISA's stated purpose."  *Id.* at 235 (citations omitted).

Where a complaint suggests that the out-of-network provider is seeking payment pursuant to an ERISA-governed plan or where the alleged source of the independent obligation stems from a member's ERISA-governed plan, district courts find common law claims to be preempted.  In *AHS Hospital Corporation. v. Aetna Health*, for example, the district court found a hospital's common law claims expressly preempted when each was "dependent on [Aetna's] position as the insurer," and "[i]n fact, . . . [the] overarching theory [wa]s that [the hospital was] owed payment pursuant to the plan."  Civ. No. 22-6601, 2023 WL 3585265, at *1 (D.N.J. May 22, 2023) (Vazquez, J.).  In support, the court pointed to arguments in the hospital's brief that the suit had been brought to recover benefits under the patient's plan.  *Id.*

Similarly, in *Gotham City Orthopedics v. Aetna*, the court found that the common law claims "clearly 'relate[d] to' the [p]atients' Aetna ERISA plans," relying on the fact that the complaint "repeatedly acknowledge[d] that the [p]atients were insured under ERISA plans and demand[ed] payment according to those plan benefits."  Civ. No. 20-14915, 2021 WL 1541069, at *2 (D.N.J. Apr. 19, 2021) (Wigenton, J.).  The court wrote that nothing in the complaint would "suggest any circumstances that would remove [p]laintiff's claims from the ERISA plans' scope and allow them to survive preemption."  *Id.* at *3.

In contrast, where a complaint suggests that an out-of-network provider is seeking to enforce an obligation based not on an ERISA-governed plan but on independent representations or agreements between the provider and the insurer, district courts find common law claims to not be preempted.  In *Premier Orthopaedic Associates of Southern NJ v. Anthem Blue Cross Blue Shield*, for example, the court declined to find the common law claims preempted when there was no pre-authorization letter to review and "nothing in the [c]omplaint direct[ed] th[e] [c]ourt to consider the patient's healthcare benefit plan."  Civ. No. 22-02407, 2023 WL 3727889, at *4 (D.N.J. May 30, 2023) (Bumb, C.J.).

Considering the above precedent, the Court finds that ERISA § 514(a) expressly preempts BrainBuilders' state law claims in this case.  Both the SAC as well as BrainBuilders' opposition to the motion to dismiss confirm that BrainBuilders predicates its claims on what Plaintiffs assert is due under the terms of the insureds' ERISA plans.  BrainBuilders cannot maintain state law claims parallel to ERISA claims when its own representations do not support the inference that there is a separate contractual relationship or obligation.  *See AHS Hosp. Corp.*, 2023 WL 3585265, at *3 ("Plaintiff's overarching theory is that it is owed payment pursuant to the plan.  This is illustrated by Plaintiff's arguments in opposition to the motion. . . .  Accordingly, Plaintiff's state-law claims are predicated on the plan and its administration.").

Notably, Plaintiffs write in their brief that they "simply seek for Aetna to pay for the treatment it is obligated to cover *under the individual plaintiffs' plans*" and that they take issue with Aetna's alleged decision, in or around July 2014, to stop paying for the services "pursuant to *the rates set forth in the Plans*" and to instead begin "denying and underpaying the submitted claims at lower, arbitrary, and inconsistent rates." (ECF No. 92 at 15-17 (emphases added).) And in the SAC itself Plaintiffs repeatedly reference the patients' ERISA plans as the source of Aetna's obligations to both cover the autism therapy services and for the alleged rate Aetna should be paying for those services. (ECF No. 72 ¶ 104 ("The autism therapy services provided by BrainBuilders are *covered services under the PLANS* at issue. These *PLANS permit members to obtain covered services* from out-of-network . . . providers . . . and then require Aetna to pay for OON covered services using specified methodologies." (emphases added)); ¶ 106 ("Aetna previously reimbursed BrainBuilders for these services . . . *in accordance with the PLANS'* documents . . . ." (emphasis added)); ¶ 108 ("On or about July 2014, Aetna . . . reimbursed BrainBuilders at much lower . . . rates that do not adhere with any *coverage or reimbursement provisions under the PLANS*." (emphasis added)); ¶ 120 ("BrainBuilders is . . . entitled to payment *under the PLANS* for the autism therapy services provided to Aetna's subscribers." (emphasis added)).)

In opposition, BrainBuilders contends that its state law claims are "on all fours" with those that the Third Circuit found not preempted in *Plastic Surgery Center*. (ECF No 92 at 53-54.) But that contention is inaccurate. In *Plastic Surgery Center*, the out-of-network provider contacted Aetna to discuss proposed surgeries for two patients—one patient insured by a plan that did not cover out-of-network services and another patient only covered for emergencies. *Plastic Surgery Ctr.*, 967 F.3d at 223-24. Over a series of telephonic conversations, Aetna agreed to cover the out-of-network provider's surgical procedures at agreed-upon reimbursement rates. *Id.* at 224. Then,

after the procedures were performed, "Aetna allegedly refused to live up to its end of the bargain" and paid a fraction of what was billed. *Id.* Under those factual circumstances, the Third Circuit held that the out-of-network provider's common law claims for breach of contract and promissory estoppel were not expressly preempted, because the claims "arose precisely because there was no coverage under the plans for services performed by an out-of-network provider." *Id.* at 231. Instead, the provider's claims arose from an alleged separate agreement that the provider had worked out with Aetna. *Id.*

Here, in contrast, Plaintiffs allege that the autism therapy services were covered by the ERISA plans and Aetna failed to reimburse BrainBuilders for those services in accordance with the terms of the insureds' plans. (ECF No. 72 ¶¶ 104, 108 ("The autism therapy services provided by BrainBuilders are covered services *under the PLANS at issue*. . . . On or about July 2014, Aetna . . . [started] reimburs[ing] BrainBuilders at much lower, arbitrary, and inconsistent rates that *do not adhere with any coverage or reimbursements provisions under the PLANS*." (emphases added)).) Therefore, the allegations strongly suggest that BrainBuilders' state law claims arise not from a freestanding agreement reached with Aetna, but from the ERISA plans' coverage for out-of-network services. *See Advanced Orthopedics & Sports Med. Inst., P.C. v. Oxford Health Ins., Inc.*, Civ. No. 21-17221, 2022 WL 1718052, at *8 (D.N.J. May 27, 2022) ("Plaintiff has not alleged an 'ad hoc arrangement[] in which the provider agrees to render services (which are *not* covered by the terms of the plan).'" (emphasis in original) (quoting *Plastic Surgery Ctr.*, 967 F.3d at 229)). Under these factual circumstances, the Court finds that BrainBuilders has not plausibly established that its state law claims arise from a separate agreement with Aetna. Accordingly, BrainBuilders' state law claims are expressly preempted by ERISA § 514(a).

### H. PLAUSIBILITY OF STATE LAW CLAIMS

Even if some of the state law claims (under New Jersey statutes and for tort) are not expressly preempted, the Court finds them presently subject to dismissal for failure to state a claim.

There is an open question as to whether a private cause of action exists for Count Five under the HINT Act and HCAPPA as well as for Count Eight under New Jersey's Autism Mandate. BrainBuilders cites no court that permits a private cause of action to be maintained under the Autism Mandate, and the statute does not explicitly contemplate private enforcement; rather, it repeatedly references New Jersey's Commissioner of Banking and Insurance. *See* N.J. Stat. Ann. § 17B:27A-19.20. As to the HINT Act and HCAPPA, New Jersey's Appellate Division recently recognized that whether the statutes create an implied private right of action, or whether enforcement authority rests solely with the Department of Banking and Insurance, has not yet been definitively decided. *See Marc S. Menkowitz, MD LLC v. Horizon Blue Cross Blue Shield of New Jersey*, 2023 WL 5447697, at *3 (N.J. Super. Ct. App. Div. Aug. 24, 2023) ("[W]e agree with [the trial court's] decision not to decide whether the HINT Act or HCAPPA create a private right of action for recovery of interest on late payments of claims."). In this District, however, Judge McNulty analyzed the HINT Act's and HCAPPA's statutory scheme as well as relevant precedent before ultimately "declin[ing] to imply a private right of action to seek damages."[14] *MHA, LLC v. Amerigroup Corp.*, 539 F. Supp. 3d 349, 359 (D.N.J. 2021). Given this backdrop, this Court is reluctant to expand the scope of New Jersey law and to find private causes of action under either the HINT Act, HCAPPA, or New Jersey's Autism Mandate when no such right has been expressly set forth in the text of the statutes by the New Jersey Legislature. *See Zanetich v. Wal-Mart Stores*

---

[14]     BrainBuilders cites to a non-precedential decision from a trial court in Hudson County Superior Court that declined to dismiss private causes of action under the HINT Act and HCAPPA. *See New Jersey Brain and Spine, PC v. Independent Care Group Plus Trust*, 2021 WL 1511282, at *8 (N.J. Super. Ct. Law Div. Apr. 12, 2021).

*E., Inc.*, Civ. No. 22-05387, 2023 WL 3644813, at *5 (D.N.J. May 25, 2023) ("This Court's analysis is guided by federal courts' reluctance to interpret a state statute to create a private right of action where a private right of action is not expressly stated in the statute.").

Count Six for declaratory judgment is duplicative of Plaintiffs' substantive claims, and it is well settled that "[c]ourts may dismiss []claims requesting declaratory judgment where they are redundant." *Lilac Dev. Grp., LLC v. Hess Corp.*, Civ. No. 15-7547, 2016 WL 3267325, at *3 (D.N.J. June 7, 2016). Particularly where, as here, "the plaintiff seeks declaratory relief simply to 'resolve the parties' obligations'" that are at issue in other contract-based claims, a court can "dismiss claims for declaratory judgment that are duplicative." *Golden State Med. Supply Inc. v. AustarPharma, LLC*, Civ. No. 21-17137, 2022 WL 2358423, at *7 (D.N.J. June 30, 2022) (quoting *AV Design Servs., LLC v. Durant*, Civ. No. 19-8688, 2021 WL 1186842, at *12-13 (D.N.J. Mar. 30, 2021)).

Count Seven for injunctive relief may be dismissed because such an application is a request for a remedy and is not a separate cause of action. *See Chruby v. Kowaleski*, 534 F. App'x 156, 160 n.2 (3d Cir. 2013) ("We agree . . . that an injunction is a remedy rather than a cause of action, so a separate claim for injunctive relief is unnecessary."); *see also Hartman v. Borough*, Civ. No. 21-01735, 2022 WL 2513043, at *5 (M.D. Pa. July 6, 2022) ("A plaintiff may request injunctive relief as a remedy, but not as a separate cause of action; if a plaintiff does so, it can be dismissed."); *Schraeder v. Demilec (USA) LLC*, Civ. No. 12-6074, 2013 WL 3654093, at *5 (D.N.J. July 12, 2013) (dismissing counts for injunctive relief as separate causes of action, but declining to address requests for injunctive relief as remedies for other claims, "because at this stage in the litigation, before a substantial factual record has been developed, it would be premature to determine what remedies are appropriate").

Counts Ten and Eleven for tortious interference with business relations and with prospective economic advantage do not, among other things, identify a single patient actually lost as a result of Aetna's alleged interference. *See, e.g.*, *Magic Reimbursements LLC v. T-Mobile USA, Inc.*, Civ. No. 22-02121, 2023 WL 4866930, at *8 (D.N.J. July 31, 2023) ("[C]ourts in this Circuit have held that claims for tortious interference must plead the existence and identity of at least a single, specific customer lost as a result of the alleged interference." (collecting cases)). BrainBuilders merely alleges that it has "had to begin turning Aetna-insured patients away," (ECF No. 72 ¶ 749), but such a "vague allegation that unknown, prospective [patients] may have been lost [is] [in]sufficient to survive dismissal." *New Jersey Physicians United Reciprocal Exch. v. Boynton & Boynton, Inc.*, 141 F. Supp. 3d 298, 310 (D.N.J. 2015).

The remaining counts—for conversion, quantum meruit, unjust enrichment, breach of implied contract, and promissory estoppel—are the kinds of claims traditionally found expressly preempted when they are based, as here, on the alleged denial or underpayment of benefits pursuant to an ERISA-governed plan. *See, e.g.*, *Plastic Surgery Ctr.*, 967 F.3d at 241 (holding unjust enrichment claim expressly preempted because the claim requires a court to find an ERISA plan exists to show that Aetna "received a benefit"); *Advanced Orthopedics*, 2022 WL 1718052, at *8 ("Plaintiff's implied contract, breach of warranty of good faith and fair dealing, and promissory estoppel claims 'relate' to an ERISA plan, . . . and accordingly, are preempted."); *Roche v. Aetna, Inc.*, 167 F. Supp. 3d 700, 711 (D.N.J. 2016) (dismissing state law claims for breach of contract, duties related to contract, conversion, and unjust enrichment as expressly preempted under ERISA).

## IV.   **LEAVE TO AMEND**

Because this is the first dismissal and because the claims have been dismissed without prejudice, the Court will grant Plaintiffs forty-five days to file a further amended complaint to try

to remedy the defects in their pleading. *See, e.g.*, *In re: Lamictal Indirect Purchaser & Antitrust Consumer Litig.*, 172 F. Supp. 3d 724, 739 (D.N.J. 2016).

## V.    <u>CONCLUSION</u>

For the reasons set forth above, and other good cause shown, Aetna's Motion to Dismiss (ECF No. 80) the Second Amended Complaint (ECF No. 72) is **GRANTED**.   An appropriate Order follows.


Dated:  January 31, 2024

**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**